No. 21-1907

**In the United States Court of Appeals
FOR THE FIRST CIRCUIT**

**JOSEPH McCOY**

**Plaintiff - Appellant**

**v.**

**TOWN OF PITTSFIELD, NH**

**Defendant - Appellee**

**On Appeal from the U.S. District Court for the District of New Hampshire
No. 1:20-cv-00362 (Hon. Joseph Laplante)**

**Plaintiff-Appellant's Initial Brief**

Robert M. Fojo (Bar No. 1191945)
Fojo Law
264 South River Road, Suite 464
Bedford, NH 03110
(603) 473-4694
rfojo@fojolaw.com
*Counsel for Joseph McCoy*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                               iii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF THE CASE ............................................................... 3

   A.  Mr. McCoy's Trailer ...................................................... 3

   B.  The Town's Zoning Ordinance ......................................... 3

   C.  Mr. McCoy's Storage Container Permit .............................. 4

   D.  Mr. McCoy's Principal Use of the Trailer for Political Speech.... 4

   E.  The Ordinance Does Not Provide for Extensions of Storage Container Permits ......................................................... 5

   F.  The Town Ignored the Ordinance and Extended Mr. McCoy's Permit ........ 5

   G.  The Town's Second Extension of Mr. McCoy's Storage Container Permit.. 6

   H.  The Town Denies Mr. McCoy's Third Extension Request and Orders Him to Remove the Trailer ................................................ 7

   I.  The Circumstances Underlying Mr. McCoy's Third Extension Request Were the Same ........................................................... 8

   J.  There Were Numerous Property Owners in Pittsfield with Unpermitted Storage Trailers Who Were Not Ordered to Remove Them................. 9

   K.  The Underlying Lawsuit and the District Court's Order ............ 10

SUMMARY OF ARGUMENT................................................. 12

ARGUMENT ............................................................... 14

   I.  Standard of Review ..................................................... 14

   II.  The District Court Erred in Granting Summary Judgment on Mr. McCoy's As-Applied Vagueness Claim............................................. 14

   III.  The District Court Erred in Granting Summary Judgment on Mr. McCoy's Equal Protection Claim. .................................................. 21

   IV.  The District Court Erred in Granting Summary Judgment on Mr. McCoy's Content- and Viewpoint-Based First Amendment Claim. ................. 26

CONCLUSION ............................................................ 28

CERTIFICATE OF COMPLIANCE ....................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Arlington County v. White*, 259 Va. 708, 719 (2000)............................................. 18

*Buckle Up Festival, LLC v. City of Cincinnati*, 336 F. Supp. 3d 882 (S.D. Ohio 2018)......................................................................................................................... 15

*Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006)................................. 25

*Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007)............................................. 25

*Dambrot v. Central Michigan Univ.*, 55 F.3d 1177 (6th Cir. 1995) ..................... 15

*Davis v. Coakley*, 802 F.3d 128 (1st Cir. 2015) ..................................................... 21

*Donovan v. City of Haverhill*, 311 F.3d 74 (1st Cir. 2002)................................... 21

*Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777 (1st Cir. 2011) ............................ 14

*Gianfrancesco v. Town of Wrentham*, 712 F.3d 634 (1st Cir. 2013) ................... 22

*Girard v. Town of Allenstown*, 121 N.H. 268 (1981)............................................. 19

*Hartford Fire Ins. Co. v. CNA Ins. Co. (Eur.)*, 633 F.3d 50 (1st Cir. 2011).......... 14

*McCoy v. Town of Pittsfield*, 2020 DNH 217....................................... 14, 21, 22, 23

*Piper v. Meredith*, 110 N.H. 291 (1970) ................................................................ 19

*United States v. Williams*, 553 U.S. 285 (2008)..................................................... 14

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ............................................................................................................... 14

**Statutes**

28 U.S.C. § 1291 ........................................................................................................ 1

28 U.S.C. § 1331 ........................................................................................................ 1

28 U.S.C. § 1332 ........................................................................................................ 1

28 U.S.C. § 1343 ........................................................................................................ 1

**Other Authorities**

Article 14, Section 3(e) of the Zoning Ordinance .................................................... 3

Article 2, Section 3 of the Zoning Ordinance........................................................... 3

**Rules**

Federal Rule of Appellate Procedure 4(a)(1)(A)....................................................... 1

Federal Rule of Civil Procedure 56(f)................................................... 2, 13, 26, 27

## JURISDICTIONAL STATEMENT

The District Court had original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Mr. McCoy's claims for violation of his freedom of speech and equal protection rights and under 28 U.S.C. § 1332 over Mr. McCoy's state law claims because there was diversity of citizenship among the parties, and the amount in controversy exceeded $75,000.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court's decision granting summary judgment on Mr. McCoy's remaining claims was a final decision disposing of the entire case.

The District Court entered its order and judgment on October 6, 2021.  Mr. McCoy filed his notice of appeal on November 4, 2021.  This appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1)      Whether the District Court erred in granting summary judgment on Mr. McCoy's as-applied vagueness claim, where the Town invoked a zoning ordinance provision to grant Mr. McCoy two extensions of a storage container permit in 2016 and 2017, despite the inapplicability of that Ordinance and its lack of any provision allowing extensions, and then applied the same ordinance to deny him a third) extension of his permit under the same circumstances.

2)      Whether the District Court erred in granting summary judgment on Mr. McCoy's equal protection claim, where Mr. McCoy was treated differently from others similarly situated, and there was no rational basis for the difference in treatment, because there were hundreds of trailers in Pittsfield that were not permitted and did not contain expressive content, and yet were allowed to remain on those properties, and the Town conceded it enforced the zoning ordinance against only three of those property owners – and Mr. McCoy.

3)      Whether the District Court erred in granting summary judgment as to Mr. McCoy's content- and viewpoint-based challenge to the ordinance without notice to the parties under Federal Rule of Civil Procedure 56(f), and despite the fact that neither party briefed that issue in their summary judgment filings.

## STATEMENT OF THE CASE

### A.    Mr. McCoy's Trailer

In early 2014, Mr. McCoy and his wife moved to Catamount Road in Pittsfield.  App. at 485.  Shortly after moving to Pittsfield, McCoy purchased a 52-foot trailer and had it delivered to his property.  *Id.*  McCoy initially used the trailer to store various items from his prior residence, as well as items from storage units he had purchased.  *Id.*  In August 2015, the Town's then-building inspector, Jesse Pacheco, instructed McCoy that he needed to obtain a storage container permit from the Town to keep the trailer on his property.  *Id.*  Accordingly, McCoy applied for and obtained a storage container permit from the Town for the trailer, effective September 1, 2015 (the "2015 Permit").  *Id.*

### B.    The Town's Zoning Ordinance

Article 2, Section 3 of the Zoning Ordinance defines a "storage container" as "a truck trailer, box trailer, school bus, MANUFACTURED HOUSING unit, or similar mobile container parked continuously for 31 days or more and **used principally for storage** and not used for any person's residential occupancy or transient lodging."

Article 14, Section 3(e) of the Ordinance prohibits maintaining a storage container on a lot for more than 12 months: "every STORAGE CONTAINER shall be permitted upon the following conditions and upon all other applicable

3

conditions in the zoning ordinance: . . . The sum of the time during which one or more STORAGE CONTAINERS are on any one LOT during any 15-month period shall be no more than 12 months."

### C. Mr. McCoy's Storage Container Permit

Consistent with the Ordinance, the 2015 Permit stated the trailer was permitted for storage purposes only for a period of one year, had to be removed by September 1, 2016, and was not allowed to be kept permanently.  App. at 486.

### D. Mr. McCoy's Principal Use of the Trailer for Political Speech

In January 2016, Mr. McCoy allowed his son to paint the side of his trailer with an image that reads "TRUMP! USA" with "2016" in smaller, red paint.  *Id.* As of January 29, 2016, the trailer appeared as follows in a social media posting:



*Id.* at 486-87.  Mr. McCoy testified that, from then onward, he was not using his

trailer principally for storage; instead, he was using it principally to display his

support for Donald Trump's bid for President of the United States.  *Id.* at 398-99,

487.  Storage was its secondary purpose.  *Id.* at 398-99.

### E.    The Ordinance Does Not Provide for Extensions of Storage Container Permits

The Town administrator, Cara Marston, admitted there was no process under

which Mr. McCoy could request an extension of his storage container permit, and

the Board had no authority to grant one.  *Id.* at 400-01.

### F.    The Town Ignored the Ordinance and Extended Mr. McCoy's Permit

On September 1, 2016, Mr. McCoy's storage container permit expired.  *Id.*

at 488.  Mr. Pacheco wrote to Mr. McCoy sometime in September or October 2016

and informed him the 2015 Permit expired, and that the trailer needed to be

removed.  *Id.*  In a handwritten letter dated November 3, 2016, Mr. McCoy wrote

to Mr. Pacheco and requested a six-month extension of the 2015 Permit.  *Id.* at

488-89.  Although he wrote in his letter that he was seeking an extension for

storage purposes, he did not state he was not using the trailer to express his support

for Trump.  *See id.*

On November 15, 2016, despite Ms. Marston's admission that the Ordinance

did not allow for extensions, the Town's Board of Selectmen *granted* McCoy's

request for an extension.  *Id.* at 401, 489.  At her deposition, Ms. Marston could

not identify any reason why the Board proceeded to "grant" Mr. McCoy's request. *Id.* at 401. She also admitted the Board's "extension" could not be considered a zoning variance because Mr. McCoy never invoked that process, and the Board had no authority to grant zoning variances. *Id.* at 401-02. For example, the Board could have instructed Mr. McCoy the object of his request (an extension of the permit) could only be attained through a zoning variance, but Ms. Marston conceded the Board neglected to do that. *Id.* at 402.

At this time, the Board members were aware Mr. McCoy was using the trailer to express his support for President Trump and were aware of at least one anonymous complaint about the trailer. *Id.* at 489.

## G.    The Town's Second Extension of Mr. McCoy's Storage Container Permit

Mr. McCoy continued to keep the trailer on his property into 2017. *Id.* In May 2017, Mr. Pacheco visited Mr. McCoy's property. *Id.* After this visit, Mr. McCoy requested a meeting with the Board. *Id.*

The Board met with Mr. McCoy during its June 13, 2017, meeting. *Id.* at 490. He made another request for an extension of his permit, this one for one year. *Id.* at 403, 490. Although Mr. McCoy again explained he needed the extension because it was taking him longer than expected to finish certain repairs on his home because he was handicapped and doing the work himself, he did not state he was not using the trailer to express his support for Trump. *See id.* The Board,

6

once again, "granted" his request for a one-year extension.  *Id.*  Like Mr. McCoy's

first extension request, the Board conceded it had no authority to grant this request

either.  *Id.*  The Town never informed Mr. McCoy he could not request another

extension of the permit, or that he should have sought a zoning variance.  *Id.* at

403.

## H.    The Town Denies Mr. McCoy's Third Extension Request and Orders Him to Remove the Trailer

By the end of July 2017, the side of the trailer that showed support for

President Trump had been painted over with a scene of hot air balloons and a

waving American flag.  *Id.* at 490.  The following image from social media shows

the side of the trailer at issue as of July 30, 2017 and its then-expressive content:



*Id.* at 491.  The back of the trailer, however, still contained the word "Trump."

App. at 557.

On May 22, 2018, the Board wrote to Mr. McCoy to remind him that his

storage container permit for the trailer was expiring in June 2018.  *Id.*  This time,

however, the Board told him the trailer needed to be removed from his property for

at least three months before he could apply for another permit.  *Id.* at 491-92.  Mr.

McCoy responded by letter dated May 29, 2018.  *Id.* at 492.  He explained he

needed more time to unload the trailer and requested another extension.  *Id.*

Although Mr. McCoy referenced the fact he was unloading the trailer, he did not

state he had ceased using the trailer for political expression.  *See id.*

The Board denied Mr. McCoy's request.  *Id.* at 404, 492.  The Board

acknowledged, once again, it had no authority to grant a third extension of the

permit.  *Id.* at 404.

## I.     The Circumstances Underlying Mr. McCoy's Third Extension Request Were the Same

The Town could not identify any reasoning (whether in the Ordinance or

elsewhere) why it denied Mr. McCoy's third extension request.  *See id*.  It

conceded there was nothing different between Mr. McCoy's third request and his

two prior requests.  *Id.* at 404-05.  Further, in "denying" Mr. McCoy's third

request, the Board inexplicably "granted" him a 30-day extension to enable him to

remove the trailer.  *Id.*

**J.    There Were Numerous Property Owners in Pittsfield with Unpermitted Storage Trailers Who Were Not Ordered to Remove Them**

At his deposition, Mr. McCoy identified numerous property owners in Pittsfield with unpermitted storage containers on their properties who were treated differently.  *Id.* at 405-06.  Mr. McCoy also submitted photographs of ___*several*___ ___*hundred*___ trailers or storage containers located on properties in Pittsfield that (but for approximately 12 of them) did not have storage containers and that the Town had not directed to be removed.  *Id.* at 405-06, 420-54.

Ms. Marston testified at her deposition that, during her time as Town Administrator (five years) only approximately 12 property owners in Pittsfield were granted permits for storage containers or trailers.  *Id.* at 406-07.  Three of those permits were for trailers on a property on Tilton Road, which Mr. McCoy did not include in the photographs referenced above.  *Id.* at 407.  Only one permit was granted for a trailer on Carroll Street; there are several other trailers, however, on Carroll Street.  *Id.*  Assuming eight other permits were granted, there were still numerous trailers or storage containers Mr. McCoy identified that did not have permits and that remained on properties in Pittsfield.  *Id.*

This should not have been a surprise.  At a Board of Selectmen meeting on May 23, 2017, the Town – through Mr. Pacheco – conceded there were trailers "all over the place" when Mr. McCoy made his second extension request in 2017.  *Id.* at 407, 455-69.  At the same meeting, Ms. Marston acknowledged there were

9

"other properties that are technically in violation" of the Ordinance, but the Town had done nothing concerning those trailers. *Id.* A Board Member (Carl Anderson) later reiterated that fact in his January 11, 2020, letter to Mr. McCoy: "what was obvious was that there were ***illegal*** storage containers all over the place." *Id.* at 470-71 (emphasis added). Ms. Marston conceded that, after the May 2017 Board meeting, the Town ***did not investigate*** whether Mr. Anderson's statement was true, i.e., that there were other unpermitted storage containers in Pittsfield. *Id.* at 407-08.

## K.     The Underlying Lawsuit and the District Court's Order

Mr. McCoy filed a lawsuit on March 20, 2020. App. at 1. He alleged four claims: violation of his freedom of speech (Count I), violation of his equal protection rights (Count II), and intentional and negligent infliction of emotional distress (Counts III and IV). *Id.* at 5-9. Count I alleged several bases for the violation of Mr. McCoy's freedom of speech: the Town's Ordinance as applied was overbroad, vague, and was a content- and viewpoint-based restriction. *Id.* at 6.

The Town moved for judgment on the pleadings as to Mr. McCoy's overbreadth and vagueness challenges to the application of the Ordinance *only*, and as to his equal protection claim. *Id.* at 18, 22. The District Court granted judgment on the pleadings on Mr. McCoy's overbreadth challenge. *Id.* at 18-20. It denied the Town's request for judgment on the pleadings as to the vagueness challenge.

10

*Id.* at 20-22.  The District Court noted "Mr. McCoy's complaint alleges enough facts to state a plausible claim of constitutional injury stemming from the Town's application of the ordinance against him; namely, that the Town applied the ordinance in a manner that discriminated against the content or viewpoint of his speech, and in a vague manner." *Id.* at 22; *see also id.* at 494.  The District Court also denied judgment on the pleadings as to Mr. McCoy's equal protection claim. *Id.* at 26.  The District Court granted judgment on the pleadings as to Counts III and IV.  *Id.*

The Town filed a Motion for Summary Judgment on June 1, 2021.  *Id.* at 28. The Town requested summary judgment *only* as to Mr. McCoy's as applied vagueness challenge to the Ordinance and his equal protection claim.  *See id.*  The Town neglected to seek summary judgment on Mr. McCoy's content- and viewpoint-based First Amendment challenge.  *See id.*   The District Court held a hearing on the Motion on September 17, 2021.  *Id.* at 512.

The Court issued an Order on October 6, 2021, granting the Town's Motion for Summary Judgment.  *Id.* at 482-511.

Mr. McCoy timely filed a notice of appeal.

## SUMMARY OF ARGUMENT

Mr. McCoy sued the Town of Pittsfield because it treated him and his trailer displaying his support for President Donald Trump differently than numerous other property owners who had similar trailers that did not contain expressive content. He alleged several claims in his Complaint.  After the District Court's order on the Town's Motion for Judgment on the Pleadings, three claims remained: an as-applied vagueness First Amendment challenge to the Town's zoning ordinance, a "class of one" equal protection claim, and a content- and viewpoint-based challenge to the same ordinance.

