No. 21-1907

In the United States Court of Appeals
FOR THE FIRST CIRCUIT

JOSEPH McCOY

Plaintiff - Appellant

v.

TOWN OF PITTSFIELD

Defendant - Appellee


On Appeal from the U.S. District Court for the District of New Hampshire
No. 1:20-cv-00362 (Hon. Joseph Laplante)

Plaintiff-Appellant's Initial Brief


Robert M. Fojo (Bar No. 1191945)
Fojo Law
264 South River Road, Suite 464
Bedford, NH 03110
(603) 473-4694
rfojo@fojolaw.com
*Counsel for Joseph McCoy*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE.................................................................3

    A.  Mr. McCoy's Trailer ..............................................................3

    B.  The Town's Zoning Ordinance..................................................3

    C.  Mr. McCoy's Storage Container Permit.......................................4

    D.  Mr. McCoy's Principal Use of the Trailer for Political Speech.............4

    E.  The Ordinance Does Not Provide for Extensions of Storage Container Permits ..................................................................................5

    F.  The Town Ignored the Ordinance and Extended Mr. McCoy's Permit .........5

    G.  The Town's Second Extension of Mr. McCoy's Storage Container Permit...6

    H.  The Town Denies Mr. McCoy's Third Extension Request and Orders Him to Remove the Trailer ................................................................7

    I.  The Circumstances Underlying Mr. McCoy's Third Extension Request Were the Same.............................................................................8

    J.  There Were Numerous Property Owners in Pittsfield with Unpermitted Storage Trailers Who Were Not Ordered to Remove Them..................9

    K.  The Underlying Lawsuit and the District Court's Order............................10

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ...................................................................................14

    I.  Standard of Review..............................................................14

    II.  The District Court Erred in Granting Summary Judgment on Mr. McCoy's As-Applied Vagueness Claim. ..............................................14

    III.  The District Court Erred in Granting Summary Judgment on Mr. McCoy's Equal Protection Claim.........................................................21

    IV.  The District Court Erred in Granting Summary Judgment on Mr. McCoy's Content- and Viewpoint-Based First Amendment Claim. ....................26

CONCLUSION ................................................................................28

CERTIFICATE OF COMPLIANCE ......................................................29

# TABLE OF AUTHORITIES

**Cases**

*Arlington County v. White*, 259 Va. 708, 719 (2000) ...............................................18

*Buckle Up Festival, LLC v. City of Cincinnati*, 336 F. Supp. 3d 882 (S.D. Ohio 2018) ..................................................................................................................15

*Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006) ...................................25

*Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007) ..............................................25

*Dambrot v. Central Michigan Univ.*, 55 F.3d 1177 (6th Cir. 1995)........................15

*Davis v. Coakley*, 802 F.3d 128 (1st Cir. 2015) ......................................................21

*Donovan v. City of Haverhill*, 311 F.3d 74 (1st Cir. 2002) .....................................21

*Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777 (1st Cir. 2011) ..............................14

*Gianfrancesco v. Town of Wrentham*, 712 F.3d 634 (1st Cir. 2013).......................22

*Girard v. Town of Allenstown*, 121 N.H. 268 (1981) ..............................................19

*Hartford Fire Ins. Co. v. CNA Ins. Co. (Eur.)*, 633 F.3d 50 (1st Cir. 2011) ...........14

*McCoy v. Town of Pittsfield*, 2020 DNH 217 ....................................... 14, 21, 22, 23

*Piper v. Meredith*, 110 N.H. 291 (1970).................................................................19

*United States v. Williams*, 553 U.S. 285 (2008) .....................................................14

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)...............................................................................................................14

**Statutes**

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. § 1331 ........................................................................................................1

28 U.S.C. § 1332 ........................................................................................................1

28 U.S.C. § 1343 ........................................................................................................1

**Other Authorities**

Article 14, Section 3(e) of the Zoning Ordinance .....................................................3

Article 2, Section 3 of the Zoning Ordinance............................................................3

**Rules**

Federal Rule of Appellate Procedure 4(a)(1)(A) .......................................................1

Federal Rule of Civil Procedure 56(f) ....................................................... 2, 13, 26, 27

## JURISDICTIONAL STATEMENT

The District Court had original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Mr. McCoy's claims for violation of his freedom of speech and equal protection rights and under 28 U.S.C. § 1332 over Mr. McCoy's state law claims because there was diversity of citizenship among the parties, and the amount in controversy exceeded $75,000.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the District Court's decision granting summary judgment on Mr. McCoy's remaining claims was a final decision disposing of the entire case.

The District Court entered its order and judgment on October 6, 2021. Mr. McCoy filed his notice of appeal on November 4, 2021. This appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1)    Whether the District Court erred in granting summary judgment on Mr. McCoy's as-applied vagueness claim, where the Town invoked a zoning ordinance provision to grant Mr. McCoy two extensions of a storage container permit in 2016 and 2017, despite the inapplicability of that Ordinance and its lack of any provision allowing extensions, and then applied the same ordinance to deny him a third) extension of his permit under the same circumstances.

2)     Whether the District Court erred in granting summary judgment on Mr. McCoy's equal protection claim, where Mr. McCoy was treated differently from others similarly situated, and there was no rational basis for the difference in treatment, because there were hundreds of trailers in Pittsfield that were not permitted and did not contain expressive content, and yet were allowed to remain on those properties, and the Town conceded it enforced the zoning ordinance against only three of those property owners – and Mr. McCoy.

3)    Whether the District Court erred in granting summary judgment as to Mr. McCoy's content- and viewpoint-based challenge to the ordinance without notice to the parties under Federal Rule of Civil Procedure 56(f), and despite the fact that neither party briefed that issue in their summary judgment filings.

## STATEMENT OF THE CASE

### A.    Mr. McCoy's Trailer

In early 2014, Mr. McCoy and his wife moved to Catamount Road in Pittsfield.  App. at 485.  Shortly after moving to Pittsfield, McCoy purchased a 52-foot trailer and had it delivered to his property.  *Id.*  McCoy initially used the trailer to store various items from his prior residence, as well as items from storage units he had purchased.  *Id.*  In August 2015, the Town's then-building inspector, Jesse Pacheco, instructed McCoy that he needed to obtain a storage container permit from the Town to keep the trailer on his property.  *Id.*  Accordingly, McCoy applied for and obtained a storage container permit from the Town for the trailer, effective September 1, 2015 (the "2015 Permit").  *Id.*

### B.    The Town's Zoning Ordinance

Article 2, Section 3 of the Zoning Ordinance defines a "storage container" as "a truck trailer, box trailer, school bus, MANUFACTURED HOUSING unit, or similar mobile container parked continuously for 31 days or more and **used principally for storage** and not used for any person's residential occupancy or transient lodging."

Article 14, Section 3(e) of the Ordinance prohibits maintaining a storage container on a lot for more than 12 months: "every STORAGE CONTAINER shall be permitted upon the following conditions and upon all other applicable

conditions in the zoning ordinance: . . . The sum of the time during which one or more STORAGE CONTAINERS are on any one LOT during any 15-month period shall be no more than 12 months."

## C.    Mr. McCoy's Storage Container Permit

Consistent with the Ordinance, the 2015 Permit stated the trailer was permitted for storage purposes only for a period of one year, had to be removed by September 1, 2016, and was not allowed to be kept permanently.  App. at 486.

## D.    Mr. McCoy's Principal Use of the Trailer for Political Speech

In January 2016, Mr. McCoy allowed his son to paint the side of his trailer with an image that reads "TRUMP! USA" with "2016" in smaller, red paint.  *Id.*  As of January 29, 2016, the trailer appeared as follows in a social media posting:



*Id.* at 486-87.  Mr. McCoy testified that, from then onward, he was not using his trailer principally for storage; instead, he was using it principally to display his support for Donald Trump's bid for President of the United States.  *Id.* at 398-99, 487.  Storage was its secondary purpose.  *Id.* at 398-99.

### E.    The Ordinance Does Not Provide for Extensions of Storage Container Permits

The Town administrator, Cara Marston, admitted there was no process under which Mr. McCoy could request an extension of his storage container permit, and the Board had no authority to grant one.  *Id.* at 400-01.

### F.    The Town Ignored the Ordinance and Extended Mr. McCoy's Permit

On September 1, 2016, Mr. McCoy's storage container permit expired.  *Id.* at 488.  Mr. Pacheco wrote to Mr. McCoy sometime in September or October 2016 and informed him the 2015 Permit expired, and that the trailer needed to be removed.  *Id.*  In a handwritten letter dated November 3, 2016, Mr. McCoy wrote to Mr. Pacheco and requested a six-month extension of the 2015 Permit.  *Id.* at 488-89.  Although he wrote in his letter that he was seeking an extension for storage purposes, he did not state he was not using the trailer to express his support for Trump.  *See id.*

On November 15, 2016, despite Ms. Marston's admission that the Ordinance did not allow for extensions, the Town's Board of Selectmen *granted* McCoy's request for an extension.  *Id.* at 401, 489.  At her deposition, Ms. Marston could

not identify any reason why the Board proceeded to "grant" Mr. McCoy's request. *Id.* at 401. She also admitted the Board's "extension" could not be considered a zoning variance because Mr. McCoy never invoked that process, and the Board had no authority to grant zoning variances. *Id.* at 401-02. For example, the Board could have instructed Mr. McCoy the object of his request (an extension of the permit) could only be attained through a zoning variance, but Ms. Marston conceded the Board neglected to do that. *Id.* at 402.

At this time, the Board members were aware Mr. McCoy was using the trailer to express his support for President Trump and were aware of at least one anonymous complaint about the trailer. *Id.* at 489.

## G.     The Town's Second Extension of Mr. McCoy's Storage Container Permit

Mr. McCoy continued to keep the trailer on his property into 2017. *Id.* In May 2017, Mr. Pacheco visited Mr. McCoy's property. *Id.* After this visit, Mr. McCoy requested a meeting with the Board. *Id.*

The Board met with Mr. McCoy during its June 13, 2017, meeting. *Id.* at 490. He made another request for an extension of his permit, this one for one year. *Id.* at 403, 490. Although Mr. McCoy again explained he needed the extension because it was taking him longer than expected to finish certain repairs on his home because he was handicapped and doing the work himself, he did not state he was not using the trailer to express his support for Trump. *See id.* The Board,

6

once again, "granted" his request for a one-year extension. *Id.* Like Mr. McCoy's first extension request, the Board conceded it had no authority to grant this request either. *Id.* The Town never informed Mr. McCoy he could not request another extension of the permit, or that he should have sought a zoning variance. *Id.* at 403.

## H. The Town Denies Mr. McCoy's Third Extension Request and Orders Him to Remove the Trailer

By the end of July 2017, the side of the trailer that showed support for President Trump had been painted over with a scene of hot air balloons and a waving American flag. *Id.* at 490. The following image from social media shows the side of the trailer at issue as of July 30, 2017 and its then-expressive content:



*Id.* at 491.  The back of the trailer, however, still contained the word "Trump."

App. at 557.

On May 22, 2018, the Board wrote to Mr. McCoy to remind him that his

storage container permit for the trailer was expiring in June 2018.  *Id.*  This time,

however, the Board told him the trailer needed to be removed from his property for

at least three months before he could apply for another permit.  *Id.* at 491-92.  Mr.

McCoy responded by letter dated May 29, 2018.  *Id.* at 492.  He explained he

needed more time to unload the trailer and requested another extension.  *Id.*

Although Mr. McCoy referenced the fact he was unloading the trailer, he did not

state he had ceased using the trailer for political expression.  *See id.*

The Board denied Mr. McCoy's request.  *Id.* at 404, 492.  The Board

acknowledged, once again, it had no authority to grant a third extension of the

permit.  *Id.* at 404.

## I.    The Circumstances Underlying Mr. McCoy's Third Extension Request Were the Same

The Town could not identify any reasoning (whether in the Ordinance or

elsewhere) why it denied Mr. McCoy's third extension request.  *See id*.  It

conceded there was nothing different between Mr. McCoy's third request and his

two prior requests.  *Id.* at 404-05.  Further, in "denying" Mr. McCoy's third

request, the Board inexplicably "granted" him a 30-day extension to enable him to

remove the trailer.  *Id.*

**J.     There Were Numerous Property Owners in Pittsfield with Unpermitted Storage Trailers Who Were Not Ordered to Remove Them**

At his deposition, Mr. McCoy identified numerous property owners in Pittsfield with unpermitted storage containers on their properties who were treated differently.  *Id.* at 405-06.  Mr. McCoy also submitted photographs of ***several hundred*** trailers or storage containers located on properties in Pittsfield that (but for approximately 12 of them) did not have storage containers and that the Town had not directed to be removed.  *Id.* at 405-06, 420-54.

