No. 21-1907

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT
_____

### JOSEPH MCCOY

*Plaintiff – Appellant*

v.

### TOWN OF PITTSFIELD

*Defendant – Appellee*

On Appeal from the U.S. District Court for the District of New Hampshire 1:20-cv-00362-JL (Hon. Joseph N. Laplante)

**APPELANT'S BRIEF IN REPLY TO APPELLEE'S BRIEF**

Filed by:

/s/ Leif A. Becker
Leif A. Becker, Esq.
BECKER LEGAL, PLLC
Bar. No. 1205074
Email: Leif@beckerlegalnh.com
Phone: 603-259-6726
1465 Woodbury Ave, PMB 245
Portsmouth, NH 03801

## **Table of Contents**

Table of authorities:  pg. 4

Concise statement of McCoy's complaint:  pg. 5

Defendants' brief statement, page 4, paragraph 3, in part saying, "Shortly thereafter, sometime in July of 2017, McCoy's trailer no longer expressed political speech.":  pg. 6

McCoy reply:  pg. 6

Defendants' brief statement, pg. 6, para. 1, agreeing with the district court's dismissal of McCoy's as-applied vagueness claim:  pg. 17

McCoy reply:  pg. 17

Defendants' brief statement, pg. 11, para. 2, saying, "The district correctly observed that McCoy's allegation that the Town 'conceded' it had no authority to grant a permit extension was not supported by the facts. Id.": pg. 21

McCoy reply:  pg. 21

Defendants' brief statement, pg. 12, footnote 4, objecting to McCoy's citing Dillon's Rule:  pg. 25

McCoy reply:  pg. 25

Defendants' brief statement, pg. 16, para. 3, objecting to McCoy's evidence of alleged comparators relative to the board of selectmen's storage-container enforcement against McCoy's truck trailer:  pg. 27

McCoy reply:  pg. 27

Defendants' brief statement, pg. 18, para. 2, in part saying, "[b]y the time the Town ordered McCoy to remove the trailer in June 2018, the expressive content at issue had been removed for almost a year.":  pg. 31

McCoy reply:  pg. 31

Table of Contents (continued)

Defendants' brief statement, pg. 19, para. 2, saying, "On appeal, McCoy contends for the first time that the district court erred when it ruled on his content and viewpoint discrimination claim in violation of Fed. R. Civ. 56(f).": pg. 32

McCoy reply:  pg. 32

Table of Authorities

United States Constitution:

First Amendment:  pg. 5, 8, 11

Fourth Amendment:  pg. 14


New Hampshire Constitution:

Part 1, article 22:  pg. 11


Cases:

*Dumais v. Somersworth*, 101 N.H. 111 (1957):  pg. 11

*Girard v. Town of Allenstown*, 121 N.H. 268 (1981):  pg. 25

*New London v. Leskiewicz*, 110 N.H. 462 (1970):  pg. 22, 30

*Piper v. Meredith*, 110 N.H. 291 (1970):  pg. 25

Pittsfield v. Hetu, Merrimack County Superior Court, case no. 217-2019-CV-00663:  pg. 14


Town of Pittsfield Zoning Ordinance:

Article 2, Interpretation Rules and Definitions, section 3, Definitions, STORAGE CONTAINER:  pg. 9

Article 2, Interpretation Rules and Definitions, section 3, Definitions, VARIANCE:  pg. 22

Article 9, Signs, section 4, Permitting Conditions for Outdoor Signs:  pg. 10, 48

Article 14, Storage Containers, section 2, Purpose:  pg. 9

## Concise statement of McCoy's complaint:

The small of McCoy's complaint is that his truck trailer was a huge sign for Donald Trump *by law* and was not a "storage container" under local zoning *by law*; that the removal of this huge Trump sign violated McCoy's First Amendment right; and that the defendant Pittsfield Board of Selectmen condemned his truck trailer in May and June 2018—*shortly before the federal midterm elections in November 2018*—because the truck trailer was a huge sign for Donald Trump and not because the board was dispassionately and methodically enforcing storage-container regulations against McCoy while the board was ignoring almost all of the more than 100 other property owners with trailers or similar objects.

The district court erred in summarily dismissing McCoy's complaint because the district court had abundant evidence in facts and law supporting McCoy's complaint.

This reply brief presents some of the more important of those facts and law supporting McCoy's complaint by replying to specific statements in the defendant Pittsfield Board of Selectmen's brief.