The Court should reverse the District Court's order granting summary judgment on these claims for several reasons.  First, concerning Mr. McCoy's as-applied vagueness challenge, the Town – through its Board of Selectmen – invoked a zoning ordinance provision to "grant" Mr. McCoy two "extensions" (one for six months and then one for a year) of a storage container permit in 2016 and 2017, respectively, despite the inapplicability of that ordinance and its lack of any provision allowing extensions, and then applied the same ordinance to *deny* him a third (one-year) extension of his permit in 2018 under the same circumstances. This arbitrary conduct could not provide a person of ordinary intelligence fair notice of what is prohibited, and was so standardless that discriminatory enforcement was inevitable.

12

Second, Mr. McCoy demonstrated his equal protection rights were violated because he was treated differently from others similarly situated, and there was no rational basis for the difference in treatment.  He produced evidence of hundreds of trailers in Pittsfield that were not permitted and did not contain expressive content, and yet were allowed to remain.  The Town conceded as much: it admitted in Board meetings that there were numerous unpermitted all over Pittsfield, and it admitted only 12 of those trailers were permitted, and it enforced the ordinance against only three property owners who had unpermitted trailers – as well as Mr. McCoy.

Third, the District Court granted summary judgment as to Mr. McCoy's content- and viewpoint-based challenge to the ordinance without notice to the parties under Federal Rule of Civil Procedure 56(f), and despite neither party having briefed that issue in their summary judgment filings.

At a minimum, the evidence on record is sufficiently open-ended to permit a rational factfinder to resolve the first two claims above in favor of either side. Alternatively, and at most, the District Court should have granted summary judgment in Mr. McCoy's favor because there was no genuine issue of material fact as to either claim.  The District Court should also have allowed the third claim (Mr. McCoy's content- and viewpoint-based challenge) to proceed to trial.

# ARGUMENT

## I.     Standard of Review

The standard of review of the District Court's grant of summary judgment is

*de novo*.  *Hartford Fire Ins. Co. v. CNA Ins. Co. (Eur.)*, 633 F.3d 50, 53 (1st Cir.

2011); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011).  This

Court "will reverse only if, after reviewing the facts and making all inferences in

favor of the party against whom summary judgment entered . . . , 'the evidence on

record is sufficiently open-ended to permit a rational factfinder to resolve the issue

in favor of either side.'"  *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st

Cir. 2011).

## II.     The District Court Erred in Granting Summary Judgment on Mr. McCoy's As-Applied Vagueness Claim.

"A law is unconstitutionally vague when it 'fails to provide a person of

ordinary intelligence fair notice of what is prohibited, or is so standardless that it

authorizes or encourages seriously discriminatory enforcement.'"  *McCoy v. Town*

*of Pittsfield*, 2020 DNH 217, 11 (quoting *United States v. Williams*, 553 U.S. 285,

292 (2008)).  "'The degree of vagueness that the Constitution tolerates - as well as

the relative importance of fair notice and fair enforcement - depends in part on the

nature of the enactment.'"  *McCoy*, 2020 DNH 217, 11 (quoting *Village of*

*Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)).

"'If, for example, the law interferes with the right of free speech or of association,

a more stringent vagueness test should apply.'" *Id.* A "law can also be held to be void for vagueness on discretionary enforcement grounds 'if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.'" *Buckle Up Festival, LLC v. City of Cincinnati*, 336 F. Supp. 3d 882, 887 (S.D. Ohio 2018) (quoting *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1183–84 (6th Cir. 1995)). "The key question is whether the provision 'provide[s] explicit standards guiding [its] enforcement." *Id.* (internal quotation and citation marks omitted).

For example, in *Buckle Up Festival*, the District Court held a municipal ordinance that required an admission tax to be paid to the city of Cincinnati based on amounts paid for admission to any public performance for profit in the city was unconstitutionally vague, where the ordinance defined "admission" to "include seats, chairs, tables and benches, reserved or otherwise, and other similar accommodations and charges made therefor." 336 F. Supp. 3d at 884. The Court held "the dictionary definition for 'accommodations' falls short of providing minimal guidelines to those who enforce this section of the Municipal Code." *Id.* The "Plaintiffs allege[d] that Defendants did not require them to pay the admissions tax for its 2012 Bunbury music festival, but did require them to pay the tax for the 2013 Bunbury music festival." *Id.* The Court held "[t]his allegation

15

supports Plaintiffs' claim that Section 309-3 is vague, and therefore leads to arbitrary, discriminatory and overzealous enforcement." *Id.*

Here, the District Court summarily dismissed Mr. McCoy's argument that the Ordinance does not apply because, it concluded, "it is unclear how that would affect McCoy's vagueness claim." App. at 499. For example, the Court reasoned: "if . . . his trailer was not a 'storage container' as defined in the ordinance, the select board should have denied his initial application for a storage container permit." *Id.* That is irrelevant.[1] Regardless whether the Board properly granted Mr. McCoy a storage container permit in 2015, the Board granted an extension of that permit the following year despite (1) knowing Mr. McCoy was no longer using the trailer principally for storage and, instead, was using it to express his support for President Trump and (2) receiving at least one anonymous complaint about the trailer. *Id.* at 489. The Town purported to apply the Ordinance when it no longer applied to "grant" Mr. McCoy an extension that he did not need.

This misapplication continued: The Town ultimately applied the Ordinance to "grant" Mr. McCoy *two* "extensions" (one for six months and then one for a year) of his storage container permit in 2016 and 2017, respectively, but then

---

[1] It is also unsupported. There was no testimony in the record regarding what the Town would or would not have done if it had determined the Ordinance did not apply.

applied the Ordinance to *deny* him a third (one-year) "extension" of his permit (while granting him a brief 30-day extension of the same permit to allow him to remove the trailer). There was nothing different about Mr. McCoy's third extension request.

To complicate its arbitrary enforcement of the Ordinance, there was no authority in the Ordinance for extensions. The District Court concluded "the Town has not conceded . . . it had no authority to grant a permit extension." *Id.* at 499. That is inaccurate: the Town admitted the Ordinance contains no "process" for extending a permit:



*Id.* at 400.  The distinction between "process" and "authority" is a matter of semantics: if there is no process for providing an extension, then there cannot be any authority for doing so.  *See id.*

The District Court, nevertheless, concluded the Town could grant extensions from the Select Board's broad power to "have charge of administering and enforcing the zoning ordinance."  *Id.* at 499-500.  "The authority to administer and enforce the ordinance," as the District Court's logic goes, "includes the authority and discretion to decide whether to grant storage container permits and extensions of existing permits."  *Id.* at 500.  In other words, the District Court *invented* a new power for the Select Board that directly conflicts with its own governing Ordinance: it may now grant extensions of storage container permits despite the fact the Ordinance prohibits maintaining a storage container on a lot for more than 12 months.  Indeed, by relying on the broad authority above, a court could assign a municipal board with *any* authority it deems appropriate to justify a challenged result.

New Hampshire, however, follows "Dillon's Rule," which "provides that municipal corporations have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable."  *Arlington County v. White*, 259 Va. 708, 719 (2000). "[T]owns are but subdivisions of the State and have only the powers the State

18

grants to them." *Piper v. Meredith*, 110 N.H. 291 (1970). "[T]owns only have 'such powers as are *expressly granted* to them by the legislature and such as are *necessarily* implied or incidental thereto.'" *Girard v. Town of Allenstown*, 121 N.H. 268, 270-71 (1981) (quoting *Piper v. Meredith*, 110 N.H. 291, 295 (1970)) (emphases in original). These authorities, therefore, provide that cities and towns are not allowed to add to their authority or reduce their responsibilities unless the legislature permits them. The only things towns and cities may do in New Hampshire are those things that the state legislature has directly authorized them to do in a statute, or that are "necessarily implied" by such a grant of authority.

Here, nothing in the Ordinance provided the Town with the authority to extend a storage container period beyond the time period contained in it, and the Town properly conceded it had no such "process" for doing so. The District Court's assertion that Mr. McCoy "provides no authority stating otherwise" flips the Tenth Amendment on its head: Dillon's Rule provides that municipalities do not have inherent power whereby a resident must produce his/her own authority that *prevents* the municipality from undertaking certain action. Rather, the Rule states a municipality must find its authority in an *expressly-granted* power, or *necessarily or fairly imply it* from expressly-granted powers. That is not the case here.

19

The Town's lack of authority for extensions is further belied by the facts it could not identify any reasoning for its denial of Mr. McCoy's third extension request in 2018 and its admission that the circumstances were the same.  *See* App. at 404-05.  The District Court reasons that "[a]t least two key factors differentiate McCoy's third extension request from his prior requests": the passage of time and the fact Mr. McCoy painted over the expressive content on the trailer.  *Id.* at 500. Neither factor matters,[2] and the Court's reasoning suffers from the same logical gap above concerning the authority to grant extensions: the Ordinance does not authorize the Board to consider any factors when determining whether to grant an extension *because there is no process at all for extensions*.  Whatever the Board considered – its "balancing" of the terms of the Ordinance with Mr. McCoy's request, etc., *see id.* at 502 – was not authorized by the Ordinance.  Without such authority, the Board essentially created rationales and bases for whether to grant or deny Mr. McCoy's third extension request out of whole cloth.  That arbitrary and unpredictable process prevents a person of ordinary intelligence from having fair notice of what is prohibited, and there are no standards whatsoever such that discriminatory enforcement is inevitable.

---

[2] Even if they mattered, the passage of time is present in every instance or action, and the back of the trailer still showed the word "Trump."

The Board's conduct demonstrates it applied the Ordinance in an arbitrary and discriminatory fashion: it acknowledges Mr. McCoy did not use the trailer principally for storage (and, thus, that the Ordinance did not apply to it) but then required him to maintain a storage container permit, and it concedes it had no authority or process under the Ordinance to extend that permit but then granted Mr. McCoy two extensions of his permit and then denied him a third extension. The Town's application of the Ordinance was unconstitutionally vague.

## III.    The District Court Erred in Granting Summary Judgment on Mr. McCoy's Equal Protection Claim.

To prevail on this claim, Mr. McCoy must show he "has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *McCoy*, 2020 DNH 217, 14 (quoting *Donovan v. City of Haverhill*, 311 F.3d 74, 77 (1st Cir. 2002)).[3] "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" *McCoy*, 2020 DNH 217, 14 (quoting *Davis v. Coakley*, 802 F.3d 128, 133 (1st Cir. 2015)). "Although '[e]xact correlation [between comparators] is neither likely nor necessary, . . . 'a class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all

---

[3] At the end of its Order, the District Court addresses whether Mr. McCoy provided proof of discriminatory intent. *See* App. at 508-09. That analysis and requirement are irrelevant for purposes of a "class of one" claim. *See McCoy*, 2020 DNH 217, 14

respects relevant to the challenged government action.'"  *McCoy*, 2020 DNH 217, 14 (*Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013)).

### A.    Mr. McCoy was treated differently from others similarly situated.

The Town alleged, in its Motion, that "[n]o reasonable jury could examine the undisputed facts . . . and conclude that McCoy was discriminated against based on his support for President Trump or his use of his Storage Container to express that support, or any other factor."  App. at 44.  The Town phrased the question incorrectly.

In its Order on the Town's Motion for Judgment on the Pleadings, the District Court correctly summarized Mr. McCoy's claim as follows: "McCoy asserts that the ordinance, as applied by Pittsfield, impermissibly creates two classes of residents - persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech - and argues that the Town treats these classes differently in violation of the Constitution."  *McCoy*, 2020 DNH 217, 13.  Accordingly, "the relevant comparison points are property owners in Pittsfield with unpermitted storage containers on their properties, including trailers."  *Id.* at 14.

The District Court labeled the evidence Mr. McCoy provided in his Objection to the Town's Motion for Summary Judgment "too conclusory or speculative" because his "declaration and photographs provide incomplete or

inadequate information to show that these other trailers were similarly situated to McCoy." App. at 506. Specifically, the District Court identified it could not "decipher from the evidence which of the alleged comparators may be 'grandfathered' in;" and Mr. McCoy's declaration was "missing other information about the trailers," such as whether they were parked in the same location; whether they were being used for "residential occupancy or transient lodging,"; whether they were unpermitted; whether they received permit extensions; and whether the Town had undertaken enforcement action against them. *Id.* at 507. The Court's analysis is incorrect.

The first three comparison points above (whether the trailers were "grandfathered," whether they were parked in the same location, and whether they were being used for "residential occupancy or transient lodging") were not included in the District Court's recitation of the applicable comparison points: "persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech - and argues that the Town treats these classes differently in violation of the Constitution." *McCoy*, 2020 DNH 217, 13. Like its analysis above, the Court inserted them here out of whole cloth. They are irrelevant to the standard the Court identified. Nor was it Mr. McCoy's burden to demonstrate them. There was

also was no evidence in the record below concerning them, let alone any evidence

sufficient to demonstrate there was no dispute of fact.[4]

Contrary to the Court's contention, the remaining three comparison points

*were* explained, not only by Mr. McCoy *but by the Town as well*.  Mr. McCoy

identified numerous property owners in Pittsfield who had storage containers on

their properties that were unpermitted, and he submitted photographs of several

hundred trailers or storage containers located on properties in Pittsfield that did not

have permits and that the Town had not directed to be removed.  *See* App. at 405-

06, 420-54.  Ms. Marston testified on behalf of the Town that only approximately

12 of these trailers or storage containers were granted permits.  *Id.* at 406-07.  That,

of course, implies that there remained ***hundreds*** of trailers or storage containers

Mr. McCoy identified that did not have permits and that remained on properties in

Pittsfield.

---

[4] Rather, the Town's utter lack of enforcement demonstrates either that the many unpermitted trailers Mr. McCoy identified *were not grandfathered* or there was no evidence that they were. *See* App. at 507.  The New Hampshire Supreme Court has held that "[t]he burden of establishing that the use in question is fundamentally the same use and not a new and impermissible one is on the party asserting it."  *New London v. Leskiewicz*, 110 N.H. 462, 467 (1970).  If the Board had been enforcing the Ordinance uniformly, it would presume every unpermitted trailer violated it unless (1) the property owner had a permit, which would be recorded in the file for that lot, or (2) the property owner – consistent with *Leskiewicz* – had proven grandfathering in response to an enforcement investigation, which would be recorded in the file for the lot.  Instead, the Board had no clue whether any of those unpermitted trailers were grandfathered.  *See* App. 462-63 (Mr. Pacheco stated unpermitted trailers "are all over the place but are they grandfathered or not would be another question.").  This ignorance demonstrates the Board never investigated them and, thus, discriminated against Mr. McCoy by enforcing the Ordinance against him but not the many other unpermitted trailers in town.

Mr. McCoy's declaration and photographs merely confirmed what the Town had conceded *for years*: there were many unpermitted or "illegal" storage containers all over town. *See Id.* at 455-71. The Town never investigated these other storage containers. It argued it undertook enforcement action against only *three* property owners with unpermitted trailers, *see id.* at 46-47, and there was no dispute of fact it failed to address many other unpermitted trailers located in Pittsfield, including many of those Mr. McCoy identified. In contrast, in addition to those three property owners, it directed *Mr. McCoy* to remove his trailer and conceded it lacked any reasoning or basis for doing so.

The Town alleged its enforcement action against three property owners constituted an "ample history" of enforcement activity, and the District Court concluded those three enforcement cases (against hundreds of unpermitted trailers) "may be enough to defeat a 'class of one' equal protection claim." *Id.* at 507 n.31. The cases cited by the District Court on this point, however, concern vastly different facts: in *Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007), the plaintiff landowners provided no evidence at all showing they were similarly situated with a nearby yacht club. *Id.* at 252-55. In *Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006), the court addressed whether the plaintiff's development was similarly situated with just *one other development* and concluded the planning commission had treated both developments fairly similarly. *Id.* at 1317.

The Town knew there were hundreds of unpermitted trailers in Pittsfield, and it undertook no enforcement activity except for three of them and Mr. McCoy. There was no evidence of any other enforcement activity.  The Town abdicated its responsibility concerning the rest of these trailers.

**B.**    **The Town lacked any rational basis for its disparate treatment of Mr. McCoy.**

The District Court concluded Mr. McCoy "offers no evidence to show that the Town did not have a rational basis for ordering him to remove the trailer in June 2018," and there was no "evidence of an arbitrary or irrational motive for [the] Town's order to remove the trailer."  App. at 509-10.  This is also inaccurate.

The Town ***conceded*** it had no rational basis.  Ms. Marston agreed the Ordinance provided no authority for extensions; the Town could not identify any reason why the Board extended Mr. McCoy's permits twice; and the Town could not identify any reasoning why it denied Mr. McCoy's third extension request.  *Id.* at 401, 404-05.

**IV.**    **The District Court Erred in Granting Summary Judgment on Mr. McCoy's Content- and Viewpoint-Based First Amendment Claim.**

Federal Rule of Civil Procedure 56(f) states "***After giving notice and a reasonable time to respond,*** the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider

summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." (Emphasis added.)