Ms. Marston testified at her deposition that, during her time as Town Administrator (five years) only approximately 12 property owners in Pittsfield were granted permits for storage containers or trailers.  *Id.* at 406-07.  Three of those permits were for trailers on a property on Tilton Road, which Mr. McCoy did not include in the photographs referenced above.  *Id.* at 407.  Only one permit was granted for a trailer on Carroll Street; there are several other trailers, however, on Carroll Street.  *Id.*  Assuming eight other permits were granted, there were still numerous trailers or storage containers Mr. McCoy identified that did not have permits and that remained on properties in Pittsfield.  *Id.*

This should not have been a surprise.  At a Board of Selectmen meeting on May 23, 2017, the Town – through Mr. Pacheco – conceded there were trailers "all over the place" when Mr. McCoy made his second extension request in 2017.  *Id.* at 407, 455-69.  At the same meeting, Ms. Marston acknowledged there were

"other properties that are technically in violation" of the Ordinance, but the Town had done nothing concerning those trailers. *Id.* A Board Member (Carl Anderson) later reiterated that fact in his January 11, 2020, letter to Mr. McCoy: "what was obvious was that there were ___*illegal*___ storage containers all over the place." *Id.* at 470-71 (emphasis added). Ms. Marston conceded that, after the May 2017 Board meeting, the Town ___*did not investigate*___ whether Mr. Anderson's statement was true, i.e., that there were other unpermitted storage containers in Pittsfield. *Id.* at 407-08.

## K.    The Underlying Lawsuit and the District Court's Order

Mr. McCoy filed a lawsuit on March 20, 2020. App. at 1. He alleged four claims: violation of his freedom of speech (Count I), violation of his equal protection rights (Count II), and intentional and negligent infliction of emotional distress (Counts III and IV). *Id.* at 5-9. Count I alleged several bases for the violation of Mr. McCoy's freedom of speech: the Town's Ordinance as applied was overbroad, vague, and was a content- and viewpoint-based restriction. *Id.* at 6.

The Town moved for judgment on the pleadings as to Mr. McCoy's overbreadth and vagueness challenges to the application of the Ordinance *only*, and as to his equal protection claim. *Id.* at 18, 22. The District Court granted judgment on the pleadings on Mr. McCoy's overbreadth challenge. *Id.* at 18-20. It denied the Town's request for judgment on the pleadings as to the vagueness challenge.

*Id.* at 20-22.  The District Court noted "Mr. McCoy's complaint alleges enough facts to state a plausible claim of constitutional injury stemming from the Town's application of the ordinance against him; namely, that the Town applied the ordinance in a manner that discriminated against the content or viewpoint of his speech, and in a vague manner." *Id.* at 22; *see also id.* at 494.  The District Court also denied judgment on the pleadings as to Mr. McCoy's equal protection claim. *Id.* at 26.  The District Court granted judgment on the pleadings as to Counts III and IV.  *Id.*

The Town filed a Motion for Summary Judgment on June 1, 2021.  *Id.* at 28. The Town requested summary judgment *only* as to Mr. McCoy's as applied vagueness challenge to the Ordinance and his equal protection claim.  *See id.*  The Town neglected to seek summary judgment on Mr. McCoy's content- and viewpoint-based First Amendment challenge.  *See id.*   The District Court held a hearing on the Motion on September 17, 2021.  *Id.* at 512.

The Court issued an Order on October 6, 2021, granting the Town's Motion for Summary Judgment.  *Id.* at 482-511.

Mr. McCoy timely filed a notice of appeal.

## SUMMARY OF ARGUMENT

Mr. McCoy sued the Town of Pittsfield because it treated him and his trailer displaying his support for President Donald Trump differently than numerous other property owners who had similar trailers that did not contain expressive content. He alleged several claims in his Complaint.  After the District Court's order on the Town's Motion for Judgment on the Pleadings, three claims remained: an as-applied vagueness First Amendment challenge to the Town's zoning ordinance, a "class of one" equal protection claim, and a content- and viewpoint-based challenge to the same ordinance.

The Court should reverse the District Court's order granting summary judgment on these claims for several reasons.  First, concerning Mr. McCoy's as-applied vagueness challenge, the Town – through its Board of Selectmen – invoked a zoning ordinance provision to "grant" Mr. McCoy two "extensions" (one for six months and then one for a year) of a storage container permit in 2016 and 2017, respectively, despite the inapplicability of that ordinance and its lack of any provision allowing extensions, and then applied the same ordinance to *deny* him a third (one-year) extension of his permit in 2018 under the same circumstances. This arbitrary conduct could not provide a person of ordinary intelligence fair notice of what is prohibited, and was so standardless that discriminatory enforcement was inevitable.

Second, Mr. McCoy demonstrated his equal protection rights were violated because he was treated differently from others similarly situated, and there was no rational basis for the difference in treatment. He produced evidence of hundreds of trailers in Pittsfield that were not permitted and did not contain expressive content, and yet were allowed to remain. The Town conceded as much: it admitted in Board meetings that there were numerous unpermitted all over Pittsfield, and it admitted only 12 of those trailers were permitted, and it enforced the ordinance against only three property owners who had unpermitted trailers – as well as Mr. McCoy.

Third, the District Court granted summary judgment as to Mr. McCoy's content- and viewpoint-based challenge to the ordinance without notice to the parties under Federal Rule of Civil Procedure 56(f), and despite neither party having briefed that issue in their summary judgment filings.

At a minimum, the evidence on record is sufficiently open-ended to permit a rational factfinder to resolve the first two claims above in favor of either side. Alternatively, and at most, the District Court should have granted summary judgment in Mr. McCoy's favor because there was no genuine issue of material fact as to either claim. The District Court should also have allowed the third claim (Mr. McCoy's content- and viewpoint-based challenge) to proceed to trial.

## ARGUMENT

### I.      Standard of Review

The standard of review of the District Court's grant of summary judgment is

*de novo*.  *Hartford Fire Ins. Co. v. CNA Ins. Co. (Eur.)*, 633 F.3d 50, 53 (1st Cir.

2011); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011).  This

Court "will reverse only if, after reviewing the facts and making all inferences in

favor of the party against whom summary judgment entered . . . , 'the evidence on

record is sufficiently open-ended to permit a rational factfinder to resolve the issue

in favor of either side.'"  *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st

Cir. 2011).

### II.      The District Court Erred in Granting Summary Judgment on Mr. McCoy's As-Applied Vagueness Claim.

"A law is unconstitutionally vague when it 'fails to provide a person of

ordinary intelligence fair notice of what is prohibited, or is so standardless that it

authorizes or encourages seriously discriminatory enforcement.'"  *McCoy v. Town*

*of Pittsfield*, 2020 DNH 217, 11 (quoting *United States v. Williams*, 553 U.S. 285,

292 (2008)).  "'The degree of vagueness that the Constitution tolerates - as well as

the relative importance of fair notice and fair enforcement - depends in part on the

nature of the enactment.'"  *McCoy*, 2020 DNH 217, 11 (quoting *Village of*

*Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)).

"'If, for example, the law interferes with the right of free speech or of association,

a more stringent vagueness test should apply.'" *Id.* A "law can also be held to be void for vagueness on discretionary enforcement grounds 'if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement.'" *Buckle Up Festival, LLC v. City of Cincinnati*, 336 F. Supp. 3d 882, 887 (S.D. Ohio 2018) (quoting *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1183–84 (6th Cir. 1995)). "The key question is whether the provision 'provide[s] explicit standards guiding [its] enforcement." *Id.* (internal quotation and citation marks omitted).

For example, in *Buckle Up Festival*, the District Court held a municipal ordinance that required an admission tax to be paid to the city of Cincinnati based on amounts paid for admission to any public performance for profit in the city was unconstitutionally vague, where the ordinance defined "admission" to "include seats, chairs, tables and benches, reserved or otherwise, and other similar accommodations and charges made therefor." 336 F. Supp. 3d at 884. The Court held "the dictionary definition for 'accommodations' falls short of providing minimal guidelines to those who enforce this section of the Municipal Code." *Id.* The "Plaintiffs allege[d] that Defendants did not require them to pay the admissions tax for its 2012 Bunbury music festival, but did require them to pay the tax for the 2013 Bunbury music festival." *Id.* The Court held "[t]his allegation

supports Plaintiffs' claim that Section 309-3 is vague, and therefore leads to arbitrary, discriminatory and overzealous enforcement." *Id.*

Here, the District Court summarily dismissed Mr. McCoy's argument that the Ordinance does not apply because, it concluded, "it is unclear how that would affect McCoy's vagueness claim." App. at 499. For example, the Court reasoned: "if . . . his trailer was not a 'storage container' as defined in the ordinance, the select board should have denied his initial application for a storage container permit." *Id.* That is irrelevant.[1] Regardless whether the Board properly granted Mr. McCoy a storage container permit in 2015, the Board granted an extension of that permit the following year despite (1) knowing Mr. McCoy was no longer using the trailer principally for storage and, instead, was using it to express his support for President Trump and (2) receiving at least one anonymous complaint about the trailer. *Id.* at 489. The Town purported to apply the Ordinance when it no longer applied to "grant" Mr. McCoy an extension that he did not need.

This misapplication continued: The Town ultimately applied the Ordinance to "grant" Mr. McCoy *two* "extensions" (one for six months and then one for a year) of his storage container permit in 2016 and 2017, respectively, but then

---

[1] It is also unsupported. There was no testimony in the record regarding what the Town would or would not have done if it had determined the Ordinance did not apply.

applied the Ordinance to *deny* him a third (one-year) "extension" of his permit
(while granting him a brief 30-day extension of the same permit to allow him to
remove the trailer).  There was nothing different about Mr. McCoy's third
extension request.

   To complicate its arbitrary enforcement of the Ordinance, there was no
authority in the Ordinance for extensions.  The District Court concluded "the Town
has not conceded . . . it had no authority to grant a permit extension."  *Id.* at 499.
That is inaccurate: the Town admitted the Ordinance contains no "process" for
extending a permit:

```
                                              Page 19
1            You would agree with me that article 14 does not
2       provide the Town with the authority to extend a permit
3       for a storage container?
4                 MR. DIETEL:  Objection as to form.  You can
5       answer that, Cara.
6                 THE WITNESS:  There's no provision for a
7       process.
8       BY MR. FOJO:
9    Q.  What do you mean by that?
10   A.  There's no provision in any of the -- any of this article
11       detailing a process for asking for an extension.
12   Q.  Does that mean that a resident cannot ask for an
13       extension?
14   A.  No.  It means that they can ask for an extension.
15       There's just no defined process for that extension.
16   Q.  Which section here states that a resident can ask for an
17       extension?
18   A.  There is no specific section that states that they can
19       ask for that.
20   Q.  Okay.  Is there a section that says that the Town can
21       grant an extension?
22   A.  No.
23   Q.  Okay.  So when the Town received -- now, you testified
```

17

*Id.* at 400.  The distinction between "process" and "authority" is a matter of semantics: if there is no process for providing an extension, then there cannot be any authority for doing so.  *See id.*

The District Court, nevertheless, concluded the Town could grant extensions from the Select Board's broad power to "have charge of administering and enforcing the zoning ordinance."  *Id.* at 499-500.  "The authority to administer and enforce the ordinance," as the District Court's logic goes, "includes the authority and discretion to decide whether to grant storage container permits and extensions of existing permits."  *Id.* at 500.  In other words, the District Court *invented* a new power for the Select Board that directly conflicts with its own governing Ordinance: it may now grant extensions of storage container permits despite the fact the Ordinance prohibits maintaining a storage container on a lot for more than 12 months.  Indeed, by relying on the broad authority above, a court could assign a municipal board with *any* authority it deems appropriate to justify a challenged result.

New Hampshire, however, follows "Dillon's Rule," which "provides that municipal corporations have only those powers that are expressly granted, those necessarily or fairly implied from expressly granted powers, and those that are essential and indispensable."  *Arlington County v. White*, 259 Va. 708, 719 (2000).  "[T]owns are but subdivisions of the State and have only the powers the State

grants to them." *Piper v. Meredith*, 110 N.H. 291 (1970). "[T]owns only have 'such powers as are *expressly granted* to them by the legislature and such as are *necessarily* implied or incidental thereto.'" *Girard v. Town of Allenstown*, 121 N.H. 268, 270-71 (1981) (quoting *Piper v. Meredith*, 110 N.H. 291, 295 (1970)) (emphases in original). These authorities, therefore, provide that cities and towns are not allowed to add to their authority or reduce their responsibilities unless the legislature permits them. The only things towns and cities may do in New Hampshire are those things that the state legislature has directly authorized them to do in a statute, or that are "necessarily implied" by such a grant of authority.