**Defendants' brief statement, page 4, paragraph 3:**

> "Shortly thereafter, sometime in July of 2017, McCoy's trailer no longer expressed political speech. Id. The phrase 'TRUMP! USA' and '2016' was painted over with a hot air balloon scene. Id.[2]"

Defendants' footnote 2 for above says,

> "2 At the district court's hearing on the Town's motion for summary judgment, McCoy's counsel, for the first time, asserted that the back side of the trailer continued to say 'Trump.' See App. 496 n. 21. As the district court correctly pointed out in its order, 'McCoy's claims have <u>never</u> been about the alleged expressive content on the back side of the trailer.' Id."

**McCoy reply:**

The statements of the defendants and the district court are false.

McCoy's truck trailer continued to express political speech supporting

Trump from July 2016 until and after the truck trailer left McCoy's property

in July 2018, and McCoy testified much earlier than the district court's

summary-judgment hearing on September 17, 2021, that the back end of the

truck trailer continued to say "Trump".  McCoy testified at deposition on

May 7, 2021, that "Trump make America great again" ... "stayed on there

[on the truck trailer's back doors], never changed to the day it was removed

from my [McCoy's] property"; that the back doors were visible to

southbound traffic on Catamount Road, a.k.a. NH Route 107, "coming from

Catamount going towards Northwood"; and that "I [McCoy] have got

pictures of the day it left."  The defendants' attorney, Robert J. Dietel,

requested the pictures showing the truck trailer's back end; McCoy agreed to

provide the pictures; and Mr. Dietel does not complain that he did not

receive the pictures.  Specifically, McCoy testified at deposition as follows:

```
16· · · ·Q.· ·So you didn't hear that it was no longer a
17· Trump sign?
18· · · ·A.· ·Oh, there's "Trump" on it.
19· · · ·Q.· ·Where?
20· · · ·A.· ·Both the back doors from top to bottom,
21· right and left:· "Trump make America great again."
22· It was -- stayed on there, never changed to the day
23· it was removed from my property.
·1· · · ·Q.· ·Okay.
·2· · · ·A.· ·And you could see that when you come up
·3· 107, Catamount Road.· That's the only thing you
·4· could see coming from town out towards my house:
·5· "Trump make America great again."
·6· · · ·Q.· ·Going which direction, Mr. McCoy?
·7· · · ·A.· ·Excuse me?
·8· · · ·Q.· ·Can you see it going from both directions?
·9· · · ·A.· ·No.· It's only on the back doors.· And you
10· would see that coming from Catamount going towards
11· Northwood.
12· · · ·Q.· ·Do you have any pictures, Mr. McCoy, from
13· after July 2017 showing that?
14· · · ·A.· ·Yeah.· I have got -- I have got pictures
15· of the day it left.
```

```
16· · · ·Q.· ·Okay.· You can send those to me.· That
17· would be appreciated.
18· · · ·A.· ·I will send them to my lawyer.
```
(McCoy deposition pages 85 and 86; appendix pages 139 and 140.)

The small of McCoy's complaint is that his truck trailer was a huge sign for Donald Trump *by law* and was not a "storage container" under local zoning *by law*; that the removal of this huge Trump sign violated McCoy's First Amendment right; and that the defendant Pittsfield Board of Selectmen condemned his truck trailer in May and June 2018—*shortly before the federal midterm elections in November 2018*—because the truck trailer was a huge sign for Donald Trump and not because the board was dispassionately and methodically enforcing storage-container regulations against McCoy while the board was ignoring almost all of the more than 100 other property owners with trailers or similar objects.

McCoy's truck trailer was a huge sign for Donald Trump by law and was not a "storage container" under local zoning by law because (1) the truck trailer's long side facing NH Route 107 was painted as a sign first with "TRUMP USA 2016" in July 2016 and then later with an American flag, a balloon rally, and the word "Welcome" until and after the truck trailer left McCoy's property;

(2) the truck trailer's back end facing NH Route 107 southbound was painted as a sign with "TRUMP MAKE AMERICA GREAT AGAIN!" from July 2016 until and after the truck trailer left McCoy's property;

(3) these two sides of the truck trailer were its only sides visible to the public;

(4) therefore, the two signs painted on the truck trailer's two sides visible to the public completely defined the truck trailer's public aesthetics;

(5) the only purpose of the storage-container regulation is "to promote the general welfare by protecting the aesthetics of the town" (Marston affidavit, exhibit 1, Pittsfield Zoning Ordinance, article 14, Storage Containers, section 2, Purpose; appendix page 198);

(6) therefore, the two signs painted on the truck trailer's two sides visible to the public were the truck trailer's only use of importance under the zoning ordinance;

(7) therefore, the two signs painted on the truck trailer's two sides visible to the public were *by law* the truck trailer's principal use under the zoning ordinance, and storage, if any, was *by law* subordinate to the two signs;

(8) therefore, the truck trailer did not meet the definition of "storage container" in the Pittsfield Zoning Ordinance 2016 and later, article 2, Interpretation Rules and Definitions, section 3, Definitions:

> **STORAGE CONTAINER:** "STORAGE CONTAINER" means a truck trailer, box trailer, school bus, MANUFACTURED HOUSING

unit, or similar mobile container parked continuously for 31 days or more and ***used principally for storage*** and not used for any person's residential occupancy or transient lodging.  (See article 14 for STORAGE CONTAINER permitting conditions.)