The District Court concedes "neither party separately briefed the content and viewpoint discrimination claim and counsel for the parties admitted at oral argument that they mistakenly believed that the court had dismissed this claim." App. at 494. Indeed, the Town conceded at the September 17 hearing that it believed that – with respect to Mr. McCoy's First Amendment claim – "the only thing that was properly pled was that its application was impermissibly vague." *Id.* at 556. The Town's Motion for Summary Judgment and corresponding Memorandum of Law contain no argument concerning Mr. McCoy's content- and viewpoint-based claim. *See id.* at 28-53. The Town's first argument requesting summary judgment on that portion of Mr. McCoy's claim occurred at the September 17 hearing. *See id.* at 558-59. There is also nothing in the District Court's docket advising the parties to brief that issue.

In a footnote, the District Court appears to reverse course and claims Mr. McCoy "was on notice that the Town was seeking summary judgment on all remaining claims," and Mr. McCoy "had ample opportunity to present [evidence]" to support his claim." *Id.* at 494 n.20. This explanation makes no sense in light of the facts that the Town never briefed that claim (and, thus, did not meet its burden of proof on it), and the Court never provided notice to the parties that they should

27

brief that issue. *Id.* at 28-53, 494. The proper procedure, under Rule 56(f), would have been for the Court to provide notice to the parties, along with a reasonable period of time, to address Mr. McCoy's content- and viewpoint-based First Amendment claim.

The District Court did not do that. Instead, it undertook an analysis of that portion of the claim, reviewed only the evidence presented by the parties as to the *other* two claims addressed in the Town's Motion, and concluded Mr. McCoy "neither provides nor points to any evidence to support his claims that the Town enforced the ordinance against him in a discriminatory manner based on its content, or targeted McCoy because the trailer expressed a viewpoint supporting President Trump." *Id.* at 496. That should not be surprising: as the Court conceded, *the parties never briefed or addressed that issue.* This was a clear – an shocking – legal error. The District Court erred in granting summary judgment on Mr. McCoy's content- and viewpoint-based First Amendment claim.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's Order.

Respectfully submitted,

JOSEPH McCOY,

By His Attorneys,

FOJO LAW

Dated:  April 15, 2022                    */s/Robert M. Fojo*            
                                               Robert M. Fojo, Esq. (#1191945)
                                               264 South River Road, Suite 464
                                               Bedford, NH 03110
                                               (603) 473-4694
                                               rfojo@FojoLaw.com

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains fewer than 13,000 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in Times New Roman, a proportionally spaced typeface.

Dated:  April 15, 2022                    */s/Robert M. Fojo*            
                                               Robert M. Fojo, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 15, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court of the United States Court of Appeals for the First Circuit by using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.


Dated:  April 15, 2022                    */s/Robert M. Fojo*
                                          Robert M. Fojo, Esq.

**ADDENDUM**

**TABLE OF CONTENTS**

MEMORANDUM ORDER ................................................................... 32

TRANSCRIPT OF SEPTEMBER 17, 2021 HEARING ...................................... 62

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joseph McCoy

v.                                       Civil No. 1:20-cv-362-JL
                                         Opinion No. 2021 DNH 158
Town of Pittsfield

**<u>MEMORANDUM ORDER</u>**

After the court's denial of Defendant Town of Pittsfield's motion for judgment on the pleadings regarding certain counts of this civil rights lawsuit involving a political message on a trailer in a residential yard, two of Plaintiff Joseph McCoy's claims remain:  Count 1 for violation of his free speech rights, and Count 2 for violation of his equal protection rights. [1]  The Town now moves for summary judgment on these claims, arguing that the undisputed factual record demonstrates that the Town did not apply its zoning ordinance against him in an unconstitutionally vague manner or in any other way that violated his First Amendment rights, and did not selectively enforce the ordinance against him in violation of his equal protection rights.[2]  The Town also moves to strike a declaration and attachments to the declaration McCoy submitted as part of his objection to the summary judgment motion.[3]  This court has jurisdiction over McCoy's claims under 28 U.S.C. §§ 1331 and 1343 because the claims present federal questions and arise from federal civil rights statutes.

After consideration of the parties' submissions and hearing oral argument, the court grants the Town's motion for summary judgment and denies its motion to strike.  As for the

---

[1] Doc. no. 13.

[2] <u>See</u> Motion for Summary Judgment (doc. no. 17).

[3] <u>See</u> Motion to Strike (doc. no. 23).

content or viewpoint discrimination aspects of McCoy's First Amendment claim, summary

judgment is appropriate because McCoy cannot "point to specific, competent evidence" that

Town officials discriminated against him based on the expressive content on his trailer.

Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012).  McCoy's

vagueness claim suffers the same fate because no reasonable fact finder could conclude that the

Town's application of the storage container ordinance failed to provide a person of ordinary

intelligence fair notice of what was prohibited, was so standardless that it authorized or

encouraged seriously discriminatory enforcement, or even led to discriminatory enforcement in

McCoy's case.  Finally, the Town is entitled to summary judgment on McCoy's "class of one"

equal protection claim because he has not met his burdens of production and persuasion to

identify similarly situated landowners, demonstrated that the Town treated him differently than

these alleged comparators, or proven that the Town did not have a rational basis for its

enforcement of the ordinance against him.

## I.    **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor

at trial by a rational fact-finder, and "material" if it could sway the outcome under applicable

law.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  In analyzing a summary

judgment motion, the court "views all facts and draws all reasonable inferences in the light most

favorable to the non-moving party."  Id.

The Town also moves to strike the entire McCoy declaration and attachments thereto

under Fed. R. Civ. P. 37(c)(1).  "If a party fails to provide information or identify a witness as

required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Thus, "the baseline rule is that the required sanction in the ordinary case is mandatory preclusion of late-disclosed information." Harriman v. Hancock County, 627 F.3d 22, 29 (1st Cir. 2010) (quotation marks and bracketing omitted). The court considers several factors in determining whether preclusion is appropriate, including "the sanctioned party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket, and the sanctioned party's need for the precluded evidence." Id. at 30 (citing Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009)).

Moreover, under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[P]ersonal knowledge is the touchstone" of the admissibility analysis. Perez v. Volvo Car Corp., 247 F.3d 303, 315–16 (1st Cir. 2001). In addition, an affidavit's statements "must concern facts as opposed to conclusions, assumptions, or surmise" to be admissible. Id. at 316. Finally, because Rule 56 "requires a scalpel not a butcher knife," a court must only strike the portions of an affidavit that are inadmissible, while crediting the remaining portions. HMC Assets, LLC v. Conley, No. CV 14-10321-MBB, 2016 WL 4443152, at *2 (D. Mass. Aug. 22, 2016) (Bowler, M.J.) (quoting Perez, 247 F.3d at 315).

34

II.    **Background**

The following facts are undisputed, unless otherwise noted.  See L.R. 56.1(b) ("All

properly supported material facts set forth in the moving party's factual statement may be

deemed admitted unless properly opposed by the adverse party.").

In early 2014, McCoy and his wife moved to Catamount Road in Pittsfield.  Shortly after

moving to Pittsfield, McCoy purchased a 52-foot trailer and had it delivered to his property.

McCoy used the trailer to store items from his prior residence, as well as items from storage units

he had purchased.[4]  He also kept tools and other items in the trailer so that he could perform

maintenance or other renovation work on his property.[5]  In August 2015, the Town's then

building inspector, Jesse Pacheco, visited McCoy's property to conduct an inspection relating to

a building permit that McCoy had obtained for work on his home.  During the inspection,

Pacheco noticed the trailer and told McCoy that he needed to obtain a storage container permit[6]

from the Town to keep the trailer on his property.

---

[4] McCoy Depo. (doc. no. 17-2), at 25:1-13.

[5] Id.

[6] From 1997 to 2015, the Town's Zoning Ordinance defined "storage container" as "any truck trailer, box trailer, school bus, mobile home or other similar facility used for storage or other purposes."  In 2016, the Town amended this definition in its ordinance to define a "storage container" as "a truck trailer, box trailer, school bus, MANUFACTURED HOUSING unit, or similar mobile container parked continuously for 31 days or more and used principally for storage and not used for any person's residential occupancy or transient lodging."  Ordinance, Article 3.

4

McCoy then applied for and obtained a storage container permit from the Town for the trailer,[7] effective September 1, 2015 (the "2015 Permit").[8]  Article 14 of the Town's Zoning Ordinance, applicable to storage containers, now provides (as it did when McCoy applied for his permit) that regulating and permitting conditions for storage containers are intended "to promote the general welfare by protecting the aesthetics of the town."  Under the ordinance, storage containers must be used only for storage, must meet certain setback requirements, and must not be kept on a lot for longer than 12-months during any 15-month period.  Consistent with this section of the ordinance, the 2015 Permit stated that the trailer was permitted for storage purposes only for a period of one year, must be removed by September 1, 2016, and was not allowed to be kept permanently.

Later in 2015, McCoy rented another storage container to keep on his property, but did not obtain a storage container permit for the rental container.  In January 2016, McCoy allowed his son to paint the side of his trailer with an image that reads "TRUMP! USA" with "2016" in smaller, red paint.  As of January 29, 2016, the trailer appeared as follows in a social media posting:

---

[7] The permit lists the serial number, make, and manufacturer of McCoy's trailer and McCoy does not dispute that these numbers are associated with some other trailer or container.

[8] See 2015 Permit, Exhibit 2 to Marston Affidavit (doc. no. 17-3).

5



McCoy Depo., Ex. D (doc. no. 17-2).

McCoy continued to use the trailer for storage but also used it to express his support for then-candidate Trump's bid to become President of the United States. In August 2016, the Concord Monitor published an article about the trailer and McCoy's support for candidate

6

37

Trump, which attracted more attention to the trailer and McCoy's property.  A staff photographer

from the Concord Monitor photographed the trailer as part of the article, as shown in the

following image:



Ex. A to McCoy Depo. (doc. no. 17-2), at 112.  This photograph depicts the expressive content at

issue in this lawsuit.

On September 1, 2016, McCoy's storage container permit for the trailer expired.

Pacheco wrote to McCoy sometime in September or October 2016 and informed him that the

2015 Permit had expired and that the trailer needed to be removed pursuant to Article 14, Section

3 of the ordinance.[9]  The Town also notified McCoy that he needed to remove the unpermitted

rental container, which did not feature any expressive content.  By handwritten letter dated

---

[9] 2016 Notice of Violation, Ex. 3 to Marston Affidavit (doc. no. 17-3).

November 3, 2016, McCoy wrote to Pacheco and requested a six-month extension of the 2015 Permit.[10]  In his letter, McCoy wrote that he was seeking a six-month extension "to keep [his] tools and materials inside this trailer while [he] deal[t] with [an] emergency construction situation."  McCoy also cited the fact that he was handling the construction work himself and was "physically handicapped," but would "complete this task [of removing the trailer in six months] in order to remain with good standards for this town and it's [sic] rules as a Pittsfield home owner."

On November 15, 2016, the Town's select board met and considered McCoy's request to keep his trailer for an additional six months.  On a motion by Selectman Carl Anderson, which passed by unanimous vote, the board granted McCoy's request.  At this time, Anderson and other board members were well aware that McCoy was also using the trailer to express his support for President Trump.  The board granted McCoy's extension request despite having received at least one anonymous complaint[11] about the trailer and despite the fact that the applicable section of the ordinance prohibits storage containers from remaining on a lot for more than 12 months in any 15-month period.

McCoy continued to keep the trailer on his property into 2017 and in May 2017, Pacheco visited McCoy's property.  After this visit, McCoy requested a meeting with the select board. The board discussed McCoy's trailer during its May 23, 2017 meeting, but tabled any decisions about the trailer until McCoy could appear before the board.  In the board's minutes from the

---

[10] Nov. 2016 Letter, Ex. F to McCoy Depo. (doc. no. 17-2), at 117.

[11] The Town has no record of who submitted the complaint or the basis for the complaint, and Town witnesses similarly have no recollection of the complainant's identity or complaint's basis.

May 23 meeting, there is no discussion of McCoy's trailer being used to express support for President Trump or any other expressive purposes.

The board met with McCoy during its June 13, 2017 meeting. McCoy explained that it was taking him longer than expected to finish the repairs on his home because he was handicapped and doing the work himself. He then requested another extension of the storage container permit for the trailer, this time for one year, and that he planned to "get rid" of the trailer after that. McCoy did not mention the trailer being used as a sign or indicate any interest in applying for a sign permit (a separate Town process) during this meeting. According to minutes from this meeting, the board agreed to "extend the permit for one year." On June 13, 2017, the board approved a new storage container permit for McCoy's trailer.[12]

By the end of July 2017, the side of the trailer that showed support for President Trump had been painted over with a scene of hot air balloons and a waving American flag. The following image from social media shows the side of the trailer at issue as of July 30, 2017:

---

[12] At oral argument, counsel for both parties suggested that the distinction between granting a permit extension or a new permit was one of terminology, not of substance. The court accepts this premise for purposes of this order.



Ex. H to McCoy Depo (doc. no. 17-2), at 119.

For the remainder of 2017 and well into 2018, the trailer continued to display the balloon

scene.  On May 22, 2018, the select board wrote to McCoy to remind him that his storage

container permit for the trailer was expiring in June 2018.  The board also reminded McCoy that

the trailer needed to be removed from his property for at least three months before he could

10

apply for another permit to "bring it back."[13]  McCoy responded by letter dated May 29, 2018.

In his letter, McCoy referenced the fact that he had two trailers to unload and that he had emptied

one, but because he was disabled, the task of emptying the other one was taking longer.  McCoy

then requested "another permit in order to accomplish this huge task."[14]

The select board met on June 12, 2018 and considered McCoy's request.  After some

deliberation, the board voted to deny the request.  The following day, Town Administrator Cara

Marston (then Cara Hayes) wrote McCoy to inform him of the board's decision.  In her letter,

Marston noted that while the board understood the "personal circumstances that have caused

delay, [it] ha[d] to balance the terms of the zoning ordinance with [his] request," and voted to

deny it.[15]  The board allowed McCoy an additional 30 days to remove the trailer from his

property.  Thereafter, McCoy sold the trailer to a local business and removed it from his

property.  The Town did not impose any penalties or take any other enforcement actions against

McCoy relating to his trailer, other than to confirm that the trailer was removed following the

board's June 2018 decision.

McCoy and the Town had no further engagement regarding the trailer until almost two

years later when McCoy sued, alleging that the Town's actions regarding his trailer were

discriminatory and motivated by political animus.[16]  After answering the complaint, the Town

moved for judgment on the pleadings[17] and the court granted the motion in part and denied it in

---

[13] May 2018 Letter, Ex. 8 to Marston Affidavit (doc. no. 17-8), at 32.

[14] McCoy 2018 Letter, Ex. 9 to Marston Affidavit (doc. no. 17-8), at 33.

[15] Marston 2018 Letter, Ex. 12 to Marston Affidavit (doc. no. 17-8), at 47.

[16] See Doc. no. 1.

[17] See Doc. no. 10.

part.[18]  The parties exchanged some written discovery, although it appears McCoy has not responded to the Town's interrogatories or requests for production of documents, and deposed some witnesses.  The Town filed its motion for summary judgment on the agreed-upon deadline for such motions.

McCoy appears to argue that disputes of material fact preclude summary judgment for the Town.  First, McCoy alleges that beginning in mid-2016, he did not use the trailer principally for storage; he instead used it principally to display his support for President Trump and secondarily for storage.  McCoy contends that this fact is material because it shows that the Town should not have applied the storage container section of the ordinance against him at all, and that once it did apply that section, its application was unconstitutionally vague.  McCoy next alleges that there are numerous other unpermitted storage containers in Pittsfield that the Town has not taken enforcement action against.  As explained below, neither of these alleged factual disputes, if they can even be characterized as such, are sufficiently genuine or material to warrant denial of the Town's motion.

## III.    **Analysis**

Counts 1 and 2 of McCoy's complaint arise from 42 U.S.C. § 1983.  To prevail on his § 1983 claims, McCoy establish two elements:  "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013).  The Town argues that even viewing the undisputed factual record in

---

[18] See Doc. no. 13.

McCoy's favor, McCoy cannot establish, as a matter of law, that the Town's conduct violated his constitutional rights. The court addresses each count in turn.

### A.    Count 1 - First Amendment

#### 1.    As-applied content or viewpoint discrimination

Because there was some confusion at oral argument about the nature of the claims McCoy is asserting in Count 1, the court summarizes the status of those claims here. In his complaint, McCoy consolidated three types of First Amendment claims into Count 1: content or viewpoint discrimination, overbreadth, and vagueness. After the court's order on the Town's motion for judgment on the pleadings, only the content or viewpoint discrimination and vagueness claims remained. Indeed, the court's order was clear that the content or viewpoint discrimination aspects of Count 1 survived the Town's motion for judgment on the pleadings.[19] Notwithstanding this clarity, neither party separately briefed the content and viewpoint discrimination claim and counsel for the parties admitted at oral argument that they mistakenly believed that the court had dismissed this claim.[20]

---

[19] Doc. no. 13, at 8; 18 ("For the reasons set forth above, Pittsfield's motion for judgment on the pleadings is GRANTED as to Counts 3, 4, and the overbreadth portion of Count 1, and DENIED as to the remainder of Count 1 and all of Count 2. Counts 3 and 4 and the overbreadth portion of Count 1 are dismissed with prejudice.").