Here, nothing in the Ordinance provided the Town with the authority to extend a storage container period beyond the time period contained in it, and the Town properly conceded it had no such "process" for doing so. The District Court's assertion that Mr. McCoy "provides no authority stating otherwise" flips the Tenth Amendment on its head: Dillon's Rule provides that municipalities do not have inherent power whereby a resident must produce his/her own authority that *prevents* the municipality from undertaking certain action. Rather, the Rule states a municipality must find its authority in an *expressly-granted* power, or *necessarily or fairly imply it* from expressly-granted powers. That is not the case here.

19

The Town's lack of authority for extensions is further belied by the facts it could not identify any reasoning for its denial of Mr. McCoy's third extension request in 2018 and its admission that the circumstances were the same.  *See* App. at 404-05.  The District Court reasons that "[a]t least two key factors differentiate McCoy's third extension request from his prior requests": the passage of time and the fact Mr. McCoy painted over the expressive content on the trailer.  *Id.* at 500.  Neither factor matters,[2] and the Court's reasoning suffers from the same logical gap above concerning the authority to grant extensions: the Ordinance does not authorize the Board to consider any factors when determining whether to grant an extension *because there is no process at all for extensions*.  Whatever the Board considered – its "balancing" of the terms of the Ordinance with Mr. McCoy's request, etc., *see id.* at 502 – was not authorized by the Ordinance.  Without such authority, the Board essentially created rationales and bases for whether to grant or deny Mr. McCoy's third extension request out of whole cloth.  That arbitrary and unpredictable process prevents a person of ordinary intelligence from having fair notice of what is prohibited, and there are no standards whatsoever such that discriminatory enforcement is inevitable.

---

[2] Even if they mattered, the passage of time is present in every instance or action, and the back of the trailer still showed the word "Trump."

The Board's conduct demonstrates it applied the Ordinance in an arbitrary and discriminatory fashion: it acknowledges Mr. McCoy did not use the trailer principally for storage (and, thus, that the Ordinance did not apply to it) but then required him to maintain a storage container permit, and it concedes it had no authority or process under the Ordinance to extend that permit but then granted Mr. McCoy two extensions of his permit and then denied him a third extension. The Town's application of the Ordinance was unconstitutionally vague.

## III. The District Court Erred in Granting Summary Judgment on Mr. McCoy's Equal Protection Claim.

To prevail on this claim, Mr. McCoy must show he "has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *McCoy*, 2020 DNH 217, 14 (quoting *Donovan v. City of Haverhill*, 311 F.3d 74, 77 (1st Cir. 2002)).[3] "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" *McCoy*, 2020 DNH 217, 14 (quoting *Davis v. Coakley*, 802 F.3d 128, 133 (1st Cir. 2015)). "Although '[e]xact correlation [between comparators] is neither likely nor necessary, . . . 'a class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all

---

[3] At the end of its Order, the District Court addresses whether Mr. McCoy provided proof of discriminatory intent. *See* App. at 508-09. That analysis and requirement are irrelevant for purposes of a "class of one" claim. *See McCoy*, 2020 DNH 217, 14

respects relevant to the challenged government action.'" *McCoy*, 2020 DNH 217, 14 (*Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013)).

### A.    Mr. McCoy was treated differently from others similarly situated.

The Town alleged, in its Motion, that "[n]o reasonable jury could examine the undisputed facts . . . and conclude that McCoy was discriminated against based on his support for President Trump or his use of his Storage Container to express that support, or any other factor."  App. at 44.  The Town phrased the question incorrectly.

In its Order on the Town's Motion for Judgment on the Pleadings, the District Court correctly summarized Mr. McCoy's claim as follows: "McCoy asserts that the ordinance, as applied by Pittsfield, impermissibly creates two classes of residents - persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech - and argues that the Town treats these classes differently in violation of the Constitution." *McCoy*, 2020 DNH 217, 13.  Accordingly, "the relevant comparison points are property owners in Pittsfield with unpermitted storage containers on their properties, including trailers." *Id.* at 14.

The District Court labeled the evidence Mr. McCoy provided in his Objection to the Town's Motion for Summary Judgment "too conclusory or speculative" because his "declaration and photographs provide incomplete or

inadequate information to show that these other trailers were similarly situated to McCoy." App. at 506. Specifically, the District Court identified it could not "decipher from the evidence which of the alleged comparators may be 'grandfathered' in;" and Mr. McCoy's declaration was "missing other information about the trailers," such as whether they were parked in the same location; whether they were being used for "residential occupancy or transient lodging,"; whether they were unpermitted; whether they received permit extensions; and whether the Town had undertaken enforcement action against them. *Id.* at 507. The Court's analysis is incorrect.

The first three comparison points above (whether the trailers were "grandfathered," whether they were parked in the same location, and whether they were being used for "residential occupancy or transient lodging") were not included in the District Court's recitation of the applicable comparison points: "persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech - and argues that the Town treats these classes differently in violation of the Constitution." *McCoy*, 2020 DNH 217, 13. Like its analysis above, the Court inserted them here out of whole cloth. They are irrelevant to the standard the Court identified. Nor was it Mr. McCoy's burden to demonstrate them. There was

also was no evidence in the record below concerning them, let alone any evidence sufficient to demonstrate there was no dispute of fact.[4]

Contrary to the Court's contention, the remaining three comparison points *were* explained, not only by Mr. McCoy *but by the Town as well*. Mr. McCoy identified numerous property owners in Pittsfield who had storage containers on their properties that were unpermitted, and he submitted photographs of several hundred trailers or storage containers located on properties in Pittsfield that did not have permits and that the Town had not directed to be removed. *See* App. at 405-06, 420-54. Ms. Marston testified on behalf of the Town that only approximately 12 of these trailers or storage containers were granted permits. *Id.* at 406-07. That, of course, implies that there remained ***hundreds*** of trailers or storage containers Mr. McCoy identified that did not have permits and that remained on properties in Pittsfield.

---

[4] Rather, the Town's utter lack of enforcement demonstrates either that the many unpermitted trailers Mr. McCoy identified *were not grandfathered* or there was no evidence that they were. *See* App. at 507. The New Hampshire Supreme Court has held that "[t]he burden of establishing that the use in question is fundamentally the same use and not a new and impermissible one is on the party asserting it." *New London v. Leskiewicz*, 110 N.H. 462, 467 (1970). If the Board had been enforcing the Ordinance uniformly, it would presume every unpermitted trailer violated it unless (1) the property owner had a permit, which would be recorded in the file for that lot, or (2) the property owner – consistent with *Leskiewicz* – had proven grandfathering in response to an enforcement investigation, which would be recorded in the file for the lot. Instead, the Board had no clue whether any of those unpermitted trailers were grandfathered. *See* App. 462-63 (Mr. Pacheco stated unpermitted trailers "are all over the place but are they grandfathered or not would be another question."). This ignorance demonstrates the Board never investigated them and, thus, discriminated against Mr. McCoy by enforcing the Ordinance against him but not the many other unpermitted trailers in town.

Mr. McCoy's declaration and photographs merely confirmed what the Town had conceded *for years*: there were many unpermitted or "illegal" storage containers all over town. *See Id.* at 455-71. The Town never investigated these other storage containers. It argued it undertook enforcement action against only *three* property owners with unpermitted trailers, *see id.* at 46-47, and there was no dispute of fact it failed to address many other unpermitted trailers located in Pittsfield, including many of those Mr. McCoy identified. In contrast, in addition to those three property owners, it directed *Mr. McCoy* to remove his trailer and conceded it lacked any reasoning or basis for doing so.

The Town alleged its enforcement action against three property owners constituted an "ample history" of enforcement activity, and the District Court concluded those three enforcement cases (against hundreds of unpermitted trailers) "may be enough to defeat a 'class of one' equal protection claim." *Id.* at 507 n.31. The cases cited by the District Court on this point, however, concern vastly different facts: in *Cordi-Allen v. Conlon*, 494 F.3d 245 (1st Cir. 2007), the plaintiff landowners provided no evidence at all showing they were similarly situated with a nearby yacht club. *Id.* at 252-55. In *Campbell v. Rainbow City*, 434 F.3d 1306 (11th Cir. 2006), the court addressed whether the plaintiff's development was similarly situated with just *one other development* and concluded the planning commission had treated both developments fairly similarly. *Id.* at 1317.

25

The Town knew there were hundreds of unpermitted trailers in Pittsfield, and it undertook no enforcement activity except for three of them and Mr. McCoy. There was no evidence of any other enforcement activity. The Town abdicated its responsibility concerning the rest of these trailers.

### B. The Town lacked any rational basis for its disparate treatment of Mr. McCoy.

The District Court concluded Mr. McCoy "offers no evidence to show that the Town did not have a rational basis for ordering him to remove the trailer in June 2018," and there was no "evidence of an arbitrary or irrational motive for [the] Town's order to remove the trailer." App. at 509-10. This is also inaccurate.

The Town ***conceded*** it had no rational basis. Ms. Marston agreed the Ordinance provided no authority for extensions; the Town could not identify any reason why the Board extended Mr. McCoy's permits twice; and the Town could not identify any reasoning why it denied Mr. McCoy's third extension request. *Id.* at 401, 404-05.

### IV. The District Court Erred in Granting Summary Judgment on Mr. McCoy's Content- and Viewpoint-Based First Amendment Claim.

Federal Rule of Civil Procedure 56(f) states "***After giving notice and a reasonable time to respond,*** the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider

summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." (Emphasis added.)

The District Court concedes "neither party separately briefed the content and viewpoint discrimination claim and counsel for the parties admitted at oral argument that they mistakenly believed that the court had dismissed this claim." App. at 494. Indeed, the Town conceded at the September 17 hearing that it believed that – with respect to Mr. McCoy's First Amendment claim – "the only thing that was properly pled was that its application was impermissibly vague." *Id.* at 556. The Town's Motion for Summary Judgment and corresponding Memorandum of Law contain no argument concerning Mr. McCoy's content- and viewpoint-based claim. *See id.* at 28-53. The Town's first argument requesting summary judgment on that portion of Mr. McCoy's claim occurred at the September 17 hearing. *See id.* at 558-59. There is also nothing in the District Court's docket advising the parties to brief that issue.

In a footnote, the District Court appears to reverse course and claims Mr. McCoy "was on notice that the Town was seeking summary judgment on all remaining claims," and Mr. McCoy "had ample opportunity to present [evidence]" to support his claim." *Id.* at 494 n.20. This explanation makes no sense in light of the facts that the Town never briefed that claim (and, thus, did not meet its burden of proof on it), and the Court never provided notice to the parties that they should

27

brief that issue. *Id.* at 28-53, 494. The proper procedure, under Rule 56(f), would have been for the Court to provide notice to the parties, along with a reasonable period of time, to address Mr. McCoy's content- and viewpoint-based First Amendment claim.

The District Court did not do that. Instead, it undertook an analysis of that portion of the claim, reviewed only the evidence presented by the parties as to the *other* two claims addressed in the Town's Motion, and concluded Mr. McCoy "neither provides nor points to any evidence to support his claims that the Town enforced the ordinance against him in a discriminatory manner based on its content, or targeted McCoy because the trailer expressed a viewpoint supporting President Trump." *Id.* at 496. That should not be surprising: as the Court conceded, *the parties never briefed or addressed that issue*. This was a clear – an shocking – legal error. The District Court erred in granting summary judgment on Mr. McCoy's content- and viewpoint-based First Amendment claim.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's Order.

Respectfully submitted,

JOSEPH McCOY,

By His Attorneys,

FOJO LAW


Dated:  April 15, 2022                          */s/Robert M. Fojo*                          
                                                Robert M. Fojo, Esq. (#1191945)
                                                264 South River Road, Suite 464
                                                Bedford, NH 03110
                                                (603) 473-4694
                                                rfojo@FojoLaw.com


## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App.

P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this document contains fewer than 13,000 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared using Microsoft Word in Times New

Roman, a proportionally spaced typeface.


Dated:  April 15, 2022                          */s/Robert M. Fojo*                          
                                                Robert M. Fojo, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 15, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of Court of the United States Court of Appeals for the First Circuit by using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.


Dated:  April 15, 2022                    <u>*/s/Robert M. Fojo*          </u>
                                                          Robert M. Fojo, Esq.