(Marston affidavit, page 1, paragraph 4; appendix page 176; emphasis added on "***used principally for storage***".)  Thus McCoy's truck trailer was not a "storage container" under the Pittsfield Zoning Ordinance, but McCoy's truck trailer was a non-illuminated outdoor sign, and the Pittsfield Zoning Ordinance, article 9, Signs, section 4, Permitting Conditions for Outdoor Signs, permits all non-illuminated outdoor signs by right and requires no written permit.  (Marston affidavit, exhibit 1, Pittsfield Zoning Ordinance, article 9, section 4; appendix page 197.)

Town administrator Cara Marston testified that "Per the Town's zoning ordinance, signs may be permitted under Article 9 *upon application by a Town resident.  See* Exhibit 1 at Article 9" (Marston affidavit, page 4, paragraph 17; appendix page 179; emphasis added to "*upon application by a Town resident*"), but Cara Marston knew or should have known that her testimony was erroneous because article 9, section 4, Permitting Conditions for Outdoor Signs, says absolutely nothing about applying for or requiring a written permit.  Article 9, section 4, states only the conditions upon which the zoning ordinance itself permits outdoor signs.

If the defendant board of selectmen had respected McCoy's right to his sign under both the Pittsfield Zoning Ordinance; the NH Constitution, part 1, article 22; and the U.S. Constitution, First Amendment, then the board would have *at most* ordered McCoy to stop the storage use but would have let McCoy keep his truck trailer purely as a sign, as required by New Hampshire case law, *Dumais v. Somersworth*, 101 N.H. 111, 113-114 (1957). In *Dumais v. Somersworth*, the NH Supreme Court ruled that the local board of adjustment had correctly found that the local zoning ordinance prohibited "the construction of a three-car, 36'x 30' garage unattached to a dwelling to be used for the storage of trucks and/or private cars" but that the board of adjustment had erred in ordering the garage's building permit revoked because "by ordering revocation of the permit issued to the plaintiff, the board denied his right to build and use the garage for the storage of 'private cars.' This we believe was error. Such a use made as an incident of a permitted residential use is neither expressly nor impliedly forbidden by the ordinance. If the plaintiff chooses to make this use, he should neither be forbidden to do so, nor required to raze a structure erected in reliance upon a permit in part lawfully granted." In identical manner, by ordering the removal of McCoy's truck trailer, the Pittsfield Board of Selectmen denied McCoy his right to use his truck trailer as a sign, which the Pittsfield Zoning Ordinance permits by

right.  But the defendant Pittsfield Board of Selectmen did not care about McCoy's rights to his sign under the local zoning ordinance, the state case law, the state constitution, or the federal constitution.  To the contrary, the board wanted McCoy's Trump sign gone.

The board of selectmen's minutes of May 23, 2017, and selectman Carl Anderson's letter to McCoy in January 2019 both agree that unpermitted trailers or storage containers are "all over the place", and McCoy photographed more than 100 trailers or similar objects.  (Appendix pages 463, 470, 422, and 441.) Town administrator Cara Marston's affidavit cited enforcement of storage-container regulations against only four property owners, including McCoy, while the board ignored the more than 100 other property owners with trailers or similar objects.  (Marston affidavit, page 4, paragraph 21, and page 6, paragraph 29; appendix pages 179 and 181.)  These four enforcement actions were obviously done to hide the board's selective enforcement against McCoy, because the town enforced the storage-container regulations against *no one* until *after* McCoy had painted his truck trailer as a Trump sign and until *after* McCoy had complained to the board of selectmen on May 23, 2017, that the town was ignoring other trailers.  (Board of selectmen minutes, May 23, 2017, page 8; appendix page 462:  "The other concern he [Joe McCoy] brought forward is that other people in town have trailers and questioned

why he has to move his is other people are not required to.")  The violation

notices that Cara Marston cited were to the following people and were on the

following dates:

| **Name** | **Date of Notice** | **Appendix page** |
|---|---|---|
| Joe McCoy (first notice) (Marston affidavit exhibit 3) | Undated | 200 |
| Joe McCoy (second notice) (Marston affidavit exhibit 8) | May 22, 2018 | 207 |
| Joe McCoy (final notice) (Marston affidavit exhibit 12) | June 13, 2018 | 222 |
| Diane Dipoto (Marston affidavit exhibit 11) | June 12, 2018 | 220 |
| James and Cynthia Hetu (first notice) (Marston affidavit exhibit 13) | December 4, 2018 | 223, 225 |
| James and Cynthia Hetu (second notice) (Marston affidavit exhibit 13) | January 18, 2019 | 223, 226 |