[20] McCoy's counsel initially conceded at oral argument that he was no longer pursuing the content or viewpoint discrimination claim and acknowledged that the direct evidence of discrimination, if any, was thin at best. He later argued that he misunderstood the court's judgment on the pleadings order and did not raise content or viewpoint discrimination in his summary judgment briefing because the Town's motion did not explicitly address this claim. This explanation is difficult for the court to accept. McCoy was on notice that the Town was seeking summary judgment on all remaining claims and the Town was clear that part of its argument was that there "is no evidence of discrimination." Doc. 17-1, at 2, 15. Since the beginning, this case has been about McCoy's allegation that the Town ordered him to remove his trailer because the trailer depicted the word "TRUMP" and that this decision was a "content-based and viewpoint-based restriction on speech." Complaint (doc. no. 20) at ¶¶ 20, 29. If, in the face of a summary judgment motion seeking complete dismissal of his lawsuit, McCoy had

The Town nevertheless argues that the undisputed facts show that it did not discriminate against McCoy based on the expressive content or political speech on his trailer.  The court agrees.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015) (quoting U.S. Const. amend. I).  "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  United States v. Stevens, 559 U.S. 460, 468 (2010) (citing Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002)).

The government may restrict speech in nonpublic fora "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'"  Cornelius v. NAACP Legal Defense and Education Fund, Inc., 473 U.S. 788, 800 (1985) (quoting Perry Educational Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 46 (1983)).  "The existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination."  Id. at 811.

First Amendment jurisprudence recognizes varying levels of discrimination.  Content discrimination occurs whenever a government regulates "particular speech because of the topic discussed or the idea or message expressed."  Reed, 135 S.Ct. at 2226-27.  Content-based restrictions "are subject to strict scrutiny, which requires the government to demonstrate that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest.'"

---

evidence to support this aspect of Count 1, he had ample opportunity to present it and failed to do so.

Signs for Jesus v. Town of Pembroke, NH, 977 F.3d 93, 101 (1st Cir. 2020) (quoting Reed, 135 S.Ct. at 2218).  Viewpoint discrimination is "an egregious form of content discrimination" in which "the government targets not subject matter, but particular views taken by speakers on a subject."  Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

In cases like this one involving political speech, the "First Amendment's guarantee of free speech applies with special vigor" and "affords the broadest protection to such political expression in order to ensure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people."  See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 51 (1st Cir. 2011) (quotations omitted).

McCoy neither provides nor points to any evidence to support his claims that the Town enforced the ordinance against him in a discriminatory manner based on its content, or targeted McCoy because the trailer expressed a viewpoint supporting President Trump.  In fact, the record evidence suggests the opposite.  During the time that the trailer contained the expressive content at issue, the select board granted McCoy two extensions of storage container permit and allowed him to keep the trailer on his property far longer than the express terms of the ordinance contemplated.  It was only in June 2018, well after the expressive content was removed from the trailer, that the Town ordered McCoy to remove it and refused to grant him any more permit extensions.[21]

---

[21] McCoy's counsel asserted at oral argument that the back side of the trailer continued to say "Trump," even after the main section facing the road was painted over with the balloon scene, implying that this somehow showed the Town's discriminatory animus.  McCoy's claims have never been about the alleged expressive content on the back side of the trailer.  Instead, starting with the complaint, McCoy has focused on the larger, 52-foot length, part of the trailer that faced the road and caught the Town's and public's attention.  See doc. no. 1, at ¶ 10 ("In July 2016, Mr. and Mrs. McCoy's son, Brian Bales, painted the word 'TRUMP' on the trailer in large white letters (against a green background).").  McCoy has also presented no evidence that anyone from

15

There is no evidence in the record from which a reasonable jury could conclude that members of the select board or other Town officials at any time held discriminatory animus against McCoy resulting from his use of the trailer to express support for President Trump. Similarly, there is no evidence that Town officials held animus but did not act on it during the time the trailer expressed support for Trump, waited until the trailer no longer showed support for Trump, and *only then* decided to punish McCoy for his prior support for Trump by requiring him to remove the trailer. Nor is there evidence that Town officials harassed McCoy because of the expressive content on his trailer, as he alleged in his complaint.

When pressed about this at his deposition, McCoy answered that Town officials informed him that they had received complaints about his trailer and enforced the ordinance against him as a result of those complaints.[22] Even if the court accepted as true McCoy's allegation that the select board ordered him to remove the trailer in response to anonymous, non-specific complaints, no rational factfinder could conclude that this demonstrates the Town's discriminatory animus. Nor does the Town's decision to enforce its own ordinance in 2018 (when he was plainly in violation of the ordinance) show that it discriminated against McCoy based on the content or viewpoint expressed on the trailer in 2016 and 2017. The Town is entitled to judgment as a matter of law on this aspect of McCoy's First Amendment claim.

---

the Town knew that the back side of the trailer allegedly continued to display his support for President Trump.

[22] McCoy Depo. (doc. no. 17-2), at 98:2-99:19-20, 100:20-101:5.

2.     As-applied vagueness

McCoy also argues that the Town violated his free speech rights because the "Ordinance, as applied by the Town, is an unconstitutionally vague restriction on expressive activity."[23]  The vagueness doctrine implicates the Due Process Clause of the Fourteenth Amendment, not purely the First Amendment.  See United States v. Williams, 553 U.S. 285, 304 (2008); Kolender v. Lawson, 461 U.S. 352, 353-54 (1983).  A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  Id.  "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment."  Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  "Even when expressive rights are involved," however, "perfect clarity and precise guidance have never been required."  Butler v. O'Brien, 663 F.3d 514, 520 (1st Cir. 2011) (quoting Williams, 553 U.S. at 304).

The Town contends that McCoy's vagueness claim is factually unsupportable because he had ample notice of what was required under the ordinance and the Town adequately explained its decisions to him.  McCoy responds by first arguing that the storage container section of the ordinance did not apply to his trailer at all, which shows that the Town's use of that part of the ordinance was standardless to the point of authorizing or encouraging discriminatory enforcement.  He next argues that even if the storage container section applied, the Town's application was vague because the ordinance does not provide a process for seeking permit extensions or explain the grounds for granting an extension.  Lastly, McCoy argues that the Town applied the ordinance so inconsistently that a person of ordinary intelligence would not

---

[23] Doc. no. 1, at ¶ 28.

have fair notice of what is prohibited.  The court is not persuaded by any of McCoy's arguments and addresses each one in turn.

Even if the court accepted McCoy's argument that the storage container ordinance did not apply to his trailer (an assertion belied by McCoy's own behavior and other record evidence), it is unclear how that would affect McCoy's vagueness claim.  For example, if, as McCoy says, his trailer was not a "storage container" as defined in the ordinance, the select board should have denied his initial application for a storage container permit.  Had the board done that, McCoy would have no vagueness claim.  McCoy's vagueness claim instead depends on the Town applying the storage container section of the ordinance to his trailer, so his puzzling argument that the "Ordinance should not be at issue in this case" (doc. no. 21, at 12) does not help his cause.

Next, the court rejects McCoy's conclusory argument that the ordinance's lack of language regarding permit extensions somehow proves that the Town applied it in a vague manner.  This argument is neither legally nor factually supportable.[24]  On the facts, the Town has not conceded, as alleged by McCoy, that it had no authority to grant a permit extension.  And legally, the ordinance's silence on this issue does not equate to a prohibition.  See Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 93 (1st Cir.2004) ("The mere fact that a regulation requires interpretation does not make it vague.").  Instead, the ordinance is clear that the select

---

[24] McCoy also raises this "exceeding authority" argument for the first time in his opposition to the Town's summary judgment motion.  It was not plead in his complaint or raised during the parties' briefing of the Town's motion for judgment on the pleadings.  In fact, McCoy relied on an entirely different theory to support his vagueness claim at the pleadings stage, and appears to have abandoned this theory now.  See doc. no. 12, at 4 ("That application [of the ordinance] is also vague: the Town's action fails to make clear whether all political speech may be prohibited, or only some types of speech or expression. These allegations adequately assert a valid claim for relief.").

board "shall have charge of administering and enforcing the zoning ordinance."[25]  See also N.H.

RSA 41:8 ("The selectmen shall manage the prudential affairs of the town and perform duties by

law prescribed."); Segre v. Ring, 103 N.H. 278, 280 (1961) (noting that "wide discretion should

be given as to the methods" select boards employ to manage towns).  The authority to administer

and enforce the ordinance includes the authority and discretion to decide whether to grant storage

container permits and extensions of existing permits.  While the ordinance does not include

specific provisions stating so, the select board's general authority encompasses the power to

grant or deny permit extensions.  McCoy provides no authority stating otherwise.

Finally, while McCoy's inconsistent application argument has some superficial appeal, it

does not create a trial worthy issue over whether the application was unconstitutionally vague.  It

is true that the select board allowed McCoy to twice extend his permit, but denied him a third

extension.  McCoy is incorrect, however, that "[t]here is nothing different about [his] third

extension request."[26]  At least two key factors differentiate McCoy's third extension request from

his prior requests.  First, significant time had passed from when McCoy initially received his

permit in 2015 to when he made the third extension request in 2018.  That passage of time was

undoubtedly a factor in the board's decision not to grant McCoy another permit extension.

Second, at the time the board denied McCoy a third extension, the expressive content on the

trailer had been painted over.  This change in circumstances is material because McCoy is

alleging that the board's decision was an "unconstitutionally vague restriction on expressive

activity" and was so arbitrary or "standardless that it authorizes or encourages seriously

---

[25] Ordinance, Section 7, available at
https://www.pittsfieldnh.gov/sites/g/files/vyhlif3681/f/pages/zoning_ordinance_2021_2.pdf.

[26] Doc. no. 21, at 14.

discriminatory enforcement."  Without expressive content on the trailer at the time of the board's 2018 denial, the "vague restriction on expressive activity" and discriminatory enforcement aspects of McCoy's vagueness claim are unsupportable, and McCoy has proffered no other evidence suggesting that the board's 2018 decision restricted his expressive activity.[27]

The ordinance clearly provides that storage containers must be kept on a lot for no more than 12 months during any 15-month period.  McCoy's initial storage container permit stated that it could not remain on his property permanently and had to be removed one year from the approved date.  After McCoy's initial permit expired after one year and the Town notified him that his trailer could not remain in his yard, McCoy wrote to the select board requesting a six-month extension of his permit.  In his letter, McCoy told the board that he needed to keep the trailer longer to store items for emergency construction work that he (a disabled individual) was performing himself, but that he would "have it emptied and removed by the end of April 2017." He also indicated that he wished "to remain with good standards for this town and it's rules as a Pittsfield homeowner."  The board granted McCoy's extension request.

In May 2017, McCoy again petitioned the board for a one-year extension of the permit due to unforeseen home repairs and the added time it would take for him to perform the repairs as a disabled person.  McCoy also appeared before the board to state his case for an additional extension.  At this meeting, when asked by a board member whether the trailer would be gone after another year, McCoy stated that he wanted to get rid of it, but just needed more time.  The board granted McCoy's second extension request, this time providing him another year to keep

---

[27] Indeed, in the main case that McCoy relies on in his summary judgment briefing to support his vagueness claim, Buckle Up Festival, LLC v. City of Cincinnati, the city ordinance in question did not affect the plaintiff's First Amendment rights in any way.  See Buckle Up Festival, LLC, 336 F. Supp. 3d 882, 886 (S.D. Ohio 2018).

20

the trailer on his property.  A jury could infer from this evidence that McCoy understood his

obligations under the ordinance and further understood or believed that the select board had the

power to grant exceptions to the rules in the ordinance.  It certainly does not suggest that McCoy

"had no choice but to guess at [the ordinance's] meaning and modes of application."  United

States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003).

After the Town notified McCoy in May 2018 that his permit was set to expire, he again

requested more time to keep the storage container on his property.  At that point, the trailer had

been on McCoy's property since 2014, and nearly three years had passed since the Town first

issued a storage container permit for the trailer in September 2015.  The select board considered

McCoy's request and denied it by unanimous vote.  Following the vote, the board notified

McCoy of its decision in writing and explained its reasoning, noting his "personal circumstances

that have caused the delay," but "balanc[ing] the terms of the zoning ordinance with [his]

request."  Importantly, the decision letter stated that "as you have already been granted a year's

extension beyond the 12 months permitted, they voted not to grant this second extension."

McCoy does not dispute any of these facts.  Under these circumstances, a person of ordinary

intelligence would have understood how the storage container permitting and board deliberation

process worked and, most importantly, would have had fair notice that he had run out of

extensions.  It is unreasonable for McCoy to expect the select board to grant him permit

extensions in perpetuity, which, under his theory, would be the only application of the ordinance

that was not vague.

On this record, no rational fact finder could conclude that the Town's application of the

ordinance was so inconsistent or "shifting" to the point that it was unconstitutionally vague.

Instead, it was a proper exercise of the board's authority and discretion after material changes in

21

circumstances.  While the court does not suggest that, as a matter of law, laws applied in this manner can never be unconstitutionally vague, the Town's application of the ordinance under the facts and circumstances here does not constitute an unconstitutionally vague restriction on McCoy's expressive activity.  The Town's motion for summary judgment is granted as to Count 1.

### B.    Count 2 - Equal Protection – Class of One Theory

In Count 2, McCoy asserts that the ordinance, as applied by Pittsfield, impermissibly creates two classes of residents – persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech – and argues that the Town treats these classes differently in violation of the Constitution.  To prove this "class of one" theory of equal protection liability, McCoy must establish that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).  The Town contends that McCoy cannot prove any of these elements, and the court agrees.

**Similarly situated.**  "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'"  Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015) (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001)).  At the summary judgment stage, McCoy has both the "burdens of production and persuasion" to identify – "backed by competent evidence" – "instances where persons similarly situated in all relevant respects were treated differently."  Cordi-Allen v. Conlon, 494 F.3d 245, 250-51 (1st Cir. 2007) (quoting Buchanan v. Maine, 469 F.3d 158, 178

22

(1st Cir. 2006)); see also Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013)

("[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly

situated in all respects relevant to the challenged government action.").

These are "significant" burdens that are "enforced with particular rigor in the land-use

context." Cordi-Allen, 494 F.3d at 251.  Although "[e]xact correlation" with comparators is

neither likely nor necessary, McCoy "must show an extremely high degree of similarity between

[himself] and the persons to whom [he] compare[s]" himself.  Id. (quoting Clubside, Inc. v.

Valentin, 468 F.3d 144, 159 (2d Cir. 2006)).  Said differently, McCoy "must show that the

parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the

government entity without such distinguishing or mitigating circumstances as would render the

comparison" inapt.  Id. (citing Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir.

1996)).  Summary judgment is therefore appropriate on class of one claims "where it is clear that

no reasonable jury could find the similarly situated" element met, even in cases where, as here,

"the plaintiffs have presented copious evidence concerning a multiplicity of possible

comparisons." Id. at 252.

The parties disagree on the relevant comparison points.  McCoy relies on the court's

order on the Town's motion for judgment on the pleadings, where it stated that "the relevant

comparison points are property owners in Pittsfield with unpermitted storage containers on their

properties, including trailers, that do not express political speech."[28]  The Town argues that there

are several additional comparison points that the court must consider and that McCoy cannot

---

[28] McCoy's identification of comparators for his equal protection claim again demonstrates the
illogicality of his argument that the storage container ordinance does not apply at all to his
trailer.  Because if the storage container ordinance does not apply, the relevant comparators
change and McCoy's declaration and the accompanying photographs of unpermitted trailers are
irrelevant.

establish.  Even assuming that McCoy's characterization of the relevant comparators is correct, he has not met his burden of providing competent evidence of such comparators or proving that they were similarly situated to him in all relevant respects.

As evidence of the alleged comparators, McCoy submitted a declaration with his objection to the Town's summary judgment motion that attached several exhibits containing photographs of alleged unpermitted storage containers.  The Town moves to strike this evidence because McCoy did not disclose this information as part of his Rule 26 initial disclosures or in response to repeated formal and informal requests made by Town counsel during discovery.  To ensure the court is ruling on a complete summary judgment record, the court will consider McCoy's declaration and attachments as part of this motion.  The Town's concerns about McCoy's belated disclosure of this information and continued, unexplained failure to respond to interrogatories and document requests are valid and well taken, however, and nothing in this ruling should be construed as endorsing this type of discovery conduct.[29]

The Town argues that the relevant comparators are persons with permitted storage containers that expired, received extensions of the permit, and then were asked to remove the containers, similar to McCoy's experience with the Town.  It also asserts that several other factors make up the relevant comparison points.  McCoy rejoins that he has identified numerous other residents with unpermitted storage containers that have escaped enforcement action from

---

[29] At oral argument, McCoy's counsel tried to justify this discovery conduct by arguing that there was no real harm from his belated disclosures because the Town knew all along that these other unpermitted storage containers existed.  Whether a litigant knew or should have known about a certain witness or item of evidence (absent timely, complete disclosures of the information during the litigation) does not excuse its opponent from meeting his fundamental discovery obligations under Rule 26.  And even if the court accepted McCoy's premise about lack of harm, McCoy has not shown that the prior information the Town allegedly had about unpermitted storage containers was the same information contained in his declaration and the attached photographs.

the Town and that is sufficient to meet his burden of showing similarly situated landowners.  The court disagrees.