**ADDENDUM**

**TABLE OF CONTENTS**

MEMORANDUM ORDER (DECEMBER 10, 2020) ...........................................32

MEMORANDUM ORDER (OCTOBER 6, 2021) ................................................50

JUDGMENT ....................................................................................................80

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joseph McCoy

v.                                    Civil No. 1:20-cv-362-JL
                                      Opinion No. 2020 DNH 217
Town of Pittsfield


**<u>MEMORANDUM ORDER</u>**

In this action, which pits a property owner against his town over the enforcement of a zoning ordinance, resolution of the Town's motion for judgment on the pleadings hinges on the sufficiency of the factual allegations in the plaintiff's complaint. Plaintiff Joseph McCoy sued the Town of Pittsfield, alleging that the Town's order to remove a 52-foot trailer depicting the word "TRUMP" from his property violated his rights under the United States Constitution and caused him emotional distress. He brought two claims under 42 U.S.C. § 1983 (Count 1 for violation of free speech rights and Count 2 for violation of equal protection rights) and two claims under New Hampshire law for intentional and negligent infliction of emotional distress (Counts 3 and 4). This court has jurisdiction over McCoy's federal claims under 28 U.S.C. §§ 1331 and 1343 because the claims present federal questions and arise from federal civil rights statutes, and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367(a).

Pittsfield moves for judgment on the pleadings, arguing that McCoy relies solely on unsubstantiated legal conclusions to support his free speech and equal protection claims under § 1983, and that his state claims are also insufficiently supported by facts and barred by statutory immunity doctrines. After reviewing the parties' submissions and hearing oral argument, the court grants the motion in part and denies it in part. As for McCoy's free speech claim, his

32

complaint contains enough facts that, when construed in his favor, support the inference that the

Town of Pittsfield applied the ordinance against him in a way that discriminates against either

the content or viewpoint of his speech, and that the Town's application of the ordinance was

unconstitutionally vague. The court further finds that McCoy has plead sufficient facts to satisfy

the "similarly situated" element of his "class of one" equal protection claim. The court,

however, grants Pittsfield's motion as to the overbreadth portion of McCoy's free speech claim

and Counts 3 and 4 in full, as McCoy has conceded that he is no longer pursuing those claims.

## I.   Applicable legal standard

A motion for judgment on the pleadings under Rule 12(c) is evaluated under essentially

the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Simmons

v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). Under this standard, McCoy must plead "factual

content that allows the court to draw the reasonable inference that the [Town] is liable for the

misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). McCoy must

also "do more than suggest in conclusory terms the existence of questions of fact about the

elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013).

Dismissal is warranted when a complaint's factual averments are "too meager, vague, or

conclusory to remove the possibility of relief from the realm of mere conjecture." In re

Montreal, Maine & Atl. Ry., Ltd., 888 F.3d 1, 6 (1st Cir. 2018) (quoting SEC v. Tambone, 597

F.3d 436, 442 (1st Cir. 2010) (en banc)).

## II.   Background

Because a motion for judgment on the pleadings "calls for an assessment of the merits of

the case at an embryonic stage," the court construes all well-pleaded facts from the complaint in

2

the light most favorable to McCoy and draws all reasonable inferences in his favor.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  The following background conforms to this requirement.

McCoy and his wife moved to Pittsfield in early 2014.[1]  Their property sits along state Route 107.[2]  Along with their belongings, the McCoys brought a 52-foot trailer to their property and placed it in the front yard.[3]  In July 2016, McCoy's son painted the word "TRUMP" in large white letters on the trailer.[4]  The newly-painted trailer caught the attention of the local media and led to a story that was published in the *Concord Monitor* on August 11, 2016.[5]  According to McCoy, statements from the *Monitor* article show that he used the trailer primarily as a sign to express political speech, and secondarily (if at all) for storage.[6]

The trailer also caught the attention of Pittsfield residents and its Board of Selectmen. After the *Monitor* article was published, the Town allegedly received several complaints about McCoy's trailer, but McCoy believes this is untrue.[7]  Nevertheless, at some point after the article's publication, the Town's Board of Selectmen issued an order directing McCoy to remove the trailer by July 2018 pursuant to a Town ordinance, purportedly because the trailer was an

---

[1] Complaint (doc. no. 1), at ¶ 8.

[2] Id.

[3] Id. at ¶ 9.

[4] Id. at ¶ 10.

[5] Id. at ¶ 11.

[6] Id. at ¶¶ 12-14.

[7] Id. at ¶¶ 19, 24.

3

unpermitted storage container.[8]  According to McCoy, however, the removal order was based solely on the fact that the trailer depicted the word "TRUMP" in large letters. [9]

Pittsfield first adopted regulations for storage containers as part of its zoning ordinance in 1997.[10]  From 1997 to 2015, the ordinance defined "storage container" as "any truck trailer, box trailer, school bus, mobile home or other similar facility used for storage or other purposes."[11]  After the Town amended its ordinance in March 2016, the definition of storage container changed to "a truck trailer, box trailer, school bus, MANUFACTURED HOUSING unit, or similar mobile container parked continuously for 31 days or more and used principally for storage and not used for any person's residential occupancy or transient lodging."[12]  McCoy contends that his trailer did not meet the definition of storage container in the post-2016 ordinance because he was not using the trailer "principally for storage" but was instead using the trailer principally as a sign to express political speech, and the trailer met the conditions in the ordinance for outdoor signs.[13]

McCoy alleges generally that "during this time and afterward," Pittsfield has allowed other residents to keep similar, unpermitted storage containers on their properties.[14]  He further

---

[8] Id. at ¶¶ 20-21.  McCoy does not provide the date of the Town's order.

[9] Id. at ¶ 20.

[10] Id. at ¶ 15.

[11] Id. at ¶ 16.

[12] Id. at ¶ 17.

[13] Id. at ¶ 21.

[14] Id. at ¶ 22.  McCoy alleges that a member of the Board of Selectmen – Carl Anderson – wrote him a letter dated January 11, 2020 that references the Town's decision to order McCoy to remove the trailer and the fact that other "illegal storage containers" existed in the Town.  Id. at

asserts that three members of the Board of Selectmen – Carl Anderson, Larry Konopka, and Jim Allard – repeatedly harassed him about his trailer, but did not apply similar pressure to other residents with unpermitted storage containers.[15]

### III.   **Analysis**

Counts 1 and 2 of McCoy's complaint arise from 42 U.S.C. § 1983.  To state a claim under § 1983, McCoy must plausibly plead two essential elements, "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013).  Pittsfield challenges only the second element of McCoy's § 1983 claims, namely, whether its conduct encroached on McCoy's constitutional rights.  The court addresses each count in turn.

### A.   **Count 1 (Free Speech)**

Through Count 1, McCoy alleges that the ordinance, as applied by Pittsfield, is an "unconstitutional abridgement" of his right to freedom of speech under the First and Fourteenth Amendments of the Constitution and unconstitutionally vague and overbroad.[16]  Pittsfield contends that McCoy's challenge to the ordinance fails because it is based only on undeveloped,

---

¶¶ 22, 24.  McCoy does not provide a copy of this letter as an exhibit to his complaint or objection to Pittsfield's motion for judgment on the pleadings.

[15] Id. at ¶ 23.  McCoy does not specify when this alleged harassment occurred, or whether it occurred before the Town issued its order to remove the trailer, after the order, or both before and after.

[16] Complaint (doc. no. 1), at ¶ 26.

5

bald legal conclusions, and lacks the required factual predicate to state a plausible claim for relief.[17]  For the following reasons, the court finds that Count 1 states a cause of action.

 "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'"  Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015) (quoting U.S. Const. amend. I).  "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  United States v. Stevens, 559 U.S. 460, 468 (2010) (citing Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002)); see also Iancu v. Brunetti, 139 S.Ct. 2294, 2299 (2019) ("The government may not discriminate against speech based on the ideas or opinions it conveys.").

The government may restrict speech in nonpublic fora "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'"  Cornelius v. NAACP Legal Defense and Education Fund, Inc., 473 U.S. 788, 800 (1985) (quoting Perry Educational Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 46 (1983)).  "The existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination."  Id. at 811.

There are varying levels of discrimination under First Amendment jurisprudence. Content discrimination occurs whenever a government regulates "particular speech because of the topic discussed or the idea or message expressed."  Reed, 135 S.Ct. at 2226-27.  Content-based restrictions "are subject to strict scrutiny, which requires the government to demonstrate

---

[17] Doc. no. 10-1, at 5.

that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest.'" Signs for Jesus v. Town of Pembroke, NH, 977 F.3d 93, 101 (1st Cir. 2020) (quoting Reed, 135 S.Ct. at 2218). Viewpoint discrimination is "an egregious form of content discrimination" in which "the government targets not subject matter, but particular views taken by speakers on a subject." Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995). In cases like this one involving political speech, the "First Amendment's guarantee of free speech applies with special vigor" and "affords the broadest protection to such political expression in order to ensure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 51 (1st Cir. 2011) (quotations omitted).

Pittsfield labels McCoy's as-applied challenge as lacking factual support. It further argues that McCoy concedes, through his allegation that the trailer was a sign and not a storage container, that he had no right to keep the trailer on his property as a storage container and thus suffered no constitutional injury. Neither argument supports dismissal of Count 1.

In challenging the sufficiency of the factual support for Count 1, Pittsfield focuses on the portion of the complaint in which McCoy recites this claim (paragraphs 27-33) and not the remainder of the complaint. The court must, however, read the complaint "as a whole" when ruling on a motion for judgment on the pleadings. See Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (noting that "there need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action"); Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011) ("The question confronting a court on a motion to dismiss is whether all the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible.") (emphasis added).

7

38

Viewed as a whole and in the light most favorable to McCoy, the complaint contains just enough factual allegations to survive a motion for judgment on the pleadings.  Specifically, in paragraph 20, McCoy alleges that the Town ordered him to remove the trailer for violating the "storage container" section of the ordinance because the trailer depicted the word "TRUMP" in large letters, yet allowed other unpermitted trailers (that did not depict political speech or support for Mr. Trump) to remain.  These allegations, taken as true for purposes of this motion, support a claim for unconstitutional content (banning unpermitted storage containers with political messages) or viewpoint (banning unpermitted storage containers expressing support for then-political candidate Donald J. Trump) discrimination.  See Rosenberger, 515 U.S. at 828-29 ("Discrimination against speech because of its message is presumed to be unconstitutional . . . [and] [w]hen the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.") (citing Turner Broadcasting System, Inc. v. FCC, 512 U. S. 622, 641-43 (1994) and R.A.V. v. St. Paul, 505 U. S. 377, 391 (1992)).

As for McCoy's assertion that the trailer was a sign and not a storage container, the court disagrees that this amounts to a concession that McCoy has not suffered any constitutional injury from Pittsfield's application of the ordinance.  The court can draw the reasonable inference from this allegation that by applying the storage container rule to him when he was using the trailer as a sign, the Town applied the ordinance in a way that repressed his First Amendment rights.  In other words, Count 1 can be read to allege that Pittsfield should have applied the sign rules to him all along, but its real intent was to use the storage container rule as a cover for unconstitutionally restricting his speech rights.

8

McCoy also challenges the Town's application of the ordinance on overbreadth and vagueness grounds.[18]  Pittsfield seeks dismissal of these aspects of Count 1 because they are based solely on bare conclusions of law.[19]

**Overbreadth**.  Pittsfield is correct that McCoy only supports his overbreadth claim with pure conclusions of law,[20] which the court cannot accept as true for purposes of deciding this motion.  See Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Without pointing to any specific factual allegation in the complaint, McCoy argues that he "adequately" alleges that Pittsfield's order to remove the trailer pursuant to the ordinance broadens the ordinance beyond its text to encompass unpermitted storage containers that express political speech.[21]  Even if the court were to accept this conclusory statement as true, it is insufficient to satisfy the rigorous standard for challenging a law or rule on overbreadth grounds.

Neither the United States Supreme Court nor the First Circuit Court of Appeals have determined "whether there is such a creature as an as-applied overbreadth challenge."  McCullen v. Coakley, 708 F.3d 1, 11 (1st Cir. 2013), rev'd and remanded on other grounds, 573 U.S. 464 (2014).  Neither party addresses this argument in their motion papers, and other Circuit Courts of Appeal appear to be split on this question.  Compare, Farrell v. Burke, 449 F.3d 470, 498 (2d

---

[18] Doc. no. 12, at 4.  McCoy's counsel conceded at oral argument that he is not making facial overbreadth or vagueness challenges to the ordinance.

[19] Doc. no. 10-1, at 5.

[20] See Complaint (doc. no. 1), at ¶ 27 and ¶ 28.

[21] Doc. no. 12, at 4.

Cir. 2006) ("All overbreadth challenges are facial challenges, because an overbreadth challenge by its nature assumes that the measure is constitutional as applied to the party before the court."), with Turchick v. United States, 561 F.2d 719, 721 n.3 (8th Cir. 1977) ("The 'as applied' method vindicates a claimant whose conduct is within the First Amendment but invalidates the challenged statute only to the extent of the impermissible application").