Sanel Realty                           August 13, 2019            227

(Marston affidavit exhibit 14)


As the above table shows, the town issued *no* storage-container violation

notices to *anyone* from *1997*, when the town adopted the storage-container

regulations, until almost when the board condemned McCoy's trailer on

June 13, 2018.

One of the four enforcement targets other than McCoy—James and

Cynthia Hetu—denied violating the storage-container regulations. In court

filings that the Marston affidavit omitted, the Hetus said that Pittsfield's

enforcement against them violated the federal Fourth Amendment because their

trailer was "enclosed" and because the violation decision coerced them to

disclose what was inside their enclosed trailer, which, they said, was "empty."

(Marston affidavit, page 6, paragraph 29, B; appendix page 181; Marston

affidavit, exhibit 13; appendix page 223; and Merrimack County Superior

Court, case no. 217-2019-CV-00663, Hetus' Answer of the Defendants,

statements 11-14.) The Hetus' answer requested the following relief:

> A. Find that the town's complaint does not allege that the defendants'
>
>    truck trailer is or ever has been "used principally for storage", as
>
>    required to meet the zoning definition of "storage container".

B. Find that the town has not shown that the defendants' truck trailer is or ever has been a "storage container" in violation of the Town of Pittsfield Zoning Ordinance.

C. Deny the town's complaint.

Meanwhile, certain other people kept unpermitted trailers with impunity. For example:

- Defendant and selectman Carl Anderson had two trailers hidden on his property at 324 Barnstead Road and did not have permits for them. (Declaration of Joseph McCoy, statement 6, and exhibit 1, page 1; appendix pages 420 and 422.)

- Carole Dodge had at least two unpermitted trailers on her property at 80 Will Smith Road. (Declaration of Joseph McCoy, statement 11, and exhibit 1, pages 17 and 18; appendix pages 421, 438, and 439.) Carole Dodge was appointed full member of the zoning board of adjustment immediately after she lost as the incumbent to James Hetu in the March 2016 town election.

- Brandon Guida had an unpermitted 40-foot trailer on his property at 187 Barnstead Road. He had a permit for it from January 29, 2020, to January 29, 2021, but the permit expired. (Declaration of Joseph McCoy, statement 12, and exhibit 1, page 19; appendix pages 421 and 440.)

Brandon Guida is the son-in-law of long time former selectman Fred Hast and long time former town clerk/tax collector Elizabeth Hast.

Pittsfield clearly enforces the storage-container regulations *very* selectively.

Of course, many of the more than 100 people with unpermitted trailers that the board of selectmen ignored had no special political connections. But McCoy's truck trailer attracted the selectmen's attention because it, unlike the other trailers, was a huge Trump sign, and despite the selectmen's false claim otherwise, *it was still a huge Trump sign when the selectmen ordered it removed*. (McCoy deposition pages 85 and 86; appendix pages 139 and 140; as cited above at pages 7# and 8#.)

**Defendants' brief statement, page 6, paragraph 1:**

"The district court was correct to grant summary judgment to the Town on McCoy's as-applied vagueness claim. See <u>generally,</u> id. at 498- 503. The undisputed facts show McCoy understood the content of the zoning ordinance; McCoy knew his conduct fell within the ordinance's proscriptions; and McCoy recognized the reasons why the Town ordered him to remove his trailer in 2018. Id. at 501-02. Consequently, the district court did not err when it determined the Town was entitled to judgment as a matter of law because a person of reasonable intelligence had fair notice of what was prohibited under the ordinance and the Town's application of the ordinance was not so standardless that it authorized some form of discriminatory enforcement. Id. at 499."

**McCoy reply:**

In plain English, the defendants argue here that because that part of the zoning ordinance regulating storage containers *as written* is not vague, the board of selectmen's *application* of that part of the zoning ordinance regulating storage containers was not vague.  The defendants' argument is false because the board of selectmen's application of the storage-container regulations includes the board of selectmen's granting time-of-use extensions (a.k.a. permit extensions) that the storage-container regulations prohibit.  The storage-container regulations prohibit time-of-use (permit) extensions because, as the defendants' own brief explains, "Under the Town's storage container permit ordinance (the "ordinance"), a storage container may not be kept on a lot for longer than 12-months during any 15-

month period ... See Appellant's Brief at 3-4."  (Defendant's brief, page 3,

paragraph 1.)