McCoy's evidentiary proffer is too conclusory or speculative to satisfy his burden of producing "competent evidence" of relevant comparators at the summary judgment stage.  See DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (the nonmoving party "must demonstrate, through submissions of evidentiary quality, that a trialworthy issue persists.  Factual specificity is required; a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden") (quotations omitted).  In general, McCoy's declaration and photographs provide incomplete or inadequate information to show that these other trailers were similarly situated to McCoy.  McCoy has provided photographs, addresses, and conclusory allegations that these property owners did not have permits[30] for the trailers and the Town did not require them to remove them.  This "oversimplifies the analysis and fails to account for the fact that '[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment.'"  Cordi-Allen, 494 F.3d at 252 (quoting Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 681 (7th Cir. 2005)).  McCoy's evidence is also deficient in several specific, material respects.

First, the court cannot decipher from this evidence which of the alleged comparators may be "grandfathered" in; that is, they installed the storage containers before there was an ordinance requiring a storage container permit.  In fact, the ordinance was not adopted until 1988, the storage container article was not added until 1997, and the storage container was amended in

---

[30] In some instances, the property owners did have permits and received those permits after the events at issue in this case, weakening their status as potential comparators.

2016.  Without this information, a reasonable jury cannot determine whether the alleged

comparators are similar in relevant respects.  See Cordi-Allen, 494 F.3d at 253 ("In the land-use

context, timing is critical and, thus, can supply an important basis for differential treatment.

Since zoning bylaws, environmental standards, and licensing criteria may change over time,

courts must be sensitive to the possibility that differential treatment — especially differential

treatment following a time lag — may indicate a change in policy rather than an intent to

discriminate").

Second, McCoy's declaration is missing other information about the trailers that would

help a fact finder determine whether they are truly similarly situated.  For example, McCoy does

not explain:  (1) whether the trailers have been parked in the same location continuously for

more than 31 days (many have wheels or appear mobile); (2) whether the trailers were being

used for residential occupancy or transient lodging (which would exclude them from the

definition of "storage container" in the ordinance); (3) whether the storage containers were

unpermitted during the same period that McCoy kept the trailer on his property; (4) whether any

of these landowners received permit extensions from the select board; or (5) whether the Town

took any enforcement action against these other landowners.[31]

McCoy must do "more than 'point to nearby parcels in a vacuum and leav[e] it to the

municipality to disprove conclusory allegations that the owners of those parcels are similarly

situated,'" albeit by the slimmest of margins.  Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st

_____

[31] It is undisputed that the Town has taken similar enforcement action against other landowners with unpermitted storage containers on their property.  That alone may be enough to defeat a "class of one" equal protection claim because, "[b]y definition, a class of one is not a class of many."  Cordi-Allen, 494 F.3d at 254; see also Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1317 (11th Cir. 2006) (explaining that a class of one suit cannot be maintained when similar burdens have been imposed on other individuals).

26

Cir. 2013) (quoting *Cordi-Allen*, 494 F.3d at 251).  Simply put, he has failed to marshal evidence in support of his equal protection claim that is "sufficient to establish factual as well as regulatory similarity."  *Cordi-Allen*, 494 F.3d at 251.  For this reason alone, the Town is entitled to summary judgment on McCoy's equal protection claim.

      **Discriminatory enforcement against McCoy**.  Even assuming for purposes of this order that McCoy has identified a group of similarly situated comparators, the summary judgment record is devoid of any evidence that the Town selectively enforced the ordinance against McCoy because of his trailer's expressive content.

      To maintain his equal protection claim, McCoy must also show that there is a trial worthy issue as to whether the Town intentionally treated him differently than other similarly situated landowners.  See *Vill. of Willowbrook*, 528 U.S. at 564 ("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.") (emphasis added) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)); see also *Barrington Cove*, 246 F.3d at 7 ("In order to establish its [equal protection] claim, however, Barrington needed to allege facts indicating that, 'compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'") (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir.1995)).

      While McCoy is correct that direct evidence of discriminatory intent is rare, here, even the circumstantial evidence suggests that the Town acted with no discriminatory intent.  For example, during the time period when McCoy used the trailer to express his support for President

Trump, the select board allowed him to keep the trailer on his property for far longer than what the ordinance allowed.  In fact, the undisputed evidence shows that the board went out of its way to accommodate McCoy during this time.  By the time the Town ordered McCoy to remove the trailer in June 2018, the expressive content at issue had been removed for almost a year.  The Town also presented evidence with its summary judgment motion – which McCoy does not meaningfully contest – that it took similar enforcement action against other landowners with unpermitted storage containers.  This further refutes the notion that McCoy was singled out for enforcement.

To show discriminatory enforcement, McCoy resorts back to his argument that the select board had no authority under the ordinance to grant extensions to storage container permits. Even if the court accepted McCoy's argument that the board lacked authority or acted unlawfully in granting permit extensions, this does not change the result.  "[T]he mere fact that [the Town] may have violated or abused federal or state regulatory regimes" in administering the ordinance "has no direct bearing on whether [the Town] violated [McCoy's] equal protection rights." Barrington Cove, 246 F.3d at 10-11.

**Rational basis.**  Finally, McCoy offers no evidence to show that the Town did not have a rational basis for ordering him to remove the trailer in June 2018.  By that time, the Town had allowed McCoy to keep the trailer on his property unpermitted from early 2014 to September 2015, afforded McCoy an extension of his original storage container permit, and granted him a new permit.  The trailer remained on McCoy's property for over four years when the ordinance only allowed storage containers for 12 months.  McCoy had promised the select board multiple times that he was in the process of removing items from his trailer and would have the trailer removed from his property.  Yet he continued to keep the trailer and store items inside the trailer

and continued to ask for extensions from the select board, all in recognition that he had no right to continue keeping the trailer on his property indefinitely. By June 2018, the select board had run out of patience with McCoy and declined to allow him to keep the trailer on his property. This was a wholly rational decision.

More importantly, McCoy has failed to adduce evidence of an arbitrary or irrational motive for Town's order to remove the trailer. And for good reason. By the time the Town ordered him to remove the trailer, it no longer contained expressive content and there is no evidence that Town officials held arbitrary or irrational motives prior to its June 2018 removal order, so no rational fact finder could infer that the Town's actions were motivated by political animus against McCoy. See Wojcik v. Massachusetts State Lottery Com'n., 300 F.3d 92, 104 (1st Cir. 2002) ("An equal protection claim will only succeed if the decision to treat an individual differently than those similarly situated is wholly 'arbitrary or irrational.'") (quoting Me. Cent. R.R. Co. v. Bhd. of Maint. Way Employees, 813 F.2d 484, 492 (1st Cir. 1987)).

### C. Ripeness or failure to exhaust administrative remedies

The Town also argues that it is entitled to summary judgment on McCoy's claims because he failed to exhaust his remedies at the Town level before filing suit. Specifically, the Town contends that McCoy should have sought a variance before the Town's Zoning Board of Adjustment or appealed the select board's 2018 decision ordering him to remove the trailer, and because he failed to do so, his claims in this case are not ripe. McCoy responds, in part, that the Town should be municipally estopped from arguing that McCoy failed to exhaust his administrative remedies because the Town's own conduct dissuaded him from doing so. The court need not reach these questions as a result of the above rulings in the Town's favor on the merits.

29

IV.    **Conclusion**

For the reasons set forth above, the Town's motion for summary judgment[32] is

GRANTED and its motion to strike[33]  is DENIED.  The clerk shall enter judgment accordingly

and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: October 6, 2021
cc:    Robert M. Fojo, Esq.
        Robert Joseph Dietel, Esq.

---

[32] Doc. no. 17.

[33] Doc. no. 23.

30

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
        JOSEPH MCCOY                *
                                    *   20-cv-362-JL
              v.                    *   September 17, 2021
                                    *   10:15 a.m.
      TOWN OF PITTSFIELD            *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

APPEARANCES:


For the Plaintiff:          Robert M. Fojo, Esq.
                            Fojo Law, PLLC




For the Defendant:          Robert Joseph Dietel, Esq.
                            Gallagher Callahan & Gartrell PC




Court Reporter:             Susan M. Bateman, RPR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, NH 03301
                            (603) 225-1453

```
 1                     P R O C E E D I N G S

 2              THE CLERK:  Court is in session and has for

 3    consideration a motion hearing in Joseph McCoy versus the Town

 4    of Pittsfield, New Hampshire, civil case 20-cv-362-JL.

 5              Will counsel identify themselves for the record

 6    beginning with counsel for the plaintiff?

 7              MR. FOJO:  Good morning, your Honor.

 8              Robert Fojo for Joseph McCoy, the plaintiff, and

 9    Mr. McCoy is signed on as well.

10              THE COURT:  Good morning, Mr. Fojo.

11              Good morning, Mr. McCoy.

12              MR. DIETEL:  Good morning, your Honor.

13              Robert Dietel for the Town of Pittsfield.

14              And through Cara Marston I believe we have the town

15    administrator and also Carl Anderson watching and one of the

16    board of selectmen.

17              THE COURT:  Yeah, I can see Administrator Marston

18    on the screen here.  I can see her square, yeah.

19              Okay.  Look, I've read your submissions.  This is a

20    difficult situation.  There's just a lot of talking past each

21    other going on and a lot of real confusion over what the

22    claims even are.  I'm struggling with it, to be honest, so I'm

23    asking questions today, but I'll do my best to kind of hack

24    through it.

25              Let me get some preliminaries out.  This is a --
```

1    first, it's a factual question.  June 2017 the minutes say he

2    got an extension on the trailer, but he got an actual permit.

3    He got a new permit.

4              So was he granted a new permit or was he granted an

5    extension?

6              MR. DIETEL:  Your Honor, I think it's a distinction

7    without much meaning.

8              THE COURT:  You're probably right, yeah.

9              MR. DIETEL:  He got approved to continue to keep

10   the trailer on the property.  He got that two times.  One in

11   2016 he got it, and he got it again in 2017, and then he gets

12   denied in 2018 on another third request.

13             THE COURT:  So your view is it doesn't really

14   matter?

15             MR. DIETEL:  Yeah.  I mean, we don't run away from

16   the fact, your Honor, that the ordinance which Attorney Fojo

17   makes much of says that it's for a 12-month period of time.

18             THE COURT:  Yep.

19             MR. DIETEL:  We think that that argument actually

20   totally undercuts Mr. McCoy's claims.

21             THE COURT:  Yeah, I'm not getting into your

22   argument yet.  I'm just trying to understand what happened.

23             Mr. Fojo, do you agree with that?  The minutes say

24   there is a new permit.  Do you agree with Mr. Dietel that this

25   doesn't make much difference?  In the scheme of things, it

```
 1   doesn't make a difference?
 2           MR. FOJO:  I don't think it makes much of a
 3   difference for a variety of reasons which we've articulated.
 4   So I'll leave it at that.
 5           THE COURT:  Okay.  Fair enough.
 6           Now, neither of you spent any time -- you know,
 7   this is a suit against the town.  It's not against Ms.
 8   Marston.  It's not against the board.  It's against the town.
 9   And so -- it's a Monell claim.
10           Do you concede, Mr. Dietel, that since it's a vote,
11   since it's an official town action that there's no reason to
12   dispute that?
13           MR. DIETEL:  Yeah, your Honor.
14           You know, I had thought about raising that.  We've
15   got a vote from the board of selectmen that makes the
16   determination.  I think the case law is clear that's a town
17   decision.
18           THE COURT:  I think you're right.
19           MR. DIETEL:  But it dovetails into my ripeness
20   arguments to some extent, and, you know, we'll touch on that
21   later I suppose.
22           THE COURT:  Sure.  You mean like your exhaustion?
23           MR. DIETEL:  Yeah.  I mean, we've got an argument
24   that the town has discriminated, and the town makes a final
25   decision here when there's an appeal to the ZBA of the
```

 1  determination.

 2          THE COURT:  Okay.

 3          MR. DIETEL:  But that never happened.  We don't

 4  have allegations -- the individual board of selectmen are not

 5  named.  Even the individual board itself is not named.  It's

 6  the town that's named.

 7          THE COURT:  Okay.  Now, this one might help me

 8  narrow things a bit.  Count 1 appears to argue by the

 9  complaint that the ordinance as applied by the town is

10  content-based and viewpoint-based restriction.

11          Neither of you really engaged that in the summary

12  judgment papers and I think that's because -- if I understand

13  Mr. Fojo's argument correctly now, it's not that the ordinance

14  is content-based or viewpoint-based.  Instead, the ordinance

15  -- which Mr. Fojo says shouldn't apply to his trailer anyway,

16  right, but instead -- it's impermissibly applied as a matter

17  of vagueness, not as a matter of content-based discrimination.

18          Do I have that right, Mr. Fojo?

19          MR. FOJO:  That's correct.  The way it's applied --

20  we obviously contend it shouldn't even matter here, but the

21  way the town exercised its discretion under the ordinance,

22  they did so in an arbitrary fashion and in a discriminatory

23  fashion.

24          Yes, nothing in the ordinance on its face is

25  content-based.  We concede that.  There's obviously no --

1    there are no -- there's never a smoking gun like that in these

2    instances in which the town intended to apply it in a

3    content-based way, but the way it was applied was vague and --

4              THE COURT:  Void for vagueness.

5              MR. FOJO:  Void for vagueness.  That's correct.

6    That is the correct claim.

7              THE COURT:  Okay.  Got you.  Okay.

8              And I guess that's why nobody really got into the

9    whole content-based aspect of the ordinance as applied or

10   basically whatever.  The point is Mr. Fojo's argument is it's

11   void for vagueness as applied.

12             Right, Mr. Fojo?

13             MR. FOJO:  Right.  That's correct.

14             I mean, the same facts existed each time Mr. McCoy

15   approached the board and requests an extension.  There's

16   nothing different.  The town has conceded, and Ms. Marston

17   conceded at her deposition, there's nothing different about

18   either request, and the town purportedly granted an extension.

19             In one instance the following year they denied it,

20   but then they go in and grant him another 30-day extension

21   when again nothing is different about those circumstances.  So

22   they're acting in a very contradictory and arbitrary fashion.

23             THE COURT:  Okay.  Let's stay with this then for a

24   minute because it really might help us streamline some of

25   this.

7

```
 1              One of the interesting points of your argument, Mr.

 2    Fojo, is that -- your point is this ordinance doesn't even

 3    apply to my client's trailer, it shouldn't apply at all,

 4    right?

 5              Now, I'm trying to figure out, can you make an

 6    argument that an ordinance that doesn't apply to your client's

 7    trailer is void for vagueness?  Do you follow what I'm saying?

 8    I mean, can you have it both ways?  Can you say it doesn't

 9    apply on the one hand and it's void for vagueness?

10              MR. FOJO:  The town contends that it applies

11    because that's what they were operating under.

12              THE COURT:  Yeah.

13              MR. FOJO:  So that's what I had to challenge.  I

14    had to challenge the town's application of the ordinance.  So

15    that is our claim.

16              I do believe -- I think I can maintain that the

17    ordinance never should have been applied to him, but that is

18    the action that the town took so that is the action I am

19    challenging.

20              And I think that the town for whatever reason

21    relied on this ordinance to exercise some authority to act

22    here, and I think it's perfectly consistent to argue on the

23    one hand that they applied it in a vague manner, but at the

24    same time they never should have used that ordinance in the

25    first place.
```

```
 1              THE COURT:  Do you have any thought about that at
 2    all, Mr. Dietel?
 3              MR. DIETEL:  Yes.
 4              Your Honor, you're picking up on points that I've
 5    been struggling with.
 6              I think the arguments made by plaintiff are
 7    entirely inconsistent and factually just do not hold any
 8    water.
 9              You know, we've got an ordinance that on its face
10    applies to storage containers, right?  There's no dispute on
11    that.  He's got a storage container on his property.
12              He applies on three occasions saying that he's
13    using the storage container for storage purposes and that he
14    wants it approved under the storage container ordinance, and
15    he gets permits and signs applications under that ordinance.
16              And then he comes back and he says to the Court,
17    well, that ordinance really shouldn't have applied to me.
18    Disregard all my representations that I made to the planning
19    board.  I really wanted to use this as a sign.  And so, town,
20    you shouldn't have applied this.  Even though I asked you to
21    apply it, you shouldn't have applied it.
22              And then it just totally ignores the fact, okay,
23    well, even if that makes some sense logically, which it
24    doesn't, you have an ordinance that provides for signs to be
25    permitted, and he never applied for a sign permit.
```

9

1          I mean, I am perplexed.  I noted that in my reply

2     that logically these arguments do not make sense.

3          THE COURT:  Well, but isn't Mr. Fojo's argument --

4     okay, he's saying, look, I don't think this applies to my

5     client.  It should have been a sign.  However, it was -- Mr.

6     Fojo just said it was applied as a storage container ordinance

7     but they did so in a way -- he's not saying it's

8     viewpoint-based discrimination anymore because neither party

9     briefed it.  What he's saying though is that the way it was

10    applied was unconstitutionally -- rendered it

11    unconstitutionally void for vagueness.  That's Mr. Fojo's

12    argument as far as I can tell.