It is clear, however, that an overbreadth challenge always contains a facial component. See Hill v. Colorado, 530 U.S. 703, 731–32 (2000) (noting that "the overbreadth doctrine enables litigants 'to challenge a statute, not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression'") (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)).  The court will therefore evaluate McCoy's overbreadth claim under the facial challenge rubric.

To show that the ordinance is overbroad, McCoy must prove that it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the [rule's] plainly legitimate sweep.'" Virginia v. Hicks, 539 U.S. 113, 118-19 (2003) (quoting Broadrick, 413 U.S. at 615)). An overbreadth finding "suffices to invalidate all enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'" Id. at 119 (quoting Broadrick, 413 U.S. at 613).  This court must "vigorously enforce[ ] the requirement that a [law's] overbreadth be substantial, not only in an absolute sense, but also relative to the [law's] plainly legitimate sweep." United States v. Williams, 553 U.S. 285, 292 (2008)).  "Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" Id. (quoting Los Angeles Police Dept. v. United Reporting Publishing Corp., 528 U.S. 32, 39 (1999)).

10

McCoy has not shown, either through the factual allegations in his complaint or in his objection to Pittsfield's motion, how the ordinance punishes a "substantial" amount of protected speech in an absolute sense or in relation to the ordinance's plainly legitimate sweep.  In fact, McCoy does not even address the ordinance's "perfectly constitutional" applications or attempt to argue why its application to him is substantially punitive relative to its legitimate applications.  Because McCoy's threadbare conclusions of law do not suffice to meet this vigorous standard at the pleadings stage, Pittsfield is entitled to judgment on the pleadings on the overbreadth portion of Count 1.

**Vagueness**.  McCoy's as-applied vagueness challenge fares slightly better.[22]  The vagueness doctrine implicates the Due Process Clause of the Fourteenth Amendment, not purely the First Amendment.  See Williams, 553 U.S. at 304; Kolender v. Lawson, 461 U.S. 352, 353-54 (1983).  A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  Id.  "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment."  Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  "If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply."  Id. at 499.

---

[22] Unlike overbreadth claims, the First Circuit Court of Appeals has recognized as-applied vagueness claims.  See United States v. Zhen Zhou Wu, 711 F.3d 1, 15 (1st Cir. 2013) ("Outside the First Amendment context, we consider whether a statute is vague as applied to the particular facts at issue . . . .") (emphasis in original) (internal quotation marks omitted).

11

After reviewing the complaint and hearing oral argument, it is unclear to the court whether this vagueness challenge involves a lack of fair notice, risk of discriminatory enforcement, both, or neither. Although the text of the ordinance does not reference speech, McCoy alleges that Pittsfield used the ordinance to regulate his speech when it ordered him to remove his trailer based on the ordinance and the fact that the trailer depicted "TRUMP" in large letters.[23] McCoy argues that this application of the ordinance was unconstitutionally vague because the Town failed to make clear whether all political speech may be prohibited, or only some types of speech or expression.[24] Accepting McCoy's factual allegation about the Town's basis for its removal order as true, which the court must for purposes of this motion, the court can reasonably infer from this allegation that a person of ordinary intelligence would not have fair notice of what is prohibited under the ordinance or what a trailer must look like in order to pass muster under the storage container section of the ordinance.

Because McCoy alleges that the order interferes with his free speech rights, a "greater degree of specificity" is required, and under this more-stringent vagueness test, the Town's application of the ordinance to McCoy could also be viewed as "so standardless that it authorizes" some form of discriminatory enforcement. Buckley v. Valeo, 424 U.S. 1, 77 (1976). McCoy's complaint therefore contains minimally sufficient factual allegations to support a claim that the Town applied the ordinance against him (and interfered with his free speech rights) in a vague manner. Pittsfield's motion for judgment on the pleadings on this portion of his claim accordingly must be denied.

---

[23] Complaint (doc. no. 1), at ¶ 20.

[24] Doc. no. 12, at 4.

In sum, McCoy's complaint alleges enough facts to state a plausible claim of constitutional injury stemming from the Town's application of the ordinance against him; namely, that the Town applied the ordinance in a manner that discriminated against the content or viewpoint of his speech, and in a vague manner. McCoy has not alleged sufficient facts to support a claim that the ordinance is unconstitutionally overbroad. Pittsfield's motion for judgment on the pleadings on Count 1 is therefore denied in part and granted in part.

### B. Count 2 (Equal Protection – disparate treatment)

Pittsfield similarly argues that it is entitled to judgment on the pleadings on Count 2 of McCoy's complaint because that claim is not supported by sufficient factual allegations. Instead, Pittsfield asserts that McCoy has plead only "[g]eneral and conclusory allegations" that the Town treated other similarly situated landowners differently,[25] which are insufficient to carry his burden of proving an equal protection claim at the pleadings stage. McCoy counters that he has both sufficiently alleged the existence of other similarly situated landowners, and that the Town treated these landowners differently than him. In this procedural posture – a Rule 12 challenge to the pleadings – McCoy has the better of the arguments.

McCoy asserts that the ordinance, as applied by Pittsfield, impermissibly creates two classes of residents – persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech – and argues that the Town treats these classes differently in violation of the Constitution.[26] Liberally construed,

---

[25] Doc. no. 10-1, at 7.

[26] Compl. (doc. no. 1) at ¶ 36.

this is a "class of one" theory of equal protection liability and, under such a theory, McCoy must allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

Pittsfield's motion challenges the level of factual detail supporting the "similarly situated" element of McCoy's equal protection claim. For the following reasons, the court is not persuaded by Pittsfield's arguments.

"An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015) (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir.2001)). Although "[e]xact correlation [between comparators] is neither likely nor necessary, id., "a class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action." Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013).

Here, the relevant comparison points are property owners in Pittsfield with unpermitted storage containers on their properties, including trailers. McCoy sufficiently alleges that these similarly situated comparators exist (or existed at the time of the Town's action against him) and did not receive similar treatment as he did from the Town.

Gianfrancesco v. Town of Wrentham does not compel a different result, as Pittsfield

argues in its motion.[27]  There, the plaintiff simply alleged "that the regulatory and enforcement

measures taken against Tom's Tavern were not also taken against 'similarly situated

establishments'" but did not specify what made these other establishments similarly situated.

712 F.3d at 640.  This assertion was "so general and conclusory" that it could not survive a

motion to dismiss.  Id.; see also Bel-Air Nursing & Rehab Ctr., Inc. v. Town of Goffstown, No.

16-CV-259-JL, 2018 WL 264091, at *7 (D.N.H. Jan. 2, 2018) (holding that plaintiff's "vague

and conclusory reference to 'other business in analogous matters'" fell "far short" of showing of

similarly situated comparators necessary to survive a motion to dismiss).  Here, McCoy's

allegations, while generalized, provide further detail about the relevant comparators.  It also

appears that McCoy based his allegations of other similarly situated property owners on

whatever public information he had access to at the time.  And members of the Pittsfield Board

of Selectmen acknowledged that other unpermitted storage containers or trailers existed, and that

these property owners were not punished for violating the ordinance.[28]  McCoy has therefore

sufficiently alleged the existence of similarly situated comparators for purposes of his equal

protection claim.[29]

---

[27] Doc. no. 10-1, at 7.

[28] Doc. no 1, at ¶ 22.

[29] Under questioning at oral argument, McCoy's counsel acknowledged that his client obtained
additional information about the alleged comparators, both through his own research and through
public records requests to the Town.  Yet McCoy chose not to include that information in the
complaint or his objection to Pittsfield's motion for judgment on the pleadings because he did
not feel it was necessary under the case law.  Counsel for Pittsfield similarly relied on public
records and other documents during oral argument that were not attached to its answer or motion
for judgment on the pleadings.  The court's review of the instant motion would have been aided
by this additional information and documentation, and had the court considered it, the motion

15

While McCoy must show "an extremely high degree of similarity between" himself and the persons to whom he compares himself to meet his burden of proving substantial similarity, here, he has done "more than 'point to nearby parcels in a vacuum and leav[e] it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated,'" albeit by the slimmest of margins. Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007)). For example, McCoy alleges that the Town allowed other landowners in Pittsfield to maintain unpermitted storage containers (without political speech written on them) on their properties, and admitted this to him on several occasions. These property owners were similarly situated because they had unpermitted storage containers, including trailers, on their properties. This is the most relevant, if not the only relevant, factor in the present comparator analysis. And Pittsfield does not state in its motion what other information about these alleged comparators McCoy should have provided at this stage of the case to show that they were truly similarly situated to him.

McCoy has also plead enough facts to support the allegation that the Town treated these other similarly situated landowners differently than him. Specifically, he alleges that the Town took no enforcement action against these other unpermitted trailers or storage containers and did not apply similar pressure or harassment to these other property owners.[30] This is adequate

---

would not have converted to a motion for summary judgment. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (When ruling on a Rule 12 motion, "[a] district court may also consider documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.") (quotations omitted). Instead, the task of deciding this motion was frustratingly limited to drawing inferences from the few factual allegations actually plead in McCoy's complaint.

[30] Doc. no. 1, at ¶ 23.

factual content at the pleadings stage to "allow the court to draw the reasonable inference that [Pittsfield]" violated McCoy's equal protection rights by intentionally treating other similarly situated landowners differently. Martinez, 792 F.3d at 179; see also Testa v. Salvatore Mancini Res. & Activity Ctr., Inc., No. CV 18-00566-WES, 2019 WL 2929333, at *3 (D.R.I. July 8, 2019), report and recommendation adopted, No. 1:18-CV-566-MSM-LDA, 2020 WL 91554 (D.R.I. Jan. 8, 2020) (finding sufficient plaintiff's allegation that she, as an executive director subject to an employment contract, was similarly situated to other "rank and file" employees subject to a collective bargaining agreement). The court accordingly cannot grant judgment on the pleadings for Pittsfield on this basis alone. Pittsfield may challenge the sufficiency of the evidence of similarly situated comparators or other elements of McCoy's equal protection claim through a properly supported motion under Rule 56 or Rule 50 later in the litigation.

### C. Counts 3 and 4 (negligent and intentional infliction of emotional distress)

McCoy also asserts claims under New Hampshire law for negligent and intentional infliction of emotional distress arising from the Town's order to remove his trailer. Pittsfield moves to dismiss these claims on various grounds,[31] but McCoy has not opposed that part of Pittsfield's motion. At oral argument, McCoy's counsel conceded that he is no longer pursuing these claims and the court accordingly grants Pittsfield's motion and awards it judgment on the pleadings on Counts 3 and 4.

---

[31] Doc. no. 10-1, at 7-10.

## IV.   Conclusion

For the reasons set forth above, Pittsfield's motion for judgment on the pleadings[32] is GRANTED as to Counts 3, 4, and the overbreadth portion of Count 1, and DENIED as to the remainder of Count 1 and all of Count 2.  Counts 3 and 4 and the overbreadth portion of Count 1 are dismissed with prejudice.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  December 10, 2020

cc:      Robert M. Fojo, Esq.
         Robert Joseph Dietel, Esq.

---

[32] Doc. no. 10.

18

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joseph McCoy

v.                                    Civil No. 1:20-cv-362-JL
                                      Opinion No. 2021 DNH 158
Town of Pittsfield

## **MEMORANDUM ORDER**

After the court's denial of Defendant Town of Pittsfield's motion for judgment on the
pleadings regarding certain counts of this civil rights lawsuit involving a political message on a
trailer in a residential yard, two of Plaintiff Joseph McCoy's claims remain:  Count 1 for
violation of his free speech rights, and Count 2 for violation of his equal protection rights. [1]  The
Town now moves for summary judgment on these claims, arguing that the undisputed factual
record demonstrates that the Town did not apply its zoning ordinance against him in an
unconstitutionally vague manner or in any other way that violated his First Amendment rights,
and did not selectively enforce the ordinance against him in violation of his equal protection
rights.[2]  The Town also moves to strike a declaration and attachments to the declaration McCoy
submitted as part of his objection to the summary judgment motion.[3]  This court has jurisdiction
over McCoy's claims under 28 U.S.C. §§ 1331 and 1343 because the claims present federal
questions and arise from federal civil rights statutes.

After consideration of the parties' submissions and hearing oral argument, the court
grants the Town's motion for summary judgment and denies its motion to strike.  As for the

---

[1] Doc. no. 13.

[2] See Motion for Summary Judgment (doc. no. 17).

[3] See Motion to Strike (doc. no. 23).

content or viewpoint discrimination aspects of McCoy's First Amendment claim, summary

judgment is appropriate because McCoy cannot "point to specific, competent evidence" that

Town officials discriminated against him based on the expressive content on his trailer.

Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012).  McCoy's

vagueness claim suffers the same fate because no reasonable fact finder could conclude that the

Town's application of the storage container ordinance failed to provide a person of ordinary

intelligence fair notice of what was prohibited, was so standardless that it authorized or

encouraged seriously discriminatory enforcement, or even led to discriminatory enforcement in

McCoy's case.  Finally, the Town is entitled to summary judgment on McCoy's "class of one"

equal protection claim because he has not met his burdens of production and persuasion to

identify similarly situated landowners, demonstrated that the Town treated him differently than

these alleged comparators, or proven that the Town did not have a rational basis for its

enforcement of the ordinance against him.

## I.  <u>Applicable legal standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor

at trial by a rational fact-finder, and "material" if it could sway the outcome under applicable

law.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  In analyzing a summary

judgment motion, the court "views all facts and draws all reasonable inferences in the light most

favorable to the non-moving party."  Id.

The Town also moves to strike the entire McCoy declaration and attachments thereto

under Fed. R. Civ. P. 37(c)(1).  "If a party fails to provide information or identify a witness as

required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Thus, "the baseline rule is that the required sanction in the ordinary case is mandatory preclusion of late-disclosed information." Harriman v. Hancock County, 627 F.3d 22, 29 (1st Cir. 2010) (quotation marks and bracketing omitted). The court considers several factors in determining whether preclusion is appropriate, including "the sanctioned party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket, and the sanctioned party's need for the precluded evidence." Id. at 30 (citing Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009)).

Moreover, under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[P]ersonal knowledge is the touchstone" of the admissibility analysis. Perez v. Volvo Car Corp., 247 F.3d 303, 315–16 (1st Cir. 2001). In addition, an affidavit's statements "must concern facts as opposed to conclusions, assumptions, or surmise" to be admissible. Id. at 316. Finally, because Rule 56 "requires a scalpel not a butcher knife," a court must only strike the portions of an affidavit that are inadmissible, while crediting the remaining portions. HMC Assets, LLC v. Conley, No. CV 14-10321-MBB, 2016 WL 4443152, at *2 (D. Mass. Aug. 22, 2016) (Bowler, M.J.) (quoting Perez, 247 F.3d at 315).

3

## II.    Background

The following facts are undisputed, unless otherwise noted.  See L.R. 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party.").

In early 2014, McCoy and his wife moved to Catamount Road in Pittsfield.  Shortly after moving to Pittsfield, McCoy purchased a 52-foot trailer and had it delivered to his property.  McCoy used the trailer to store items from his prior residence, as well as items from storage units he had purchased.[4]  He also kept tools and other items in the trailer so that he could perform maintenance or other renovation work on his property.[5]  In August 2015, the Town's then building inspector, Jesse Pacheco, visited McCoy's property to conduct an inspection relating to a building permit that McCoy had obtained for work on his home.  During the inspection, Pacheco noticed the trailer and told McCoy that he needed to obtain a storage container permit[6] from the Town to keep the trailer on his property.

---

[4] McCoy Depo. (doc. no. 17-2), at 25:1-13.

[5] Id.

[6] From 1997 to 2015, the Town's Zoning Ordinance defined "storage container" as "any truck trailer, box trailer, school bus, mobile home or other similar facility used for storage or other purposes."  In 2016, the Town amended this definition in its ordinance to define a "storage container" as "a truck trailer, box trailer, school bus, MANUFACTURED HOUSING unit, or similar mobile container parked continuously for 31 days or more and used principally for storage and not used for any person's residential occupancy or transient lodging."  Ordinance, Article 3.

4

McCoy then applied for and obtained a storage container permit from the Town for the trailer,[7] effective September 1, 2015 (the "2015 Permit").[8]  Article 14 of the Town's Zoning Ordinance, applicable to storage containers, now provides (as it did when McCoy applied for his permit) that regulating and permitting conditions for storage containers are intended "to promote the general welfare by protecting the aesthetics of the town."  Under the ordinance, storage containers must be used only for storage, must meet certain setback requirements, and must not be kept on a lot for longer than 12-months during any 15-month period.  Consistent with this section of the ordinance, the 2015 Permit stated that the trailer was permitted for storage purposes only for a period of one year, must be removed by September 1, 2016, and was not allowed to be kept permanently.

Later in 2015, McCoy rented another storage container to keep on his property, but did not obtain a storage container permit for the rental container.  In January 2016, McCoy allowed his son to paint the side of his trailer with an image that reads "TRUMP! USA" with "2016" in smaller, red paint.  As of January 29, 2016, the trailer appeared as follows in a social media posting:

---

[7] The permit lists the serial number, make, and manufacturer of McCoy's trailer and McCoy does not dispute that these numbers are associated with some other trailer or container.

[8] See 2015 Permit, Exhibit 2 to Marston Affidavit (doc. no. 17-3).



McCoy Depo., Ex. D (doc. no. 17-2).

McCoy continued to use the trailer for storage but also used it to express his support for then-candidate Trump's bid to become President of the United States. In August 2016, the Concord Monitor published an article about the trailer and McCoy's support for candidate

6

Trump, which attracted more attention to the trailer and McCoy's property.  A staff photographer

from the Concord Monitor photographed the trailer as part of the article, as shown in the

following image:



Ex. A to McCoy Depo. (doc. no. 17-2), at 112.  This photograph depicts the expressive content at

issue in this lawsuit.

On September 1, 2016, McCoy's storage container permit for the trailer expired.

Pacheco wrote to McCoy sometime in September or October 2016 and informed him that the

2015 Permit had expired and that the trailer needed to be removed pursuant to Article 14, Section

3 of the ordinance.[9]  The Town also notified McCoy that he needed to remove the unpermitted

rental container, which did not feature any expressive content.  By handwritten letter dated

---

[9] 2016 Notice of Violation, Ex. 3 to Marston Affidavit (doc. no. 17-3).

November 3, 2016, McCoy wrote to Pacheco and requested a six-month extension of the 2015 Permit.[10] In his letter, McCoy wrote that he was seeking a six-month extension "to keep [his] tools and materials inside this trailer while [he] deal[t] with [an] emergency construction situation." McCoy also cited the fact that he was handling the construction work himself and was "physically handicapped," but would "complete this task [of removing the trailer in six months] in order to remain with good standards for this town and it's [sic] rules as a Pittsfield home owner."

On November 15, 2016, the Town's select board met and considered McCoy's request to keep his trailer for an additional six months. On a motion by Selectman Carl Anderson, which passed by unanimous vote, the board granted McCoy's request. At this time, Anderson and other board members were well aware that McCoy was also using the trailer to express his support for President Trump. The board granted McCoy's extension request despite having received at least one anonymous complaint[11] about the trailer and despite the fact that the applicable section of the ordinance prohibits storage containers from remaining on a lot for more than 12 months in any 15-month period.

McCoy continued to keep the trailer on his property into 2017 and in May 2017, Pacheco visited McCoy's property. After this visit, McCoy requested a meeting with the select board. The board discussed McCoy's trailer during its May 23, 2017 meeting, but tabled any decisions about the trailer until McCoy could appear before the board. In the board's minutes from the

---

[10] Nov. 2016 Letter, Ex. F to McCoy Depo. (doc. no. 17-2), at 117.

[11] The Town has no record of who submitted the complaint or the basis for the complaint, and Town witnesses similarly have no recollection of the complainant's identity or complaint's basis.

8

May 23 meeting, there is no discussion of McCoy's trailer being used to express support for President Trump or any other expressive purposes.

The board met with McCoy during its June 13, 2017 meeting. McCoy explained that it was taking him longer than expected to finish the repairs on his home because he was handicapped and doing the work himself. He then requested another extension of the storage container permit for the trailer, this time for one year, and that he planned to "get rid" of the trailer after that. McCoy did not mention the trailer being used as a sign or indicate any interest in applying for a sign permit (a separate Town process) during this meeting. According to minutes from this meeting, the board agreed to "extend the permit for one year." On June 13, 2017, the board approved a new storage container permit for McCoy's trailer.[12]

By the end of July 2017, the side of the trailer that showed support for President Trump had been painted over with a scene of hot air balloons and a waving American flag. The following image from social media shows the side of the trailer at issue as of July 30, 2017:

---

[12] At oral argument, counsel for both parties suggested that the distinction between granting a permit extension or a new permit was one of terminology, not of substance. The court accepts this premise for purposes of this order.



Ex. H to McCoy Depo (doc. no. 17-2), at 119.

For the remainder of 2017 and well into 2018, the trailer continued to display the balloon

scene.  On May 22, 2018, the select board wrote to McCoy to remind him that his storage

container permit for the trailer was expiring in June 2018.  The board also reminded McCoy that

the trailer needed to be removed from his property for at least three months before he could

10

apply for another permit to "bring it back."[13] McCoy responded by letter dated May 29, 2018. In his letter, McCoy referenced the fact that he had two trailers to unload and that he had emptied one, but because he was disabled, the task of emptying the other one was taking longer. McCoy then requested "another permit in order to accomplish this huge task."[14]

The select board met on June 12, 2018 and considered McCoy's request. After some deliberation, the board voted to deny the request. The following day, Town Administrator Cara Marston (then Cara Hayes) wrote McCoy to inform him of the board's decision. In her letter, Marston noted that while the board understood the "personal circumstances that have caused delay, [it] ha[d] to balance the terms of the zoning ordinance with [his] request," and voted to deny it.[15] The board allowed McCoy an additional 30 days to remove the trailer from his property. Thereafter, McCoy sold the trailer to a local business and removed it from his property. The Town did not impose any penalties or take any other enforcement actions against McCoy relating to his trailer, other than to confirm that the trailer was removed following the board's June 2018 decision.

McCoy and the Town had no further engagement regarding the trailer until almost two years later when McCoy sued, alleging that the Town's actions regarding his trailer were discriminatory and motivated by political animus.[16] After answering the complaint, the Town moved for judgment on the pleadings[17] and the court granted the motion in part and denied it in

---

[13] May 2018 Letter, Ex. 8 to Marston Affidavit (doc. no. 17-8), at 32.

[14] McCoy 2018 Letter, Ex. 9 to Marston Affidavit (doc. no. 17-8), at 33.

[15] Marston 2018 Letter, Ex. 12 to Marston Affidavit (doc. no. 17-8), at 47.

[16] See Doc. no. 1.

[17] See Doc. no. 10.

11

part.[18]  The parties exchanged some written discovery, although it appears McCoy has not responded to the Town's interrogatories or requests for production of documents, and deposed some witnesses.  The Town filed its motion for summary judgment on the agreed-upon deadline for such motions.

McCoy appears to argue that disputes of material fact preclude summary judgment for the Town.  First, McCoy alleges that beginning in mid-2016, he did not use the trailer principally for storage; he instead used it principally to display his support for President Trump and secondarily for storage.  McCoy contends that this fact is material because it shows that the Town should not have applied the storage container section of the ordinance against him at all, and that once it did apply that section, its application was unconstitutionally vague.  McCoy next alleges that there are numerous other unpermitted storage containers in Pittsfield that the Town has not taken enforcement action against.  As explained below, neither of these alleged factual disputes, if they can even be characterized as such, are sufficiently genuine or material to warrant denial of the Town's motion.

## III.   **Analysis**

Counts 1 and 2 of McCoy's complaint arise from 42 U.S.C. § 1983.  To prevail on his § 1983 claims, McCoy establish two elements:  "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013).  The Town argues that even viewing the undisputed factual record in

---

[18] See Doc. no. 13.

12

McCoy's favor, McCoy cannot establish, as a matter of law, that the Town's conduct violated his constitutional rights. The court addresses each count in turn.

### A. Count 1 - First Amendment

#### 1. As-applied content or viewpoint discrimination

Because there was some confusion at oral argument about the nature of the claims McCoy is asserting in Count 1, the court summarizes the status of those claims here. In his complaint, McCoy consolidated three types of First Amendment claims into Count 1: content or viewpoint discrimination, overbreadth, and vagueness. After the court's order on the Town's motion for judgment on the pleadings, only the content or viewpoint discrimination and vagueness claims remained. Indeed, the court's order was clear that the content or viewpoint discrimination aspects of Count 1 survived the Town's motion for judgment on the pleadings.[19] Notwithstanding this clarity, neither party separately briefed the content and viewpoint discrimination claim and counsel for the parties admitted at oral argument that they mistakenly believed that the court had dismissed this claim.[20]

---

[19] Doc. no. 13, at 8; 18 ("For the reasons set forth above, Pittsfield's motion for judgment on the pleadings is GRANTED as to Counts 3, 4, and the overbreadth portion of Count 1, and DENIED as to the remainder of Count 1 and all of Count 2. Counts 3 and 4 and the overbreadth portion of Count 1 are dismissed with prejudice.").