Town administrator Cara Marston testified at deposition that the board

of selectmen's practice of granting or denying time-of-use (permit)

extensions came from "no defined process", which makes the board of

selectmen's practice of granting or denying extensions vague such that no

person of whatever intelligence, reasonable or higher, could know what

conditions would entitle an applicant to an extension or what the extension

duration would be.  Specifically, Cara Marston testified at deposition as

follows:

```
22· · Q.· ·So you would agree then that article 14 does not provide
23· · · · ·a resident with -- sorry.· Let me strike that.
·1· · · · · · You would agree with me that article 14 does not
·2· · · · ·provide the Town with the authority to extend a permit
·3· · · · ·for a storage container?
·4· · · · · · · ·MR. DIETEL:· Objection as to form.· You can
·5· · · · ·answer that, Cara.
·6· · · · · · · ·THE WITNESS:· There's no provision for a
·7· · · · ·process.
·8· · · · ·BY MR. FOJO:
·9· · · Q.· ·What do you mean by that?
10· · A.· ·There's no provision in any of the -- any of this article
11· · · · ·detailing a process for asking for an extension.
12· · Q.· ·Does that mean that a resident cannot ask for an
```

```
13· · · ·extension?

14· A.· ·No.· It means that they can ask for an extension.

15· · · ·There's just no defined process for that extension.

16· Q.· ·Which section here states that a resident can ask for an

17· · · ·extension?

18· A.· ·There is no specific section that states that they can

19· · · ·ask for that.

20· Q.· ·Okay.· Is there a section that says that the Town can

21· · · ·grant an extension?

22· A.· ·No.
```

(Marston deposition pages 18 and 19; appendix page 400; emphasis added.)

In fact, Cara Marston herself effectively admitted that the board of
selectmen's extension-granting practice was vague beyond her understanding
because she testified that she did not know why the board of selectmen had
granted McCoy an extension other than that the selectmen "were trying to do
their best" ... "regardless of there being no specific provision granting them the
ability to do so [to grant an extension], I guess.":

```
·9· Q.· ·Okay.· So given your testimony that article 14 -- that

10· · · ·there's no section in article 14 that says the Town can

11· · · ·grant an extension, why did the Town then communicate to

12· · · ·Mr. McCoy that it was granting his request for an

13· · · ·extension?

14· A.· ·As administrators of the zoning ordinance, they responded

15· · · ·to a request from a resident asking for an extension.

16· Q.· ·I understand what they did, but why did it grant an
```

17 · · · · ·***extension if article 14 contains no section or provision***

18 · · · · ·***stating that the Town can grant an extension?***

19 · · A. · ·I don't have -- ***I guess I honestly don't know how to***

20 · · · · ·***answer that*** other than they were trying to help a

21 · · · · ·resident who was asking for an extension on the storage

22 · · · · ·container. · They read his request and wanted to work with

23 · · · · ·him, ***regardless of there being no specific provision***

·1 · · · · ·***granting them the ability to do so, I guess***. · The zoning

·2 · · · · ·ordinance is a document of the Town, and ***they were trying***

·3 · · · · ·***to do their best***.

(Marston deposition pages 20 and 21; appendix page 401; emphasis added.)

Finally, McCoy held in his original complaint, and McCoy continues to
hold, that his truck trailer's principal use was as a political sign (McCoy
complaint page 3, paragraphs 13 and 14; appendix page 3; and pages 8# and 9#
above); that the truck trailer was therefore not a "storage container" as defined in
the zoning ordinance (McCoy complaint pages 3 and 4, paragraphs 15 through
18; appendix pages 3 and 4; and page 9# above); and that the truck trailer was
therefore not subject to the zoning proscriptions on storage containers.

**Defendants' brief statement, page 11, paragraph 2:**

"The district correctly observed that McCoy's allegation that the Town 'conceded' it had no authority to grant a permit extension was not supported by the facts. Id."

**McCoy reply:**

The statements of the defendants and the district court are false.

Town administrator Cara Marston testified at deposition that "there [is] no specific provision granting them [the board of selectmen] the ability to do so [to grant a storage container time-of-use (permit) extension]":

```
19· · A.· ·I don't have -- I guess I honestly don't know how to

20· · · · ·answer that other than they were trying to help a

21· · · · ·resident who was asking for an extension on the storage

22· · · · ·container.· They read his request and wanted to work with

23· · · · ·him, regardless of there being no specific provision

·1· · · · ·granting them the ability to do so, I guess.· The zoning
```

(Marston deposition, pages 20 and 21; appendix page 401; emphasis added.)