13          So what's hard to -- what's not to understand?

14          MR. DIETEL:  Well, your Honor, fundamentally -- I

15    mean, what Attorney Fojo is doing is he's coming in here and

16    he's saying, your Honor, I would now like to make an argument

17    but really I don't understand -- my clients did not understand

18    what this permit was all about, because I would like to

19    contend it was really a sign and I can't understand factually

20    how the town applied this to me.

21          Because the question is on a void for vagueness

22    as-applied challenge, would a person of reasonable

23    intelligence have understood how and why it was applied to

24    them.  For the Court to even go down that avenue requiring --

25    I'm not saying the Court is, and I understand the Court is

```
 1    trying to understand the arguments, but it would require you
 2    to look past the handwritten representations of Mr. McCoy that
 3    he wanted a permit for storage container purposes.  Multiple
 4    letters to the town.
 5            So how do you now come before the Court and say,
 6    yes, I wrote to the town on three occasions and said I wanted
 7    this explicitly for storage container purposes, but I didn't
 8    understand how it was applied.  I really -- you know, this was
 9    confusing to me.  This should have been a sign permit
10    application.
11            That doesn't hold water.  It just doesn't make
12    sense.
13            THE COURT:  All right.  But it doesn't make -- it's
14    not that I dispute that assertion, Mr. Dietel.  It doesn't
15    make sort of sense based on -- I think you're probably right
16    about the fact that it doesn't make a lot of sense based on
17    the facts as we understand them to be or the complaint
18    actually in the case, but I'm going to try to -- I'm trying to
19    analyze Mr. Fojo's approach from a legal perspective.
20            MR. DIETEL:  I understand.  I understand.
21            THE COURT:  I guess your argument on the law is,
22    look, if the test is whether a person would -- you know, would
23    a person be -- would the average reasonable person be able to
24    understand how it was applied to him, I guess your point is,
25    right, that the facts just don't bear that out.  It didn't
```

1    seem like there was any --

2            MR. DIETEL:  I fully understand, your Honor, why

3    you're going down this path, and I have struggled with it

4    because I don't understand how you can come to the Court and

5    say I'm going to bring an as-applied vagueness challenge under

6    this ordinance which I don't think applies to me.  I struggle

7    just at a threshold level with that.

8            But then I look at it on the facts and I look at it

9    on the standard of a motion for summary judgment, and could a

10   reasonable jury conclude that a person of reasonable

11   intelligence wouldn't have had fair notice here.

12           And we've got three separate engagements with the

13   board of selectmen with three separate handwritten letters

14   requesting this for storage, and in the final minutes the

15   board says, look, we have to keep this man to his word.  He's

16   represented -- and I'm filling in now the blanks of the

17   minutes, but he's represented twice that he needs this because

18   he's using it for storage.  He's disabled.  He wants to get

19   his stuff out of there.  We cut him slack on two prior

20   occasions.  We need to keep this man at his word is what they

21   say, and they deny him on the third go-around.

22           I mean, this is exactly what we want the town to

23   do, right?  They were flexible in their application of the

24   zoning ordinance based on the representations made to them

25   about a good faith desire to use this for storage and to get

1  it unpacked, and then they turn around after the fact on a

2  third denial when it doesn't even say Trump on it anymore and

3  say I don't understand now why it was applied to me in this

4  way.

5          I don't think that's credible, your Honor.

6          THE COURT:  Yeah, but of course the test isn't

7  whether it's credible.  I understand your point.

8          MR. DIETEL:  Right.  It's whether a person of

9  reasonable intelligence would have had fair notice, and I

10  submit he had fair notice at that point.

11          THE COURT:  Tell me, Mr. Fojo --

12          And I promise I will let you guys make your

13  arguments and not just pepper you with questions all the time,

14  but I'm really struggling with this.

15          So, Mr. Fojo, tell me.  If -- let's assume you're

16  right about this and that the storage container ordinance

17  shouldn't apply to Mr. McCoy.  How does that affect your

18  claim?  I mean, if this wasn't a storage container and the

19  board shouldn't have applied the storage container part of the

20  ordinance, what's your theory of liability?  Like, what makes

21  the town's conduct unlawful or unconstitutional?

22          MR. FOJO:  I think it's important to understand

23  that when I'm arguing that the ordinance should not have

24  applied here, I'm not -- it's not like I'm abandoning our

25  claim.  I think -- it supports the notion that the town's

1    application of the ordinance was vague.  You have identical

2    circumstances in which the town applied the ordinance one way

3    and then applied it another way.

4                THE COURT:  To Mr. McCoy?

5                MR. FOJO:  To Mr. McCoy, yes.

6                THE COURT:  The point is to grant him extensions

7    and then not to grant an extension, that's the vagueness?

8                MR. FOJO:  In the first instance -- to apply the

9    ordinance in the first instance.  He testified at his

10   deposition that he was not using the trailer principally for

11   storage.  I understand what he stated at the meetings several

12   years ago, but he wasn't using it principally for storage.

13               By the way, in the final go-around it did say

14   Trump.  It wasn't on the front of the trailer anymore.  It was

15   on the back.  He testified about that at his deposition as

16   well.

17               But to answer your question, Judge.  In applying in

18   the first instance and then granting him an extension that the

19   town concedes it had no authority to provide -- Ms.

20   Marston testified at her deposition that they had no process

21   for an extension under the ordinance.  And then doing that a

22   second time and then denying him a third extension in 2018,

23   but then granting him a 30-day extension in literally the same

24   breath, that is the very definition of vagueness.

25               I'm not abandoning the claim.  I'm merely trying to

1    explain the chronology here.  The ordinance should never have

2    been applied to him in the first instance.  They're applying

3    it and then -- applying it in directly contradictory ways.

4           We cited a case from the Southern District of Ohio

5    in our papers that provides a very similar example of such

6    strict discriminatory enforcement.

7           THE COURT:  Talk to me about that.

8           MR. FOJO:  About the case?

9           THE COURT:  Yes, because my next question for you

10   is going to be -- if this is your argument, and I think I

11   really do have a better handle on it now, It's the idea of

12   allowing the extensions and then declining to do so --

13          MR. FOJO:  Correct.

14          THE COURT:  -- amounted to unconstitutional

15   vagueness.  So I was going to ask you about authority for

16   that, and you're about to tell me about an Ohio case.

17          MR. FOJO:  We cited a case <u>Buckle Up Festival</u>

18   <u>versus City of Cincinnati</u>, it's Southern District of Ohio

19   2018.  The district court there held that there's a municipal

20   ordinance that required an admission tax to be paid to the

21   City of Cincinnati based on -- I'll leave it at that.

22          The ordinance defined admission and that definition

23   contained some discretion that could be exercised by the city,

24   and so the plaintiffs alleged that the defendants didn't

25   require them to pay that admission tax in 2012 for this music

1   festival but then required them to pay the tax the following

2   year for the same music festival, and the Court held that

3   those allegations supported the claim that it was vague and it

4   led to arbitrary and discriminatory enforcement.

5          And I think the way the town acted here, the board

6   acted here, is nearly -- is precisely the same.

7          You take an ordinance that they believed applied.

8   There is some discretion exercised pursuant to the ordinance.

9   They granted him an extension one year.  They did it a second

10  time.  They denied him a third time.  The circumstances that

11  supported each request were exactly the same.  The town

12  conceded that.  Ms. Marston conceded that at her deposition

13  that nothing was different about any of those requests for

14  extension.

15         So we think that that case squarely applies here

16  and supports the void for vagueness claim.

17         THE COURT:  Well, but -- I see.  I don't know.

18         But, I mean, he made specific requests for those

19  extensions based on a disability and the difficulty he was

20  having removing his materials.

21         MR. FOJO:  Right.

22         THE COURT:  So was the town basically bound to

23  extend the permit for the trailer as long as he kept

24  representing that his disability prevented him from removing

25  the stuff from the trailer?  I mean, that doesn't seem like it

 1   would make sense.

 2           MR. FOJO:  I don't think -- well, there's nothing

 3   in the ordinance concerning an extension for -- first of all,

 4   there's nothing -- like Ms. Marston said at her deposition,

 5   there's no process in the ordinance for an extension.  I think

 6   we can all agree on that and so --

 7           MR. DIETEL:  We can't, your Honor, all agree to

 8   that.

 9           MR. FOJO:  Okay.  All right.

10           If you take Mr. McCoy at his word in 2016, 2017,

11   2018, and his representations then, then even if you agree

12   that the town was correct in applying the ordinance, there's

13   no process for an extension under the ordinance and they

14   applied it in a discriminatory fashion in each of those years.

15   So the claim still should prevail here in my opinion based on

16   the Buckle Up Festival case that I explained.

17           THE COURT:  Okay.

18           MR. DIETEL:  Your Honor, if I may, you know, I --

19           THE COURT:  So -- but --

20           Go ahead, Mr. Dietel.

21           MR. DIETEL:  Well, I was going to say that case is

22   not on point and -- you know, I say this with all due respect

23   to Attorney Fojo and to give him some credit, I think he's

24   doing a good job of trying to muddy the waters here, but the

25   fact is that -- I think the Court has to first look at the

 1   statute and conclude -- it's not the statute, it's the

 2   ordinance, and conclude that it did apply under the facts and

 3   circumstances here.  I mean, on its face it applies.  Further,

 4   it applies based on the representations Mr. McCoy made.

 5           And it all begs the question, how is the town

 6   supposed to know that Mr. McCoy really wanted a sign permit

 7   when he's come in on multiple occasions and said give me a

 8   storage container permit.

 9           THE COURT:  You're trying to talk -- Mr. Dietel,

10   you're trying to talk about reality and I'm up in the clouds

11   talking about theory.

12           MR. DIETEL:  Yeah, you know, and it's the facts

13   here at the end of the day.  And I enjoy this back and forth

14   on this but, you know, we can't go past those points.

15           And, you know, at the end of the day this is not a

16   circumstance where -- you know, as your Honor pointed out,

17   this third denial does not occur in a vacuum.  I mean, this

18   occurred after a series of prior permit approvals based on

19   representations and it's part of a chain.

20           And, you know, as an aside, you know, the

21   concessions that Mr. Fojo claims the town made, I just want to

22   be clear we don't agree that those concessions have been made.

23           THE COURT:  Uh-huh.

24           MR. FOJO:  If the ordinance applied, then they

25   should have just denied the first request.

```
 1              MR. DIETEL:  I mean, this is the funniest thing,
 2   your Honor.  This is what I -- I don't get it.  I mean, the
 3   record if anything -- this whole suit is about an allegation
 4   that the town discriminated against Mr. McCoy because he
 5   painted this sign -- this storage container Trump.
 6              THE COURT:  Which is no longer the suit because --
 7              MR. DIETEL:  It's evolved, right?  The arguments
 8   have been a moving target.
 9              But at the end of the day the record before you, if
10   anything, would support an inference that he was granted
11   preferential treatment under Mr. Fojo's theory.  I mean,
12   Attorney Fojo is coming in and saying the town shouldn't have
13   even granted a single permit extension.  That this was a
14   constitutional injury that it granted permit extensions.
15              THE COURT:  Well, I think his argument is -- I'm
16   not saying I necessarily countenance this.  That's why I spent
17   time trying to understand it.  It's that to grant him this
18   preferential treatment and then withhold it amounts to
19   unconstitutional vagueness.  Not viewpoint discrimination.
20   Unconstitutional vagueness.  There's a difference.
21              MR. DIETEL:  Yes, sir.
22              THE COURT:  Okay.
23              MR. FOJO:  Judge, that was your ruling on the
24   motion for judgment on the pleadings.  That was the portion of
25   the First Amendment claim that survived.  So it's not an
```

1    evolving lawsuit.  I mean, that is what you -- you believed

2    that that was the only portion of the claim that survived at

3    that point so that is -- and that's what Attorney Dietel

4    challenged in his motion for summary judgment and that's what

5    we responded to.

6            MR. DIETEL:  I think what the Court's ruling said

7    was that the only surviving claim was an as-applied vagueness

8    challenge.

9            MR. FOJO:  Correct.  I'm not disputing that.

10           THE COURT:  That's what he just said, right?

11           MR. FOJO:  Correct.  But it's not an evolving

12   complaint.  It's that's what survived.

13           MR. DIETEL:  Well, my comment previously about

14   these being evolving arguments is that -- the essential

15   allegation in your complaint, Attorney Fojo, was that the only

16   reason for the town denying a permit extension was because it

17   said Trump on the side, and now we're going down a path of

18   saying, well, what really happened is that on the third denial

19   I incurred a constitutional injury because I didn't understand

20   why it was denied, right, the application of it to me on that

21   third occasion.  I didn't have fair notice as to why I was

22   being denied.

23           MR. FOJO:  Well, my client continues to maintain

24   that it was removed because it said Trump, but the surviving

25   portion of that claim is a void for vagueness challenge -- an

1  as-applied vagueness challenge, and that's what we're

2  litigating and disputing right now.

3          THE COURT:  Okay.  Give me a moment here.

4          (Pause)

5          So just articulate for me -- I think you've done

6  this, Mr. Fojo, but just articulate for me.  When we take the

7  expressive content of viewpoint discrimination out of the

8  equation, the vagueness claim is what?  Just in your own

9  words, what is the constitutionally impermissible vagueness of

10  the application of the storage container ordinance?  Is it

11  just that it was allowed and then withheld for reasons that,

12  as Mr. Dietel says, your client couldn't be expected to

13  understand?

14          MR. FOJO:  It's the manner in which they applied

15  it.  They applied it in one way in one year and they applied

16  it in a completely opposite fashion the following year but

17  then granted him a 30-day extension immediately after that.

18          So it's this constantly shifting application of the

19  ordinance based on identical circumstances.  A person of

20  ordinary intelligence could not possibly understand what is

21  driving the town's application of the ordinance in each of

22  those instances, and Ms. Marston conceded at her deposition

23  that they had no reason for why they continued to change their

24  application of the ordinance.  We cited that language in our

25  brief.

1          THE COURT:  But isn't --

2          MR. FOJO:  It's still a mystery to me why they

3   continued to -- they're explaining now that they were being --

4   Attorney Dietel is explaining now that they were being

5   flexible because he was disabled and such.  Again, there's no

6   process in the ordinance that allows them to consider any of

7   those factors.

8          Ms. Marston conceded that there was no basis, there

9   was no rationale for why they granted him -- purportedly

10  granted him an extension one year, denied it the following

11  year, and then granted him a brief extension immediately

12  afterwards so he could remove the trailer.  It's still a

13  mystery to me why they were doing this and why they continued

14  to change their position.

15         THE COURT:  It's difficult for me to comprehend why

16  you would say that the 30-day extension is somehow a chink in

17  their armor.  I mean, what were they supposed to do, go there

18  every day and give him a new citation that it was still on the

19  property?  They gave him time to get it off the property.

20  That can't be part of the claim.

21         MR. FOJO:  I suppose so, but I'm principally not

22  relying on that.  I'm principally relying on the granting of

23  the extension the two prior times and then denying it the

24  third time.

25         MR. DIETEL:  Your Honor, this highlights what's the

1    constitutional injury here.

2              THE COURT:  Yeah.  That's the next question.

3    Right.

4              What is the -- if I accept your -- if I accept your

5    rendition, right, that it was just impermissibly vagueness,

6    vague as applied because of what looks to you like

7    irreconcilable standards or irreconcilable action, right, what

8    is the injury to your client, the constitutional injury, Mr.

9    Fojo?

10             MR. FOJO:  Well, it falls under the First

11   Amendment, is that what you're asking me, or you're asking me

12   what his damages are?

13             THE COURT:  Well, it doesn't fall under the First

14   Amendment.  It's not viewpoint-based.  See, you can't have it

15   both ways.  You can't say it's expressive content and then

16   not.  I mean, so you're saying it's vagueness so that a person

17   wouldn't understand how the law applied to him.  Mr. McCoy in

18   this case.  But let's assume I accept that, that that's a

19   viable argument, even though it would seem to be -- well, I'm

20   not going to go down that path right now.

21             It's an impermissibly vague application of the

22   container ordinance, let's assume you're right about that,

23   what's the constitutional injury to Mr. McCoy?

24             MR. FOJO:  Then it would be a due process claim.

25   You're correct.

```
 1              THE COURT:  Okay.  And what's the injury?  What's
 2   been the deprivation that's a constitutional violation?
 3              MR. FOJO:  Well, I mean, it's -- I mean, I'm not
 4   sure I understand the question, your Honor.  Maybe if --
 5              THE COURT:  How was your client --
 6              MR. FOJO:  Go ahead.  I'm sorry.
 7              THE COURT:  No.  You were about to answer it.  He's
 8   been deprived of -- he's been -- I guess the argument is he's
 9   been subject to regulations that he -- subject to regulation
10   regarding the disposition of his property that are too vague
11   to be applied in any way that's not arbitrary and
12   inconsistent.
13              I guess that's the claim, Mr. Dietel.  What do you
14   say about that?
15              MR. DIETEL:  I think, your Honor, that you're
16   giving some generous readings to things in the sense I
17   understand the logic that you're following, but I think it
18   gets us off track here.
19              I think the reason why we're all struggling with
20   this is because it doesn't add up.  I mean, we've got a
21   situation where we have the plaintiff arguing that he was not
22   entitled to permit extensions and the town granted him permit
23   extensions, and because they did it twice he now has an
24   entitlement to a third permit extension.  But we're dealing
25   with an as-applied vagueness challenge, so the real question
```

1   is whether or not he should have reasonably understood why he

2   was denied the third time, and factually -- I keep coming back

3   to the facts here because I think they are controlling.