[20] McCoy's counsel initially conceded at oral argument that he was no longer pursuing the content or viewpoint discrimination claim and acknowledged that the direct evidence of discrimination, if any, was thin at best. He later argued that he misunderstood the court's judgment on the pleadings order and did not raise content or viewpoint discrimination in his summary judgment briefing because the Town's motion did not explicitly address this claim. This explanation is difficult for the court to accept. McCoy was on notice that the Town was seeking summary judgment on all remaining claims and the Town was clear that part of its argument was that there "is no evidence of discrimination." Doc. 17-1, at 2, 15. Since the beginning, this case has been about McCoy's allegation that the Town ordered him to remove his trailer because the trailer depicted the word "TRUMP" and that this decision was a "content-based and viewpoint-based restriction on speech." Complaint (doc. no. 20) at ¶¶ 20, 29. If, in the face of a summary judgment motion seeking complete dismissal of his lawsuit, McCoy had

13

The Town nevertheless argues that the undisputed facts show that it did not discriminate against McCoy based on the expressive content or political speech on his trailer. The court agrees.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015) (quoting U.S. Const. amend. I). "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." United States v. Stevens, 559 U.S. 460, 468 (2010) (citing Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002)).

The government may restrict speech in nonpublic fora "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" Cornelius v. NAACP Legal Defense and Education Fund, Inc., 473 U.S. 788, 800 (1985) (quoting Perry Educational Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 46 (1983)). "The existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination." Id. at 811.

First Amendment jurisprudence recognizes varying levels of discrimination. Content discrimination occurs whenever a government regulates "particular speech because of the topic discussed or the idea or message expressed." Reed, 135 S.Ct. at 2226-27. Content-based restrictions "are subject to strict scrutiny, which requires the government to demonstrate that the restriction advances a 'compelling interest' and is 'narrowly tailored to achieve that interest.'"

---

evidence to support this aspect of Count 1, he had ample opportunity to present it and failed to do so.

Signs for Jesus v. Town of Pembroke, NH, 977 F.3d 93, 101 (1st Cir. 2020) (quoting Reed, 135 S.Ct. at 2218). Viewpoint discrimination is "an egregious form of content discrimination" in which "the government targets not subject matter, but particular views taken by speakers on a subject." Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829 (1995).

In cases like this one involving political speech, the "First Amendment's guarantee of free speech applies with special vigor" and "affords the broadest protection to such political expression in order to ensure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." See Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 51 (1st Cir. 2011) (quotations omitted).

McCoy neither provides nor points to any evidence to support his claims that the Town enforced the ordinance against him in a discriminatory manner based on its content, or targeted McCoy because the trailer expressed a viewpoint supporting President Trump. In fact, the record evidence suggests the opposite. During the time that the trailer contained the expressive content at issue, the select board granted McCoy two extensions of storage container permit and allowed him to keep the trailer on his property far longer than the express terms of the ordinance contemplated. It was only in June 2018, well after the expressive content was removed from the trailer, that the Town ordered McCoy to remove it and refused to grant him any more permit extensions.[21]

---

[21] McCoy's counsel asserted at oral argument that the back side of the trailer continued to say "Trump," even after the main section facing the road was painted over with the balloon scene, implying that this somehow showed the Town's discriminatory animus. McCoy's claims have never been about the alleged expressive content on the back side of the trailer. Instead, starting with the complaint, McCoy has focused on the larger, 52-foot length, part of the trailer that faced the road and caught the Town's and public's attention. See doc. no. 1, at ¶ 10 ("In July 2016, Mr. and Mrs. McCoy's son, Brian Bales, painted the word 'TRUMP' on the trailer in large white letters (against a green background)."). McCoy has also presented no evidence that anyone from

There is no evidence in the record from which a reasonable jury could conclude that members of the select board or other Town officials at any time held discriminatory animus against McCoy resulting from his use of the trailer to express support for President Trump. Similarly, there is no evidence that Town officials held animus but did not act on it during the time the trailer expressed support for Trump, waited until the trailer no longer showed support for Trump, and *only then* decided to punish McCoy for his prior support for Trump by requiring him to remove the trailer. Nor is there evidence that Town officials harassed McCoy because of the expressive content on his trailer, as he alleged in his complaint.

When pressed about this at his deposition, McCoy answered that Town officials informed him that they had received complaints about his trailer and enforced the ordinance against him as a result of those complaints.[22] Even if the court accepted as true McCoy's allegation that the select board ordered him to remove the trailer in response to anonymous, non-specific complaints, no rational factfinder could conclude that this demonstrates the Town's discriminatory animus. Nor does the Town's decision to enforce its own ordinance in 2018 (when he was plainly in violation of the ordinance) show that it discriminated against McCoy based on the content or viewpoint expressed on the trailer in 2016 and 2017. The Town is entitled to judgment as a matter of law on this aspect of McCoy's First Amendment claim.

---

the Town knew that the back side of the trailer allegedly continued to display his support for President Trump.

[22] McCoy Depo. (doc. no. 17-2), at 98:2-99:19-20, 100:20-101:5.

## 2.   As-applied vagueness

McCoy also argues that the Town violated his free speech rights because the "Ordinance, as applied by the Town, is an unconstitutionally vague restriction on expressive activity."[23]   The vagueness doctrine implicates the Due Process Clause of the Fourteenth Amendment, not purely the First Amendment.  See United States v. Williams, 553 U.S. 285, 304 (2008); Kolender v. Lawson, 461 U.S. 352, 353-54 (1983).  A law is unconstitutionally vague when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  Id.  "The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment."  Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  "Even when expressive rights are involved," however, "perfect clarity and precise guidance have never been required."  Butler v. O'Brien, 663 F.3d 514, 520 (1st Cir. 2011) (quoting Williams, 553 U.S. at 304).

The Town contends that McCoy's vagueness claim is factually unsupportable because he had ample notice of what was required under the ordinance and the Town adequately explained its decisions to him.  McCoy responds by first arguing that the storage container section of the ordinance did not apply to his trailer at all, which shows that the Town's use of that part of the ordinance was standardless to the point of authorizing or encouraging discriminatory enforcement.  He next argues that even if the storage container section applied, the Town's application was vague because the ordinance does not provide a process for seeking permit extensions or explain the grounds for granting an extension.  Lastly, McCoy argues that the Town applied the ordinance so inconsistently that a person of ordinary intelligence would not

---

[23] Doc. no. 1, at ¶ 28.

have fair notice of what is prohibited. The court is not persuaded by any of McCoy's arguments and addresses each one in turn.

Even if the court accepted McCoy's argument that the storage container ordinance did not apply to his trailer (an assertion belied by McCoy's own behavior and other record evidence), it is unclear how that would affect McCoy's vagueness claim. For example, if, as McCoy says, his trailer was not a "storage container" as defined in the ordinance, the select board should have denied his initial application for a storage container permit. Had the board done that, McCoy would have no vagueness claim. McCoy's vagueness claim instead depends on the Town applying the storage container section of the ordinance to his trailer, so his puzzling argument that the "Ordinance should not be at issue in this case" (doc. no. 21, at 12) does not help his cause.

Next, the court rejects McCoy's conclusory argument that the ordinance's lack of language regarding permit extensions somehow proves that the Town applied it in a vague manner. This argument is neither legally nor factually supportable.[24] On the facts, the Town has not conceded, as alleged by McCoy, that it had no authority to grant a permit extension. And legally, the ordinance's silence on this issue does not equate to a prohibition. See Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 93 (1st Cir.2004) ("The mere fact that a regulation requires interpretation does not make it vague."). Instead, the ordinance is clear that the select

---

[24] McCoy also raises this "exceeding authority" argument for the first time in his opposition to the Town's summary judgment motion. It was not plead in his complaint or raised during the parties' briefing of the Town's motion for judgment on the pleadings. In fact, McCoy relied on an entirely different theory to support his vagueness claim at the pleadings stage, and appears to have abandoned this theory now. See doc. no. 12, at 4 ("That application [of the ordinance] is also vague: the Town's action fails to make clear whether all political speech may be prohibited, or only some types of speech or expression. These allegations adequately assert a valid claim for relief.").

18

board "shall have charge of administering and enforcing the zoning ordinance."[25] See also N.H. RSA 41:8 ("The selectmen shall manage the prudential affairs of the town and perform duties by law prescribed."); Segre v. Ring, 103 N.H. 278, 280 (1961) (noting that "wide discretion should be given as to the methods" select boards employ to manage towns).  The authority to administer and enforce the ordinance includes the authority and discretion to decide whether to grant storage container permits and extensions of existing permits.  While the ordinance does not include specific provisions stating so, the select board's general authority encompasses the power to grant or deny permit extensions.  McCoy provides no authority stating otherwise.

Finally, while McCoy's inconsistent application argument has some superficial appeal, it does not create a trial worthy issue over whether the application was unconstitutionally vague.  It is true that the select board allowed McCoy to twice extend his permit, but denied him a third extension.  McCoy is incorrect, however, that "[t]here is nothing different about [his] third extension request."[26]  At least two key factors differentiate McCoy's third extension request from his prior requests.  First, significant time had passed from when McCoy initially received his permit in 2015 to when he made the third extension request in 2018.  That passage of time was undoubtedly a factor in the board's decision not to grant McCoy another permit extension.  Second, at the time the board denied McCoy a third extension, the expressive content on the trailer had been painted over.  This change in circumstances is material because McCoy is alleging that the board's decision was an "unconstitutionally vague restriction on expressive activity" and was so arbitrary or "standardless that it authorizes or encourages seriously

---

[25] Ordinance, Section 7, available at
https://www.pittsfieldnh.gov/sites/g/files/vyhlif3681/f/pages/zoning_ordinance_2021_2.pdf.

[26] Doc. no. 21, at 14.

discriminatory enforcement." Without expressive content on the trailer at the time of the board's 2018 denial, the "vague restriction on expressive activity" and discriminatory enforcement aspects of McCoy's vagueness claim are unsupportable, and McCoy has proffered no other evidence suggesting that the board's 2018 decision restricted his expressive activity.[27]

The ordinance clearly provides that storage containers must be kept on a lot for no more than 12 months during any 15-month period. McCoy's initial storage container permit stated that it could not remain on his property permanently and had to be removed one year from the approved date. After McCoy's initial permit expired after one year and the Town notified him that his trailer could not remain in his yard, McCoy wrote to the select board requesting a six-month extension of his permit. In his letter, McCoy told the board that he needed to keep the trailer longer to store items for emergency construction work that he (a disabled individual) was performing himself, but that he would "have it emptied and removed by the end of April 2017." He also indicated that he wished "to remain with good standards for this town and it's rules as a Pittsfield homeowner." The board granted McCoy's extension request.

In May 2017, McCoy again petitioned the board for a one-year extension of the permit due to unforeseen home repairs and the added time it would take for him to perform the repairs as a disabled person. McCoy also appeared before the board to state his case for an additional extension. At this meeting, when asked by a board member whether the trailer would be gone after another year, McCoy stated that he wanted to get rid of it, but just needed more time. The board granted McCoy's second extension request, this time providing him another year to keep

---

[27] Indeed, in the main case that McCoy relies on in his summary judgment briefing to support his vagueness claim, Buckle Up Festival, LLC v. City of Cincinnati, the city ordinance in question did not affect the plaintiff's First Amendment rights in any way. See Buckle Up Festival, LLC, 336 F. Supp. 3d 882, 886 (S.D. Ohio 2018).

the trailer on his property.  A jury could infer from this evidence that McCoy understood his

obligations under the ordinance and further understood or believed that the select board had the

power to grant exceptions to the rules in the ordinance.  It certainly does not suggest that McCoy

"had no choice but to guess at [the ordinance's] meaning and modes of application."  United

States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003).

After the Town notified McCoy in May 2018 that his permit was set to expire, he again

requested more time to keep the storage container on his property.  At that point, the trailer had

been on McCoy's property since 2014, and nearly three years had passed since the Town first

issued a storage container permit for the trailer in September 2015.  The select board considered

McCoy's request and denied it by unanimous vote.  Following the vote, the board notified

McCoy of its decision in writing and explained its reasoning, noting his "personal circumstances

that have caused the delay," but "balanc[ing] the terms of the zoning ordinance with [his]

request."  Importantly, the decision letter stated that "as you have already been granted a year's

extension beyond the 12 months permitted, they voted not to grant this second extension."

McCoy does not dispute any of these facts.  Under these circumstances, a person of ordinary

intelligence would have understood how the storage container permitting and board deliberation

process worked and, most importantly, would have had fair notice that he had run out of

extensions.  It is unreasonable for McCoy to expect the select board to grant him permit

extensions in perpetuity, which, under his theory, would be the only application of the ordinance

that was not vague.

On this record, no rational fact finder could conclude that the Town's application of the

ordinance was so inconsistent or "shifting" to the point that it was unconstitutionally vague.