There is no meaningful difference between "ability" and "authority".

Furthermore, Cara Marston testified explicitly and specifically that the board of selectmen had no authority to grant a zoning variance:

```
·8· · Q.· ·Okay.· Did the board of selectmen have the authority to

·9· · · · ·grant the zoning variance?

10· · A.· ·No.
```

(Marston deposition, page 21; appendix page 401.)

Cara Marston also testified that a storage container time-of-use (permit)

extension is not a "zoning variance" because, she testified, "A variance is a

specific process with an application to the zoning board of adjustment":

```
·4· · Q.· ·Okay.· I mean, could this be -- could this instead be
·5· · · · ·called a zoning variance?
·6· · A.· ·No.· A variance is a specific process with an application
·7· · · · ·to the zoning board of adjustment.
·8· · Q.· ·Okay.· Did the board of selectmen have the authority to
·9· · · · ·grant the zoning variance?
10· · A.· ·No.
```

(Marston deposition, page 21; appendix page 401.)

but Cara Marston knew or should have known that her testimony was

erroneous because both the Pittsfield Zoning Ordinance and New Hampshire

Supreme Court case law define a zoning variance as permission for a use

that the zoning ordinance otherwise prohibits, *regardless of what approving*

*authority grants the permission*.  The Pittsfield Zoning Ordinance 2016 and

later, article 2, Interpretation Rules and Definitions, section 3, Definitions,

defines "variance" as follows:

> **VARIANCE:**  "VARIANCE" means an exemption from terms of the
> zoning ordinance that an approving authority grants in a specific case
> except that "VARIANCE" excludes the following exemptions:
> [special exceptions and grandfathering].

(Marston affidavit, page 1, paragraph 4; appendix page 176.)  *New London*

*v. Leskiewicz*, 110 N.H. 462, 466 (1970), defines "variance" as follows:

"A variance has been defined as authority granted to the owner to use his property in a manner otherwise violative of the zoning regulations."

The zoning ordinance prohibits storage container time-of-use (permit) extensions because, as the defendants' own brief explains, "Under the Town's storage container permit ordinance (the "ordinance"), a storage container may not be kept on a lot for longer than 12-months during any 15-month period ... See Appellant's Brief at 3-4."  Therefore, a storage container time-of-use (permit) extension meets the Pittsfield and New Hampshire Supreme Court case law definitions of "variance".  Therefore, Cara Marston's testimony that the board of selectmen does not have authority to grant a zoning variance, together with the Pittsfield and the New Hampshire definitions of "variance", which both Cara Marston and the selectmen knew or should have known, does admit that the board of selectmen had no authority to grant a storage container time-of-use (permit) extension.

Town administrator Cara Marston, who assists the board of selectmen with zoning administration, testified that "a variance is a specific process with an application to the zoning board of adjustment."  (Marston affidavit page 1, paragraph 3; appendix page 176; Marston deposition, page 21, lines 6 and 7; appendix page 401.)  If the board of selectmen had sent McCoy to

the board of adjustment for a storage-container time-of-use variance, then the board of adjustment's secretarial assistant would have told McCoy about all of McCoy's appeal options, including that McCoy could make an administrative appeal holding that the truck trailer was permitted by right as a political sign if the truck trailer's principal use was political expression and not storage.

But despite that the board of selectmen knew or should have known to send McCoy to the zoning board of adjustment for either a zoning variance or an administrative appeal, the board of selectmen instead granted unlawful, *ultra vires* extensions whose obvious purpose was to steer McCoy *away* from the board of adjustment and *away* from the board of adjustment's secretarial assistant until an administrative appeal of the violation order was time barred, after which time the board of selectmen could order the removal of the truck-trailer sign whenever the board of selectmen wanted, which just so happened to be when the removal would most effectively suppress McCoy's support for then-president Donald Trump:  in May through July 2018 (appendix pages 207 and 222), *when the country was fast approaching federal mid-term elections of November 2018.*

**Defendants' brief statement, page 12, footnote 4:**

> "4 On appeal, McCoy attempts to raise a new argument that New
> Hampshire follows 'Dillon's Rule,' and therefore the Town must find its
> authority to permit extensions in an expressly-granted power or
> necessarily or fairly implied from expressly-granted powers. See
> Appellant's Brief at 19. It is well-established that 'appellants cannot
> raise an argument on appeal that was not squarely and timely raised in
> the trial court.' <u>Carrozza</u>, 992 F.3d at 59 (quoting <u>Thomas v. Rhode
> Island,</u> 542 F.3d 944, 949 (1st Cir. 2008)) (internal punctuation and
> quotations omitted). Accordingly, McCoy has not properly
> preserved this argument for appeal because it was not timely raised in
> the district court and this Court should decline to address it."