4         We've got a plain record that explains to him why

5   he was denied and we have a follow-up letter to him explaining

6   to him why he was denied.

7         THE COURT:  Okay.

8         MR. DIETEL:  And we've got this question of, okay,

9   well, if he wasn't entitled to the permit, then what is it

10  that he was -- where's the injury?  I mean, I'm having a hard

11  time articulating it, your Honor, because I just -- maybe it's

12  a shortcoming on my analytical abilities, but I'm not

13  following it.

14        THE COURT:  I get it.

15        All right.  Why don't I just let you make your

16  arguments, and I'll interrupt you when I have questions.

17        MR. DIETEL:  Your Honor, I assume you want me to

18  start as the moving party?

19        THE COURT:  Yep.

20        MR. DIETEL:  Your Honor, I actually don't have a

21  whole lot to say this morning because I think we've briefed

22  this exhaustively.  We've given you a very detailed recitation

23  of the facts, and the summary of the law is better stated in

24  my writings than I can summarize to you orally.

25        However, because I have the opportunity to speak

1    with you about this this morning, I do want to pull back on

2    some of the points that we have just been touching on, and I

3    think your Honor has been probing the areas that I wanted to

4    touch on anyway, and that is fundamentally we're dealing with

5    a discrimination claim.  We're dealing with an allegation that

6    Mr. McCoy was subjected to intentional discrimination because

7    he had a trailer that said Trump on the side of it.  That is

8    something that I think we all agree is what this case turns

9    on.

10           But he bears the burden of both production and

11    persuasion on the elements necessary to satisfy those claims,

12    and I don't think a reasonable jury can look at the facts in

13    front of you, your Honor, and determine -- I'll delve into the

14    specifics, but that there was any discrimination here.  In

15    fact, Mr. McCoy's own declaration in support of summary

16    judgment does not set forth any factual elements to support

17    any finding of any sort of discrimination whatsoever.

18           What the record bears out in black and white based

19    on Mr. McCoy's own representations is that he wanted this as a

20    storage container, he applied for it as a storage container,

21    he was granted approvals while it said Trump on the side of

22    it, and when the big 50-foot side that is promoted in the

23    complaint as the subject of all of this was repainted as a

24    balloon scene, it's only then after that point that he's

25    denied.

1          So, you know, these points all really hone in on

2     the equal protection claim aspect of this, which is I think --

3     you know, you've heard from me extensively now at this point

4     on the vagueness application, what I think of that, so I'll

5     focus in on the equal protection, but are there any facts that

6     he was intentionally treated differently in some

7     discriminatory manner?  The record in front of you does not

8     contain any facts and he's not provided any in his declaration

9     to support that.

10          Was there no rational basis?  There was a clear

11     rational basis.  You've got three requests.  I mean, Mr.

12     Fojo's whole argument is you can't supposedly grant further

13     extensions after one year.  Well, the board had granted two

14     extensions and gives a third.  He's not followed through on

15     his representations.  There's no disputes on these points.

16     We've got a request for admissions and a deposition in front

17     of the Court that establish all of these things definitively.

18          THE COURT:  What if he's right about this -- I

19     don't think he is, but what if he is right about this.  What

20     if he's right about the idea that given that there's no

21     authority under the ordinance for extensions that that makes a

22     difference here, right?

23          MR. DIETEL:  Yes.

24          THE COURT:  Does it make a difference?  I don't

25     think the lack of any black and white, you know, express

1  authority to provide an extension really means that there

2  can't be an extension.  I don't believe that, but assuming

3  he's right about that, what difference does that make?

4          MR. DIETEL:  I think it supports our arguments that

5  he was not discriminated against.  If the town did not have

6  the authority to grant him extensions and it granted him

7  extensions when the storage container said Trump, how can he

8  establish that he was discriminated against?  And we have to

9  have evidence you have intentional discrimination by the town.

10  He's not pled claims against individual selectmen.  It's

11  against the town.  There's nothing in the record, there's

12  nothing in his declaration on those points, and the rational

13  basis here is that the town granted one permit approval, then

14  it granted an extension, then it granted another extension for

15  an ordinance that says twelve months, and at some point you

16  have to say, I'm sorry, we can't grant further extensions on

17  this.

18          You know, heading more granular -- I mean, across

19  the board I think it fails on all of the prongs of an equal

20  protection claim but, you know, I've cited, and I'm sure the

21  Court will take a look at it, the Cordi-Allen decision from

22  the First Circuit.

23          The only thing that was provided in response to

24  summary judgment that's at all responsive to these issues was

25  a collection of pictures of other storage containers in town

1  with no factual detail as to where they are or what the basis

2  is for those being somehow similarly situated.

3          In that Cordi-Allen decision the First Circuit said

4  that, "It is inadequate merely to point to nearby parcels in a

5  vacuum and leave it to the municipality to disprove conclusory

6  allegations that the owners of those parcels are similarly

7  situated."  And that's precisely what he's putting on the town

8  here.

9          But, you know, setting that aside, we've gone the

10  extra step of putting in front of the Court two trailers that

11  I think it's fair for the Court to look at in evaluating

12  whether there was discrimination or not.

13          One is on Mr. McCoy's own property.  He claims he

14  only had to get the trailer off because it said Trump and that

15  that was the only reason.  Well, perhaps the most similarly

16  situated trailer would be the other trailer that was on his

17  property.  We've defined it in our pleadings as the rental

18  container, I believe, and he had another trailer on his

19  property that did not say Trump and was required to be

20  removed.

21          And in the May 2018 board decision where they

22  decided that it was time to finally deny his third extension

23  request, they brought an enforcement action against another

24  set of trailers in town and they required that they come in

25  and get permitted.  And much like they treated Mr. McCoy, they

```
1    allowed one of those trailers to be permitted and the other

2    two had to go because only one trailer is allowed by the town.

3              I highlight those things because, you know, part of

4    his claims are these allegations that he was treated

5    differently from other people.  I mean, the facts that are in

6    front of the Court don't sustain that in any way.

7              We've gone over our as-applied vagueness challenge.

8    I think a person of reasonable intelligence on this record --

9    the Court has to conclude respectfully that a person of

10   reasonable intelligence would know why it was applied.

11             And I'll touch on our ripeness argument, your

12   Honor, because it was pretty clear.  That's not a throwaway

13   argument on our part and it's not just academic.

14             As we cite in our pleadings, the Second Circuit

15   looked at this question, and it's a different context but I

16   think analogous, in the Murphy case.  They adopted the Supreme

17   Court's Williamson finality standard there, and I think

18   appropriately so.

19             You know, the question with these types of cases

20   is, is the federal district court supposed to sit as basically

21   like a super zoning board.

22             We have a situation where the final decision here

23   resides with the ZBA.  Mr. McCoy could have taken an appeal to

24   the extent he believed he has constitutional injuries and he

25   could have challenged this.
```

```
 1            And in that Murphy decision I think the Second
 2    Circuit touches on two points which I agree with.  Now, maybe
 3    you don't have to do that if you suffer some immediate injury
 4    by bringing an appeal, but bringing an appeal would have just
 5    extended the time that he could have kept the trailer on the
 6    property.
 7            And the next analysis is would bringing that appeal
 8    further define the issues for the Court, and certainly it
 9    would.  A ZBA looks at whether these decisions are unlawful or
10    unreasonable, and Mr. McCoy would have had an opportunity to
11    the extent he felt this was an unreasonable application to
12    argue that there.
13            So I think the Court should look at the ripeness
14    analysis that we have if it doesn't grant summary judgment on
15    the other grounds and should consider that.
16            And then we also have a motion to strike, as the
17    Court's aware, which I touch on because it is tied into this
18    and it goes to my points about the declaration provided in
19    support of summary judgment.  That declaration fails on a
20    couple grounds.
21            Number one, it doesn't recite any harassment.  It
22    doesn't recite any personal knowledge for the notion that
23    these trailers are somehow similarly situated.  It just
24    provides a bunch of pictures of trailers.
25            And then on top of that, it was a late disclosure
```

1  that for the reasons set forth in our motion I think should

2  not be considered by the Court.

3        So to sum up, your Honor, at the end of the day

4  could a reasonable jury find in his favor on these facts?  No.

5  I don't believe so.

6        And I think this case is entirely devoid of merit

7  despite the interesting academic arguments we've had about

8  these questions, and I would ask that summary judgment enter

9  for the town.

10        THE COURT:  Yep.  Talk to me first, Mr. Fojo --

11  let's work backwards.  What about the lateness of the

12  disclosure?  Leaving aside whether that affidavit and the

13  photos create genuine issues of material fact, leaving that

14  aside for the moment, what happened here and why should it be

15  allowed to play out the way it did?

16        MR. FOJO:  In the complaint we alleged, and there's

17  no dispute, that two board members acknowledged and conceded

18  that there were trailers -- unpermitted storage container

19  trailers all over town.  Ms. Marston conceded that at her

20  deposition as well.

21        For whatever reason the town has made it seem

22  throughout this litigation like that wasn't true.  Perhaps I'm

23  naive and my client was naive, but we didn't believe that that

24  would be the position.  We believed we would instead

25  acknowledge the fact that there literally are trailers all

```
 1    over town and that we would just be engaging in these academic
 2    arguments as to whether there was a constitutional violation.
 3              So my client in April drove around and took
 4    pictures of as many of these trailers as he could find, and
 5    there were many, many trailers.
 6              So it was never -- you know, it was alleged earlier
 7    on in this proceeding that the allegation that there were
 8    trailers all over town was too generic.  It wasn't generic.
 9    It was fatally true.
10              He sent me all these photos and images in April.
11    They make it seem in their motion to strike as if we were
12    sitting on these since the beginning of the case, and that's
13    not true.  I provided the image files, the native files, to
14    Attorney Dietel that contained the metadata which demonstrates
15    when these images came into existence, which was April, and he
16    provided all of these to me in April and May.  There were a
17    lot of images.  It took a while to get through all this and
18    just process them and understand where they came from and
19    where this was, and so we provided them along with our
20    objection to motion for summary judgment.
21              The standard that they are relying on to strike the
22    submission, it doesn't require automatic exclusion and
23    submissions like these are allowed if they're harmless or
24    substantially justified.
25              THE COURT:  I guess I need to understand.
```

```
 1                MR. FOJO:  Sure.

 2                THE COURT:  And I mean this with respect.

 3                MR. FOJO:  Of course.

 4                THE COURT:  But you're saying it took a long time

 5    to go through them.  That's not substantially justified.  My

 6    understanding is you haven't even answered interrogatories or

 7    document requests in this case, you literally didn't do

 8    discovery, and then in response to summary judgment you came

 9    up with an affidavit from your client and some photos.

10                That -- look, the bottom line is I'm going to

11    probably consider them because I don't want to just leave it

12    out of the case and make that a ground for some type of even

13    perception that I'm not hospitable to your claim, but I can't

14    imagine why that is viewed as permissible in litigation.  It's

15    just not.

16                MR. FOJO:  The issue here is that they're harmless.

17    The town knew all along based on admissions by their own board

18    members that these trailers were in existence.  We provided

19    every document that was responsive and that we had in our

20    possession.  But for the photographs, every other document was

21    provided and right around the close of discovery.  So we did

22    produce documents.

23                There were only six interrogatories that were

24    proffered.  The information called for by those

25    interrogatories was obtained by Attorney Dietel at Mr. McCoy's
```

1  deposition.  So he had -- all of the information requested in

2  discovery they had before the close of discovery.

3          The photographs are the only issue.  Their

4  production is harmless because the town knew all along that

5  these trailers were in existence all over town, and Mr. McCoy

6  testified to the existence of these trailers in his deposition

7  which was again taken before the close of discovery.  He

8  identified some of the trailer owners and property addresses

9  in his deposition, and then he alluded to many, many others.

10 Of course he's not going to have the addresses of every one of

11 these trailers off the top of his head or in his memory, and

12 so we followed up with the photographs that he took a little

13 bit before that.

14          THE COURT:  Okay.  All right.  I interrupted you,

15 Mr. Fojo.

16          MR. FOJO:  That's fine.

17          THE COURT:  I want to let you respond to Mr.

18 Dietel's arguments.

19          MR. FOJO:  That's fine.  I appreciate that.

20          Just going back to the -- we talked extensively

21 about the vagueness challenge, and I admittedly got a little

22 confused by your question.

23          A vagueness challenge -- an as-applied vagueness

24 challenge can be made in the context of a First Amendment

25 claim if the allegation is that it infringes or inhibits a

1    freedom of expression, and that's how it was pled here

2    originally.

3            You were asking what is the deprivation.  That

4    would obviously be a due process claim.  We haven't made that

5    here.

6            The claim here is it was applied to him in a vague

7    manner such that he was the only person in town with a trailer

8    with political expression on it who was ordered to remove that

9    trailer.  So that was the end result.  That is the

10   constitutional injury.

11           I'll leave the rest of that claim alone since we

12   spent a lot of time on it earlier.  If you have any other

13   questions, Judge, I would be happy to answer them.

14           As far as the equal protection claim, the relevant

15   comparison points here as per your order on the motion for

16   judgment on the pleadings several months ago are property

17   owners in Pittsfield with unpermitted storage containers on

18   their properties.  We've identified numerous property owners

19   in Pittsfield with unpermitted storage containers on their

20   properties who were treated differently than Mr. McCoy.

21           Again, the town conceded that many of these

22   trailers existed.  Ms. Marston conceded that not only in the

23   2017 -- May 2017 board meeting but at her deposition.  She

24   stated at her deposition she had no reason to dispute what the

25   town's Code Endorsement Officer, Jesse Pacheco, had stated at

1    that same May 2017 meeting.  She conceded that the town never

2    bothered to investigate whether these trailers existed.

3              The town contends that it undertook some

4    enforcement activity concerning three property owners, and it

5    attempts to argue that this constitutes lax enforcement.  That

6    this was essentially -- given the number of trailers -- and

7    they're all over the place.  The photographs demonstrate that.

8    Mr. McCoy's testimony demonstrates that.  The town's own board

9    members' concessions demonstrate that.

10             This was a complete abdication of enforcement.  But

11   for whatever reason, they targeted Mr. McCoy and ordered him

12   to remove his trailer off his property, and his trailer is the

13   only one of all of those trailers that contained any form of

14   political speech on it.

15             Concerning the exhaustion argument, I don't think

16   that applies here.  The rule -- it's clear that the rule on

17   exhaustion of administrative remedies is flexible, but there

18   are exceptions to it.  And one of those is if judicial

19   treatment is more appropriate for the types of claims being

20   alleged, then exhaustion of administrative remedies isn't

21   required.

22             And here this is precisely what the case is.  We've

23   alleged constitutional claims under the cases that we've

24   cited.  For example, Blue Jay Realty Trust versus City of

25   Franklin.  There were constitutional claims alleged.

1    Administrative -- the exhaustion of administrative remedies

2    was not required.

3              The same thing with <u>Olson versus the Town of</u>

4    <u>Litchfield</u> that we cite in our brief.

5              They don't want a local town board to be dealing

6    with constitutional claims.  Those claims are particularly

7    suited for this Court, not a town board.

8              And then even if this exhaustion principle or rule

9    applied here, I think the doctrine of municipal estoppel

10   should prevent the town from asserting that we failed to

11   exhaust those remedies given its conduct in the way it applied

12   the ordinance in many different fashions in many different

13   ways.  We think that that -- and we briefed this extensively

14   in our objection.  I don't think it's necessary to go into

15   every detail and the different elements of how this exception

16   applies, but the bottom line is they deceive Mr. McCoy into

17   acquiescing to these extensions and to accepting these

18   extensions of a storage container permit thinking that that's

19   what he needed, and then at the very end when they gave him 30

20   days to remove the storage container and the trailer from his

21   property, by the time that that extension expired his

22   appellate rights had expired.

23             So we don't believe that -- we believe that the

24   town should be estopped from asserting that he failed to

25   exhaust his administrative remedies even if that doctrine

 1  would apply, which again it shouldn't because these are

 2  constitutional claims that a court, not a town board, should

 3  be dealing with.

 4          THE COURT:  Well, I'm not saying the town board

 5  should be adjudicating the constitutionality of the ordinance

 6  or its application, I'm with you, but you could have certainly

 7  done the normal appeals by arguing that, look, these

 8  ordinances do not permit the permitting or denial of

 9  permitting, whether it's storage containers or signage, based

10  on political viewpoints.  That's an argument that you can

11  clearly say the law doesn't permit that, the town law, right?