Instead, it was a proper exercise of the board's authority and discretion after material changes in

circumstances.  While the court does not suggest that, as a matter of law, laws applied in this manner can never be unconstitutionally vague, the Town's application of the ordinance under the facts and circumstances here does not constitute an unconstitutionally vague restriction on McCoy's expressive activity.  The Town's motion for summary judgment is granted as to Count 1.

### B.       Count 2 - Equal Protection – Class of One Theory

In Count 2, McCoy asserts that the ordinance, as applied by Pittsfield, impermissibly creates two classes of residents – persons with unpermitted storage containers expressing political speech and persons with unpermitted storage containers not expressing political speech – and argues that the Town treats these classes differently in violation of the Constitution.  To prove this "class of one" theory of equal protection liability, McCoy must establish that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).  The Town contends that McCoy cannot prove any of these elements, and the court agrees.

**Similarly situated.**  "An individual is 'similarly situated' to others for equal protection purposes when 'a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" Davis v. Coakley, 802 F.3d 128, 133 (1st Cir. 2015) (quoting Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001)).  At the summary judgment stage, McCoy has both the "burdens of production and persuasion" to identify – "backed by competent evidence" – "instances where persons similarly situated in all relevant respects were treated differently." Cordi-Allen v. Conlon, 494 F.3d 245, 250-51 (1st Cir. 2007) (quoting Buchanan v. Maine, 469 F.3d 158, 178

(1st Cir. 2006)); see also Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 640 (1st Cir. 2013) ("[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action.").

These are "significant" burdens that are "enforced with particular rigor in the land-use context." Cordi-Allen, 494 F.3d at 251. Although "[e]xact correlation" with comparators is neither likely nor necessary, McCoy "must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s]" himself. Id. (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). Said differently, McCoy "must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison" inapt. Id. (citing Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)). Summary judgment is therefore appropriate on class of one claims "where it is clear that no reasonable jury could find the similarly situated" element met, even in cases where, as here, "the plaintiffs have presented copious evidence concerning a multiplicity of possible comparisons." Id. at 252.

The parties disagree on the relevant comparison points. McCoy relies on the court's order on the Town's motion for judgment on the pleadings, where it stated that "the relevant comparison points are property owners in Pittsfield with unpermitted storage containers on their properties, including trailers, that do not express political speech."[28] The Town argues that there are several additional comparison points that the court must consider and that McCoy cannot

---

[28] McCoy's identification of comparators for his equal protection claim again demonstrates the illogicality of his argument that the storage container ordinance does not apply at all to his trailer. Because if the storage container ordinance does not apply, the relevant comparators change and McCoy's declaration and the accompanying photographs of unpermitted trailers are irrelevant.

establish.  Even assuming that McCoy's characterization of the relevant comparators is correct, he has not met his burden of providing competent evidence of such comparators or proving that they were similarly situated to him in all relevant respects.

As evidence of the alleged comparators, McCoy submitted a declaration with his objection to the Town's summary judgment motion that attached several exhibits containing photographs of alleged unpermitted storage containers.  The Town moves to strike this evidence because McCoy did not disclose this information as part of his Rule 26 initial disclosures or in response to repeated formal and informal requests made by Town counsel during discovery.  To ensure the court is ruling on a complete summary judgment record, the court will consider McCoy's declaration and attachments as part of this motion.  The Town's concerns about McCoy's belated disclosure of this information and continued, unexplained failure to respond to interrogatories and document requests are valid and well taken, however, and nothing in this ruling should be construed as endorsing this type of discovery conduct.[29]

The Town argues that the relevant comparators are persons with permitted storage containers that expired, received extensions of the permit, and then were asked to remove the containers, similar to McCoy's experience with the Town.  It also asserts that several other factors make up the relevant comparison points.  McCoy rejoins that he has identified numerous other residents with unpermitted storage containers that have escaped enforcement action from

---

[29] At oral argument, McCoy's counsel tried to justify this discovery conduct by arguing that there was no real harm from his belated disclosures because the Town knew all along that these other unpermitted storage containers existed.  Whether a litigant knew or should have known about a certain witness or item of evidence (absent timely, complete disclosures of the information during the litigation) does not excuse its opponent from meeting his fundamental discovery obligations under Rule 26.  And even if the court accepted McCoy's premise about lack of harm, McCoy has not shown that the prior information the Town allegedly had about unpermitted storage containers was the same information contained in his declaration and the attached photographs.

the Town and that is sufficient to meet his burden of showing similarly situated landowners. The court disagrees.

McCoy's evidentiary proffer is too conclusory or speculative to satisfy his burden of producing "competent evidence" of relevant comparators at the summary judgment stage. See DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (the nonmoving party "must demonstrate, through submissions of evidentiary quality, that a trialworthy issue persists. Factual specificity is required; a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden") (quotations omitted). In general, McCoy's declaration and photographs provide incomplete or inadequate information to show that these other trailers were similarly situated to McCoy. McCoy has provided photographs, addresses, and conclusory allegations that these property owners did not have permits[30] for the trailers and the Town did not require them to remove them. This "oversimplifies the analysis and fails to account for the fact that '[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment.'" Cordi-Allen, 494 F.3d at 252 (quoting Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 681 (7th Cir. 2005)). McCoy's evidence is also deficient in several specific, material respects.

First, the court cannot decipher from this evidence which of the alleged comparators may be "grandfathered" in; that is, they installed the storage containers before there was an ordinance requiring a storage container permit. In fact, the ordinance was not adopted until 1988, the storage container article was not added until 1997, and the storage container was amended in

---

[30] In some instances, the property owners did have permits and received those permits after the events at issue in this case, weakening their status as potential comparators.

2016.  Without this information, a reasonable jury cannot determine whether the alleged

comparators are similar in relevant respects.  See Cordi-Allen, 494 F.3d at 253 ("In the land-use

context, timing is critical and, thus, can supply an important basis for differential treatment.

Since zoning bylaws, environmental standards, and licensing criteria may change over time,

courts must be sensitive to the possibility that differential treatment — especially differential

treatment following a time lag — may indicate a change in policy rather than an intent to

discriminate").

     Second, McCoy's declaration is missing other information about the trailers that would

help a fact finder determine whether they are truly similarly situated.  For example, McCoy does

not explain:  (1) whether the trailers have been parked in the same location continuously for

more than 31 days (many have wheels or appear mobile); (2) whether the trailers were being

used for residential occupancy or transient lodging (which would exclude them from the

definition of "storage container" in the ordinance); (3) whether the storage containers were

unpermitted during the same period that McCoy kept the trailer on his property; (4) whether any

of these landowners received permit extensions from the select board; or (5) whether the Town

took any enforcement action against these other landowners.[31]

     McCoy must do "more than 'point to nearby parcels in a vacuum and leav[e] it to the

municipality to disprove conclusory allegations that the owners of those parcels are similarly

situated,'" albeit by the slimmest of margins.  Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st

---

[31] It is undisputed that the Town has taken similar enforcement action against other landowners
with unpermitted storage containers on their property.  That alone may be enough to defeat a
"class of one" equal protection claim because, "[b]y definition, a class of one is not a class of
many."  Cordi-Allen, 494 F.3d at 254; see also Campbell v. Rainbow City, Ala., 434 F.3d 1306,
1317 (11th Cir. 2006) (explaining that a class of one suit cannot be maintained when similar
burdens have been imposed on other individuals).

Cir. 2013) (quoting Cordi-Allen, 494 F.3d at 251).  Simply put, he has failed to marshal evidence in support of his equal protection claim that is "sufficient to establish factual as well as regulatory similarity."  Cordi-Allen, 494 F.3d at 251.  For this reason alone, the Town is entitled to summary judgment on McCoy's equal protection claim.

     **Discriminatory enforcement against McCoy**.  Even assuming for purposes of this order that McCoy has identified a group of similarly situated comparators, the summary judgment record is devoid of any evidence that the Town selectively enforced the ordinance against McCoy because of his trailer's expressive content.

     To maintain his equal protection claim, McCoy must also show that there is a trial worthy issue as to whether the Town intentionally treated him differently than other similarly situated landowners.  See Vill. of Willowbrook, 528 U.S. at 564 ("The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.") (emphasis added) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)); see also Barrington Cove, 246 F.3d at 7 ("In order to establish its [equal protection] claim, however, Barrington needed to allege facts indicating that, 'compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'") (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir.1995)).

     While McCoy is correct that direct evidence of discriminatory intent is rare, here, even the circumstantial evidence suggests that the Town acted with no discriminatory intent.  For example, during the time period when McCoy used the trailer to express his support for President

Trump, the select board allowed him to keep the trailer on his property for far longer than what the ordinance allowed.  In fact, the undisputed evidence shows that the board went out of its way to accommodate McCoy during this time.  By the time the Town ordered McCoy to remove the trailer in June 2018, the expressive content at issue had been removed for almost a year.  The Town also presented evidence with its summary judgment motion – which McCoy does not meaningfully contest – that it took similar enforcement action against other landowners with unpermitted storage containers.  This further refutes the notion that McCoy was singled out for enforcement.

To show discriminatory enforcement, McCoy resorts back to his argument that the select board had no authority under the ordinance to grant extensions to storage container permits. Even if the court accepted McCoy's argument that the board lacked authority or acted unlawfully in granting permit extensions, this does not change the result.  "[T]he mere fact that [the Town] may have violated or abused federal or state regulatory regimes" in administering the ordinance "has no direct bearing on whether [the Town] violated [McCoy's] equal protection rights." Barrington Cove, 246 F.3d at 10-11.

**Rational basis.**  Finally, McCoy offers no evidence to show that the Town did not have a rational basis for ordering him to remove the trailer in June 2018.  By that time, the Town had allowed McCoy to keep the trailer on his property unpermitted from early 2014 to September 2015, afforded McCoy an extension of his original storage container permit, and granted him a new permit.  The trailer remained on McCoy's property for over four years when the ordinance only allowed storage containers for 12 months.  McCoy had promised the select board multiple times that he was in the process of removing items from his trailer and would have the trailer removed from his property.  Yet he continued to keep the trailer and store items inside the trailer

and continued to ask for extensions from the select board, all in recognition that he had no right to continue keeping the trailer on his property indefinitely. By June 2018, the select board had run out of patience with McCoy and declined to allow him to keep the trailer on his property. This was a wholly rational decision.

More importantly, McCoy has failed to adduce evidence of an arbitrary or irrational motive for Town's order to remove the trailer. And for good reason. By the time the Town ordered him to remove the trailer, it no longer contained expressive content and there is no evidence that Town officials held arbitrary or irrational motives prior to its June 2018 removal order, so no rational fact finder could infer that the Town's actions were motivated by political animus against McCoy. See Wojcik v. Massachusetts State Lottery Com'n., 300 F.3d 92, 104 (1st Cir. 2002) ("An equal protection claim will only succeed if the decision to treat an individual differently than those similarly situated is wholly 'arbitrary or irrational.'") (quoting Me. Cent. R.R. Co. v. Bhd. of Maint. Way Employees, 813 F.2d 484, 492 (1st Cir. 1987)).

### C. Ripeness or failure to exhaust administrative remedies

The Town also argues that it is entitled to summary judgment on McCoy's claims because he failed to exhaust his remedies at the Town level before filing suit. Specifically, the Town contends that McCoy should have sought a variance before the Town's Zoning Board of Adjustment or appealed the select board's 2018 decision ordering him to remove the trailer, and because he failed to do so, his claims in this case are not ripe. McCoy responds, in part, that the Town should be municipally estopped from arguing that McCoy failed to exhaust his administrative remedies because the Town's own conduct dissuaded him from doing so. The court need not reach these questions as a result of the above rulings in the Town's favor on the merits.

## IV.  **Conclusion**

For the reasons set forth above, the Town's motion for summary judgment[32] is

GRANTED and its motion to strike[33]  is DENIED.  The clerk shall enter judgment accordingly

and close the case.

       **SO ORDERED.**

                       Joseph N. Laplante
                       United States District Judge

Dated: October 6, 2021
cc:    Robert M. Fojo, Esq.
        Robert Joseph Dietel, Esq.

---

[32] Doc. no. 17.

[33] Doc. no. 23.

30

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Joe McCoy

v.

Case No. 20-cv-362-JL

Town of Pittsfield, NH

JUDGMENT

In accordance with the following Orders by District Judge Joseph
N. Laplante, dated December 10, 2020 and October 6, 2021, judgment is
hereby entered.

The prevailing party may recover costs consistent with Fed. R.
Civ. P. 54(d) and 28 U.S.C. § 1920.

By the Court:

/s/ Daniel J. Lynch
Daniel J. Lynch
Clerk of Court

Date: October 6, 2021

cc:  Counsel of Record