**McCoy reply:**

Dillon's Rule is not an argument, or more accurately, a claim of error;

Dillon's Rule is a law:

> "[T]owns only have 'such powers as are *expressly granted* to them by
> the legislature and such as are *necessarily* implied or incidental
> thereto.'"

*Girard v. Town of Allenstown*, 121 N.H. 268, 270-71 (1981) (quoting *Piper

v. Meredith*, 110 N.H. 291, 295 (1970)) (emphases in original).

McCoy cited Dillon's Rule to support McCoy's claim that the town

effectively conceded that the board of selectmen had no authority to grant a

storage-container permit extension because "the Town admitted the

Ordinance contains no 'process' for extending a permit." (McCoy's opening

brief, page 17, paragraph 2.) Dillon's Rule merely explains why, as

McCoy's opening brief says, "The distinction between 'process' and

'authority' is a matter of semantics: if there is no process for providing an extension, then there cannot be any authority for doing so." (McCoy's opening brief, page 18, paragraph 1.)

But if the word "process" and its implicating Dillon's Rule troubles the defendants, then town administrator Cara Marston also testified explicitly that there is no "provision" for the board of selectmen's being able to grant a storage container time-of-use (permit) extension:

```
19· · A.· ·I don't have -- I guess I honestly don't know how to
20· · · · ·answer that other than they were trying to help a
21· · · · ·resident who was asking for an extension on the storage
22· · · · ·container.· They read his request and wanted to work with
23· · · · ·him, regardless of there being no specific provision
·1· · · · ·granting them the ability to do so, I guess.· The zoning
```

(Marston deposition, pages 20 and 21; appendix page 401; emphasis added.)

**Defendants' brief statement, page 16, paragraph 3:**

> "McCoy's evidence [of alleged comparators]—at best—established only possible comparisons. For example, as noted by the district court, a reasonable jury could not decipher from McCoy's evidence 'which of the alleged comparators may be 'grandfathered' in; that is, they installed the storage containers before there was an ordinance requiring a storage container permit.' Id. at 506. Given the fact 'the ordinance was not adopted until 1988, the storage container article was not added until 1997, and the storage container was amended in 2016,' this type of detail or information was necessary to sustain McCoy's claim that the trailers were similarly situated. Id. at 506-07. The district court also identified other missing information about the trailers that would help a fact finder determine whether the trailers were truly similarly situated including whether the trailers were parked in the same location; were being used for residential occupancy or transient lodging; or existed under an extension. Id. at 507."

**McCoy reply:**

McCoy's evidence of alleged comparators was (1) pictures from the street of objects that, from the street, look like storage containers and (2) in certain cases, the address of the lot where the pictured object is located. (Appendix pages 422 and 441.) The alleged comparators number more than 100. Conceivably, the pictured objects *could* all be grandfathered, but Jesse Pacheco told the board of selectmen on May 23, 2017, that the town had no information showing that *any* objects looking like storage containers were grandfathered. (Board of selectmen minutes, May 23, 2017, page 9; appendix page 463: "Jesse [Pacheco] stated that they [other trailers] are all

over the place but are they grandfathered or not would be another question.")

Jesse Pacheco's statement to the board of selectmen also shows that he did

not even consider the possibility that any of the objects looking like storage

containers were being moved frequently, were being used for residential

occupancy or transient lodging, were being used under a permit extension, or

were being used in any other way that might remove the apparent storage

containers from being subject to the storage-container regulations.

Selectman and defendant Carl Anderson, in writing to McCoy in January

2020, was even clearer in ignoring the idea that objects looking like storage

containers might actually be lawful:  "what was obvious was that there were

illegal storage containers all over the place..."  (Anderson letter, page 1,

paragraph 4, sentence 1; appendix page 470.)  Obviously, McCoy's use of

his truck trailer for *another use permitted by right*, namely as a sign

requiring no written sign permit under Pittsfield Zoning Ordinance, article 9,

section 4, did not shield *McCoy* from enforcement of the storage-container

regulations.  And the Hetu case, cited above at page 14# paragraph 2#,

proves that the town considered that all objects looking like storage

containers were subject to the storage-container regulations, because (1) the

town never alleged and the Hetus never admitted that the Hetu trailer was

used principally for storage, (2) therefore, the Hetu trailer's appearance from

the street was the only reason for the board of selectmen's decision that the Hetu trailer was a "storage container" under the zoning ordinance, and (3) town administrator Cara Marston specifically cited the Hetu case as an example of the town's enforcement practice. (Marston affidavit, pages 6 and 7, paragraphs 29, B, and 30, c; appendix pages 181 and 182.) In sum, therefore, McCoy's pictures are of appropriate comparators because the pictures present exactly the same type of evidence about McCoy's alleged comparators—the object's appearance from the street—that the board of selectmen had about McCoy's truck trailer and that the board of selectmen used to begin enforcement of the storage-container regulations against McCoy.