12  I mean, there's nothing stopping you from doing that, right?

13          MR. FOJO:  No, but -- well, that's not what we're

14  arguing here.  Again, it's the claim that needs to be

15  exhausted.  That's the point.  We're not alleging he should

16  have been granted another extension or he shouldn't have.

17  That's not what we're alleging.

18          Our allegations here -- it was applied -- it's an

19  applied vagueness challenge and his equal protection rights

20  were violated.  Those aren't the claims he would have been

21  asserting in an appeal at the town level.

22          THE COURT:  Yeah, but what you would be able to say

23  was we -- you know, we appealed these decisions that we say

24  are unlawful and they were resolved in a way that violates my

25  client's, you know, constitutional rights to avoid

1   impermissibly vague laws and equal protection violations,

2   right?  I mean -- I don't know.

3           What about that, Mr. Dietel?

4           MR. DIETEL:  I was going to say the standard of

5   review for the ZBA under New Hampshire law is whether the

6   decision was unlawful or unreasonable.  Attorney Fojo could

7   have come in for Mr. McCoy and said this was an unlawful

8   application of the zoning ordinance or unreasonable because it

9   was being applied solely based on his support of President

10  Trump, and those are precisely the types of things that the

11  ZBA is supposed to adjudicate.

12          But beyond that why I just get fundamentally

13  perplexed is at the time of this denial it doesn't even say

14  Trump so --

15          THE COURT:  But it used to.

16          MR. DIETEL:  The back of it did.

17          THE COURT:  The back of it doesn't matter.  It's

18  not facing the road so I'm not worried about the back of it,

19  but it used to say Trump.  You're making it sound like that

20  couldn't be the basis for the town action, and it certainly

21  could be.

22          MR. DIETEL:  I respectfully disagree, your Honor.

23          He says in paragraph 20 of his complaint, "The

24  court order was based solely on the fact that the trailer

25  depicted Trump in large letters."  So I'll concede he doesn't

```
 1    define a time period, but how do you reconcile that when it
 2    gets two approvals when it says Trump and then a denial when
 3    it doesn't say Trump?
 4           THE COURT:  Well, I mean -- let me make the
 5    argument.  We don't like this big sign that says Trump, but
 6    he's disabled and he says he's having difficulty.  Let's face
 7    it.  Mr. McCoy's course of conduct here didn't appear to be
 8    square dealing with the town.  That's a fact, right, you know,
 9    extension, extension.  And they might have had it in their
10    thinking that they don't want this big Trump sign.  Okay.  I
11    have no idea if this is true and there's no evidence of it, by
12    the way, none whatsoever, but I want to give him the benefit
13    of his argument that that's what was happening.  So take him
14    at his word.  They didn't want it there because it said Trump,
15    but they gave him an extension because he had a sympathetic
16    reason and they listened to it a couple times.  But finally
17    they stopped believing this sympathetic reason and they said,
18    well, enough with the Trump sign.  Now, it doesn't say Trump
19    anymore, but he put us through that so get rid of your
20    trailer.  I mean, wouldn't that be impermissible?
21           MR. DIETEL:  If their decision was motivated by his
22    expression of political speech and there was something in the
23    record to evidence that, but that's the central point, your
24    Honor.  There's nothing in the record to evidence that and
25    it's contradicted by that sequence of events, right?
```

```
 1              THE COURT:  Okay.

 2              MR. DIETEL:  I mean, at the end of the day here

 3    we're dealing with a circumstance where Attorney Fojo is

 4    arguing we don't have a right to grant extensions under this,

 5    but the town grants him a series of extensions.  Where's the

 6    discrimination?

 7              And setting that aside, where's the evidence of any

 8    intentional discrimination?  I mean, we have an ordinance that

 9    says twelve months.  They state in their denial the reasons

10    for why they're denying it, and that's a rational basis right

11    there.

12              And if it fails on any one of the prongs for the

13    equal protection claim, it fails on all of them in the sense

14    that he has to satisfy -- it's his burden to satisfy all of

15    those prongs.

16              THE COURT:  Yep.

17              MR. FOJO:  I think the bottom line on the

18    administrative exhaustion point is that it's a flexible rule.

19    It's not absolute.  He's not required in every instance to

20    appeal it to the town ZBA.  When it involves purely legal

21    issues or constitutional issues, such as the cases that we

22    cited, he has the discretion to pursue those claims, those

23    specific claims in a court of law as opposed to appealing it

24    to the town ZBA.

25              THE COURT:  I've spent too much time on it.  I
```

1    don't think I'm going to spend a lot of time on the

2    exhaustion, to be honest.

3            Mr. Dietel, one thing I'm surprised at here is that

4    when Mr. Fojo said, well, we're only arguing vagueness only

5    because on a motion for judgment of the pleadings you took

6    away viewpoint-based discrimination, and I thought to myself,

7    no, and then you agreed with him.

8            I'm looking at page 8 of my order, "These

9    allegations, taken as true for the purposes of this motion,

10   support a claim for unconstitutional content (banning

11   unpermitted storage containers with political messages) or

12   viewpoint (banning unpermitted storage containers expressing

13   support for then political candidate Trump) discrimination."

14   I didn't foreclose any -- I didn't foreclose any pursuit of a

15   viewpoint-based claim by Mr. Fojo.

16           Now, I thought he didn't argue it so it was gone,

17   and that's my view of it.  He's arguing vagueness.  But why do

18   you support that reading of the order?

19           MR. DIETEL:  Your Honor, I don't have your order,

20   unfortunately, right in front of me.  I had it in the back of

21   my head that there was specific language that said that the

22   only thing that applied was an as-applied -- the only aspect

23   that survived was an as-applied vagueness challenge.  Maybe

24   I'm wrong on that, your Honor, but it's certainly the only

25   thing that's been argued, and I don't see any basis for

```
 1   viewpoint -- any factual basis for viewpoint discrimination.
 2              I'll concede I could be wrong, your Honor.  If
 3   you've got it in front of you, you've probably got a better
 4   record right now than I --
 5              THE COURT:  Can I get someone in -- like, I don't
 6   know if Vinny is on this.  Can somebody send me that order?
 7   Because I'm lost.
 8              THE CLERK:  I can send it to you, Judge.
 9              MR. FOJO:  I'll send it.
10              You granted the motion on the overbreadth portion.
11   That's Count 1.
12              THE COURT:  Overbreadth, yeah.
13              MR. FOJO:  Overbreadth.
14              The vagueness portion survived.  I'm just reviewing
15   it right now myself.
16              The issue here is the motion targeted the vagueness
17   issue, and so that's what I was responding to.  The motion for
18   summary judgment that is.
19              THE COURT:  Are you saying that if I -- see, that's
20   the problem with these situations.  There's no clarity on what
21   the claims are.  There's no clarity on anything.  So whatever
22   we do is just -- at the next level people just argue whatever
23   they want like none of this happened, and I get frustrated and
24   tired of that.  It's impossible to have these conversations
25   when we're not even having the same argument about the same
```

1    claims.

2         Hold on.  Somebody just sent me that.

3         (Pause)

4         Yeah.  So Mr. Fojo was basically saying since you

5    only moved on vagueness, he's only arguing vagueness.

6         I don't want anyone here saying you're not arguing

7    viewpoint because I foreclosed it because I did not foreclose

8    it.  If that's a problem, that's not something I want a remand

9    on from the First Circuit Court of Appeals, all right?  That's

10   the kind of thing I like to avoid, a Court of Appeals judge

11   saying I didn't really understand my case, all right?  That is

12   irksome.

13        So we're basically having a big argument here about

14   a portion of the case that Mr. Fojo is going to argue -- well,

15   I don't know -- that Mr. Fojo is going to argue was the only

16   portion at issue in this motion, which is vagueness, but this

17   is the whole case we're talking about as far as I'm concerned.

18        MR. DIETEL:  Your Honor, I've got here at the start

19   of my memorandum of law, I say, "With respect to Count 1, the

20   Court ruled that McCoy alleged minimally sufficient facts to

21   support a claim that the town applied its ordinance against

22   him in a vague manner.  The Court has accepted as true the

23   allegation that the town required him to remove his storage

24   container because it depicted Trump and that a person of

25   ordinary intelligence would not have fair notice of what was

```
 1    prohibited under the ordinance of what a trailer must look
 2    like in order to pass muster under the storage container
 3    section of the ordinance."
 4              I suppose, reading it as a whole, it was my
 5    understanding that what you were finding survived was that its
 6    application was -- the only thing that was properly pled was
 7    that its application was impermissibly vague.
 8              THE COURT:  I completely accept that as your
 9    representation, not a correct reading of the order, because,
10    look, the last page of the order says, "For the reasons set
11    forth above, Pittsfield's motion for judgment on the pleadings
12    is granted as to Counts 3, 4, and the overbreadth portion of
13    Count 1, and denied as to the remainder of Count 1 and all of
14    Count 2," right?
15              So the motion was denied as to Count 1, and that
16    included content-based and viewpoint discrimination.
17              Now, the way it was described though in Count 1 is
18    a little bit -- and I think that's -- this probably isn't a
19    problem.  I just want it to be clear for the record, okay?
20    Because the way Count 1 is argued -- I think maybe this is
21    what Mr. Fojo has been saying all along, but he's saying that
22    it is a -- let me pull it up here.  Yeah, he says at paragraph
23    29 of the complaint, "The ordinance as applied by the town is
24    a content-based and viewpoint-based restriction on speech,"
25    okay, "as applied by the town."  He also says -- I think it's
```

```
 1    paragraph 28, yeah, if I can find it here.
 2              MR. FOJO:  I've got 29.
 3              THE COURT:  Yeah.  Hold on a minute.
 4              (Pause)
 5              Okay.  No.  Vinny, that's not what you sent me.
 6    I'm looking for the complaint.
 7              Oh, I'm sorry, Vinny.  You sent me the right thing.
 8    I asked you for the order and that's what you sent.
 9              THE CLERK:  Okay.
10              THE COURT:  Hold on a minute.
11              Here it is.  Paragraph 28, "The ordinance as
12    applied by the town is an unconstitutionally vague restriction
13    on expressive activity."
14              That's kind of a hybrid allegation I admit.  I
15    don't even know if it exists under the law.  Mr. Fojo told me
16    it does exist, by the way, a few minutes ago.  That vagueness
17    can be applied as a way to restrict expression.  He did tell
18    me that but, you know, its vagueness -- and I guess that maybe
19    answers my question of Mr. Fojo.  It's that the
20    unconstitutionality is its vagueness and its application here,
21    which Mr. Fojo described as the irreconcilably inconsistent
22    application.
23              MR. FOJO:  That's right.
24              THE COURT:  The damage I guess would be some type
25    of restriction on his expressive activity, his speech.
```

```
 1                MR. FOJO:  That's correct.

 2                Your Honor, you alluded to this in your order on

 3      the motion for judgment on the pleadings.  When it does

 4      inhibit freedom of expression, the vagueness test is even more

 5      stringent.

 6                MR. DIETEL:  This goes to my point, your Honor.

 7      How is his expression being restricted?

 8                THE COURT:  Yeah, that's true.

 9                And that's true, Mr. Fojo, because by the time you

10      were ordered to remove the trailer there wasn't a Trump sign

11      anymore.  The back of it doesn't make much difference to me

12      because, you know, he can face any sign he wants toward his

13      house, but that's kind of the -- like, where's the restriction

14      of expression when it wasn't a Trump sign by the time it was

15      ordered moved?

16                MR. FOJO:  It still restricts his expressive

17      activity.  I know you're saying that because it was in the

18      back it doesn't make a difference, but I'm not aware of why

19      that location should matter.

20                THE COURT:  Okay.

21                MR. DIETEL:  Well, it matters factually.  I mean,

22      this all -- this is a very -- I'm glad we're going down this

23      path because it helps clarify some of my thinking, your Honor,

24      and I obviously want a very clear record, but it doesn't

25      excuse the fact that there's no evidence in the record of any
```

1    discriminatory intent.

2            I mean, where's the discrimination?  There's

3    nothing in his declaration.  There's nothing in anything that

4    actually is credible evidence of any discrimination.  You

5    know, when I asked him, and I provided it in our support, to

6    identify what was the discriminatory action that was taken by

7    the town, he could only identify one thing, and he said that

8    selectmen, three of them, James Allard, Carl Anderson, and a

9    prior one, Larry Konopka, told him that the town had received

10   word of complaints, and I said, is that it, and he said,

11   complaints, complaints, complaints.

12           Selectmen telling him that they received word of

13   complaints, that cannot be the level for a constitutional

14   injury here.  You know, there would have to be something far

15   more than that.

16           THE COURT:  Was it complaints about the content or

17   just complaints about the trailer?

18           MR. DIETEL:  Just vague general complaints about

19   the trailer.

20           THE COURT:  Yeah.  Okay.  Well, the complaint is

21   going to control that.  Okay.

22           Well, look, I've been running you guys all around

23   the field today with my questions.  I think I'm good,

24   actually.

25           I want to give you each a chance though if there's

1  anything else you want to say to me that you haven't been able

2  to say, to do so.

3          We'll start with you, Mr. Dietel.  It's your

4  motion.  Is there anything else you want to say?

5          MR. DIETEL:  Yes, your Honor.  I apologize.  My

6  neighbor is mowing his lawn.  I hope you can hear me.

7          THE COURT:  I can't hear that at all.

8          MR. DIETEL:  Okay.  Great.

9          I just want to highlight, your Honor, that the

10  standard on an equal protection claim is that he's got to

11  provide specific instances where people are similarly situated

12  in all relevant respects.  Providing pictures of trailers in

13  town does not meet that standard.  There's no case law that

14  suggests that meets that standard.  He's got to provide both

15  temporal similarities, he has to provide regulatory

16  similarities, he has to provide factual similarities, and his

17  central allegation that the only reason he was singled out was

18  because of Trump -- well, he was not the only person that was

19  subjected to enforcement.  We provided the Court with evidence

20  of that.  The town even took an individual to court on a

21  storage container permit violation.

22          So, you know, at the end of the day the facts just

23  do not support his claims in any way, and we ask that the

24  Court grant summary judgment.

25          THE COURT:  Got it.

```
 1              Go ahead, Mr. Fojo.

 2              MR. FOJO:  Thank you.

 3              I'll just -- the only thing I have left to say is

 4    I'll respond to Attorney Dietel's final comment.

 5              This Court laid out what the relevant comparison

 6    points were in its order on the motion for judgment on the

 7    pleadings, and that was, again, property owners in Pittsfield

 8    with unpermitted storage containers on their property,

 9    including trailers.

10              Mr. McCoy identified several such trailers.  The

11    pictures demonstrate many, many such trailers.  It's better to

12    show than tell.  All of those trailers look very similar to

13    Mr. McCoy's trailers, none of them contain expressive activity

14    on them, and the town has conceded that only twelve such

15    trailers were ever granted permits.  Indicating that the

16    remainder of them had no permit.

17              So we've satisfied those comparison points and

18    there's no question here that Mr. McCoy was treated

19    differently than all those other trailer owners.

20              So we are -- I think that there's no dispute really

21    as to any fact here.  The Court has the discretion -- we made

22    this request in our objection.  The Court has the discretion

23    to grant summary judgment for the nonmovant, and I believe,

24    given that there's no dispute of fact as to many of the issues

25    here, that opportunity is available.
```

1    I have nothing further unless the Court has any

2    questions.

3    THE COURT:  Under your theory -- I want to be clear

4    on this, Mr. Fojo -- there's no genuine disputes of material

5    facts here.  I could grant summary judgment to you.

6    MR. FOJO:  That's correct.  That's the argument I

7    made.

8    THE COURT:  Okay.

9    MR. DIETEL:  Your Honor, for our record, that would

10    require a -- if you were to grant summary judgment in favor of

11    Mr. Fojo, that would be over our objection that there's some

12    discriminatory intent.  We've proved that there is no

13    discriminatory intent.

14    So for the purposes of his motion for summary

15    judgment, there would be a factual dispute.

16    THE COURT:  Okay.  Okay.

17    Well, thank you, gentlemen.  I appreciate your

18    presentations, and I'll get an order out here shortly.

19    Are we scheduled for trial soon?

20    MR. DIETEL:  We're scheduled for the first trial

21    period in November, your Honor, so we have some deadlines

22    coming up.

23    THE COURT:  You'll have an answer from me well in

24    advance of that so you're not caught like, you know, not

25    knowing if there's going to be a trial.  We'll get you an

```
 1   answer well in advance, okay?
 2            MR. DIETEL:  Thank you, your Honor.
 3            MR. FOJO:  Thank you, your Honor.
 4            THE COURT:  Thank you, counsel.
 5            And thanks to everyone from the town and to Mr.
 6   McCoy for participating.
 7            We're adjourned.
 8            (Conclusion of hearing at 11:25 a.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

53

```
1                      C E R T I F I C A T E

2

3

4         I, Susan M. Bateman, do hereby certify that the

5    foregoing transcript is a true and accurate transcription of

6    the within proceedings, to the best of my knowledge, skill,

7    ability and belief.

8

9

10   Submitted:   1-28-22         /s/   Susan M. Bateman _____
                                  SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```