Enforcement action based on complaints is also enforcement action based ultimately on the object's appearance from the street because the person complaining can complain about only what he sees from the street.

The board of selectmen began enforcement of the storage-container regulations against McCoy based only on his truck trailer's appearance from the street (or complaints about his truck trailer's appearance from the street) while the board of selectmen ignored more than 100 other objects that, from the street, look as much like or more like a storage container than McCoy's truck trailer did.

The district court and the defendants specifically emphasize that McCoy's alleged comparators might have all been grandfathered. Whether McCoy's alleged comparators were actually grandfathered or not is irrelevant by law because (1) New Hampshire law requires the code enforcement official to assume that a not-conforming use violates the zoning ordinance unless the property owner has proven that his use is grandfathered:

> "The burden of establishing that the [purportedly nonconforming] use in question is fundamentally the same use and not a new and impermissible one is on the party asserting it. This is in accordance with the general policy of zoning to carefully limit the extension and enlargement of nonconforming uses."

(*New London v. Leskiewicz*, 110 N.H. 462, 467 (1970)) and because (2) the statements above of Jesse Pacheco and selectman Carl Anderson show that the town never investigated whether any objects looking like storage containers were actually grandfathered, and thus the town's code enforcement officials were obliged to base enforcement decisions on the assumption that the objects looking like storage containers were not grandfathered.

**Defendants' brief statement, page 18, paragraph 2:**

"As the district court observed in its order, '[b]y the time the Town ordered McCoy to remove the trailer in June 2018, the expressive content at issue had been removed for almost a year.' Id. at 509. Thus, as identified by the district court, 'there [wa] s no evidence that Town officials held arbitrary or irrational motives prior to its June 2018 removal order, so no rational fact finder could infer the Town's action were motivated by political animus against McCoy.' Id. at 510."

**McCoy reply:**

The district court's conclusion comes from an assumption that, as McCoy explained above in reply to defendants' brief, page 4, paragraph 3, is both unsupported and false. The district court's unsupported and false assumption is that "[b]y the time the Town ordered McCoy to remove the trailer in June 2018, the expressive content at issue had been removed for almost a year." As McCoy explained above in reply to defendants' brief statement, page 4, paragraph 3, although the truck trailer's long side facing NH Route 107 had been painted with other political expression, the truck trailer's back end facing NH Route 107 southbound still bore the same expressive content "TRUMP". Moreover, the truck trailer's back end in particular was at issue because McCoy described the expressive content on the trailer's back end in his deposition on May 7, 2021, as quoted above in reply to defendants' brief statement, page 4, paragraph 3.

**Defendants' brief statement, page 19, paragraph 2:**

"On appeal, McCoy contends for the first time that the district court erred when it ruled on his content and viewpoint discrimination claim in violation of Fed. R. Civ. 56(f)."

**McCoy reply:**

In relation to this procedural matter, McCoy stands on his previous attorney, Robert Fojo's, opening brief. The Appellant's basic argument—that granting summary judgment without giving the parties both formal notice and opportunity to brief the matter is unfair—is both simple and compelling.

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) for a Reply Brief, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains fewer than 6,500 words or half the type of volume specified in Rule 32(a)(7)(B)(i).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in Times New Roman, a proportionally spaced typeface.

Dated: October 21, 2022        /s/ Leif A. Becker, Esq.
                                    Leif A. Becker, Esq.

Respectfully Submitted,

Joseph McCoy,

By Appellant's Counsel,

October 21, 2022          /s/ Leif A. Becker
                         Leif A. Becker, Esq.
                         BECKER LEGAL, PLLC
                         Bar. No. 1205074
                         Leif@beckerlegalnh.com
                         Phone: 603-259-6726
                         1465 Woodbury Ave, PMB 245
                         Portsmouth, NH 03801

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this pleading has been sent this day, October 21, 2022, to all parties of record through the First Circuit Court of Appeals ECF System.

/s/ Leif A. Becker
Leif A. Becker, Esq.